**2023-1768**

# United States Court of Appeals for the Federal Circuit

CA, INC.,

*Appellant,*

– v. –

NETFLIX, INC.,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office in Case No. IPR2021-01319*

## BRIEF FOR APPELLANT

DAN YOUNG, ESQ.
KENT DALLOW, ESQ.
QUARLES & BRADY LLP
8210 Southpark Terrace
Littleton, Colorado 80120
(303) 268-0066 Telephone
dyoung@quarles.com
kent.dallow@quarles.com

*Counsel for Appellant CA, Inc*

AUGUST 16, 2023

## PATENT CLAIMS AT ISSUE

This appeal concerns claims 1, 3-9, 11-17 (the "Challenged Claims") of U.S. Patent No. 7,103,794 (the "'794 Patent"). Independent claims 1 and 17 are representative for purposes of this appeal.[1]

1. A method, including steps of:

[a] receiving a set of network objects in response to a first request to a server from a client; and

[b] maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

[c] wherein said step of maintaining includes steps of recording said network objects in said cache memory and retrieving said network objects from said cache memory,

[d] so as to substantially minimizes a time required for retrieving said network objects from said mass storage.

Appx45 (17:5-17).

[1] For clarity, this Opening Brief employs the prior labeling of the claim limitations from the underlying *inter partes* review ("IPR"), as shown in brackets above and below.

Claim 17 recites the following:

17. A method, including steps of:

[a] receiving a set of network objects in response to a first request to a server from a client; and

[b] maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

[c] wherein said step of maintaining is performed independently of a file system for said mass storage.

Appx45 (18:10-18).

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1768

**Short Case Caption** CA, Inc. v. Netflix, Inc.

**Filing Party/Entity** CA, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/04/2023

Signature: /s/ Daniel S. Young

Name: Daniel S. Young

FORM 9. Certificate of Interest | Form 9 (p. 2) March 2023

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| CA, Inc. | | Broadcom Incorporated |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................i

TABLE OF CONTENTS......................................................................................iv

TABLE OF AUTHORITIES .............................................................................. vii

STATEMENT OF RELATED CASES ...................................................................1

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF THE ISSUES.............................................................................2

STATEMENT OF THE CASE...............................................................................4

I. Overview of the '794 Patent ..............................................................4

II. Challenged Claims ............................................................................12

III. The Board's findings of obviousness...................................................14

A. The Board's claim construction findings concerning "cache memory" ..............................................................14

B. The Board's findings concerning Medin and the claim limitation "maintaining said network objects in cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage"..............................................................16

C. The Board's findings concerning combining Medin and Seltzer and the claim limitations related to "minimizing the time required for retrieving said network objects from said mass storage"...................................18

D. The Board's findings concerning combining Medin and Markatos and the claim limitations related to "wherein said step of maintaining is performed independently of a file system for the mass storage" ...............20

SUMMARY OF ARGUMENT ...........................................................................23

ARGUMENT ................................................................................................26

I. Standard of Review ..........................................................................26

II. The Board's claim construction determination of the scope of "cache memory" is improperly broad as it obviates the distinction between memory and mass storage...................................27

A. The Board's findings concerning "cache memory" are subject to *de novo* review ...................................................28

B. The Board's characterization of the intrinsic evidence does not reflect what the inventor intended to convey in the Challenged Claims ..........................28

1. The Board improperly disregarded the '794 Patent's claim language and specification .............29

2. The Board mischaracterized the '794 Patent's prosecution history .......................................................35

C. The extrinsic evidence confirms that "cache memory" must include both volatile memory and mass storage.............37

III. Medin does not disclose a "cache memory" when analyzed using the proper plain and ordinary meaning of the term ..........................................................................................39

A. Overview of Medin ..................................................................39

B. Medin fails to disclose a cache memory with mass storage ........................................................................................47

1. Medin's memory modules 504 and 604 are not part of Medin's cache ....47

2. Medin's disk array 306 or cache storage 616 is not "memory" ....50

IV. A POSITA would not find it obvious to combine Medin and Seltzer such that a combination of these references would disclose limitation [d] of claim 1 ....51

A. Overview of Seltzer ....52

B. There is no motivation to combine Medin and Seltzer....53

V. Markatos does not disclose limitation [c] of claim 17 and no combination of Medin and Markatos discloses limitations [b] and [c] of claim 17....56

A. Overview of Markatos ....57

B. Markatos fails to disclose limitation [c] of claim 17 ....62

C. The combination of Medin and Markatos fails to disclose limitations [b] and [c] of claim 17 ....64

1. The Board's conclusion disregards the fact that limitations [b] and [c] must be read together ....65

2. The Board's conclusion disregards the "wherein" limitation....68

VI. Remaining Claims ....70

CONCLUSION....71

ADDENDUM

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*,
811 F.3d 1334 (Fed. Cir. 2016) .......... 34, 35, 69

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
713 F.3d 1090 (Fed. Cir. 2013) .......... 29

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) .......... 29

*In re Huai-Hung Kao*,
639 F.3d 1057 (Fed. Cir. 2011) .......... 27

*Kaken Pharm. Co., Ltd. v. Iancu*,
952 F.3d 1346 (Fed. Cir. 2020) .......... 26, 28

*Knauf Insulation, Inc. v. Rockwool International A/S*,
680 Fed.Appx. 956 (Fed. Cir. 2017).......... 26

*Medrad, Inc. v. MRI Devices Corp.*,
401 F.3d 1313 (Fed. Cir. 2005) .......... 29

*Merck & Co. v. Teva Pharm. USA, Inc.*,
395 F.3d 1364 (Fed. Cir. 2005) .......... 35, 69

*NobelBiz, Inc. v. Glob. Connect, L.L.C.*,
701 F. App'x 994 (Fed. Cir. 2017).......... 29

*OSI Pharms., LLC v. Apotex Inc.,*
939 F.3d 1375 (Fed. Cir. 2019) .......... 26, 27

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .......... 29

*SimpleAir, Inc. v. Sony Ericsson Mobile Comms. AB*,
820 F.3d 419 (Fed. Cir. 2016) .......... 28

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)........................................................................ 26, 28

**Statutes**

28 U.S.C. §1295(a)(4)(A) ........................................................................1

35 U.S.C. §6(b)(4)....................................................................................1

35 U.S.C. §141 ........................................................................................1

35 U.S.C. §311 ........................................................................................1

35 U.S.C. §318 ........................................................................................1

## STATEMENT OF RELATED CASES

Under Fed. Cir. R. 47.5(a), counsel for Appellant certifies that no other appeal from the same proceeding at the United States Patent and Trademark Office's Patent Trial and Appeal Board (the "Board") is or was previously before this Court or any other appellate court, whether under the same or a similar title.

Under Fed. Cir. R. 47.5(b), counsel for Appellant states that the Court's decision in this appeal will affect the following judicial and administrative matters: *CA, Inc. et al. v. Netflix, Inc.*, No. 3:22-cv-00373 (N.D. Cal. 2022) (transferred from *CA, Inc. et al. v. Netflix, Inc.*, No. 2:21-cv-00080 (E.D. Tex. 2021)) and *Netflix, Inc. v. CA, Inc. et al*., No. 3:21-cv-03649 (N.D. Cal. 2021), which have been coordinated.

## STATEMENT OF JURISDICTION

The Board had jurisdiction over this IPR under 35 U.S.C. §§6(b)(4) and 311. The Board issued its Final Written Decision ("FWD") under 35 U.S.C. §318 on February 8, 2023. CA, Inc. ("CA") timely filed a petition for review of that decision on April 11, 2023. Notice of Docketing, ECF No. 1. This Court has jurisdiction under 35 U.S.C. §141 and 28 U.S.C. §1295(a)(4)(A).

## STATEMENT OF THE ISSUES

1. Did the Board legally err in finding that the plain and ordinary meaning of the claim term "cache memory," as used in the claim limitation "a cache memory in a cache engine, . . . said cache memory including mass storage," did not require both memory and mass storage?

2. Did the Board legally err in finding that Medin rendered obvious the claim limitation, "maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage," even though Medin did not disclose caching network objects in memory, but only mass storage?

3. Did the Board legally err in finding that the combination of Medin and Seltzer rendered obvious the claimed benefit of "minimizing a time required for retrieving said network objects from said mass storage," even though there is no motivation to combine the two prior art references?

4. Did the Board legally err in finding that the combination of Medin and Markatos rendered obvious the claim limitations, "[b] maintaining said network objects in a cache memory in a cache engine, . . . said cache memory including mass storage[,]" and "[c] wherein said step of maintaining is performed independently of a file system for said mass storage," even though neither prior art reference teaches

a system where said network objects are maintained in mass storage independent of a file system?

## STATEMENT OF THE CASE

### I. Overview of the '794 Patent

The '794 Patent is titled, "Network Object Cache Engine." Appx31; Appx2748. The '794 Patent is directed to a cache engine that is used to cache network objects, including "data, such as HTML pages, text, graphics, photographs, audio, video; programs, such as Java or ActiveX applets or applications; or other types of network objects, such as push protocol objects," as well as "frames of streaming audio or streaming video information." Appx39 (6:30-35); Appx2748; Appx2815 (¶23)). The cache engine "determines directly when and where to store those objects in a memory (such as RAM) and mass storage (such as one or more disk drives), so as to optimally write those objects to mass storage and later read them from mass storage, without having to maintain them persistently." Appx31; Appx2748-2749; Appx2815 (¶23).

The '794 Patent describes prior solutions to avoiding excess network traffic and delay when transmitting data between servers and clients. Appx37 (1:9-57); Appx2749; Appx2816 (¶24). These solutions include proxy servers, which suffer several inefficiencies, because of their nature as general-purpose servers:

> One known method [of network caching] is to provide a device (such as a general purpose processor operating under software control) which acts as a proxy, receiving requests for information from one or more clients,

obtaining that information from one or more servers, and transmitting that information to the clients in place of the servers. When the proxy has previously obtained the information from one or more servers, it can deliver that information to the client without having to repeat the request to the server. While this method achieves the goal of reducing traffic in the network and load on the server, **it has the drawback that significant overhead is required by the local operating system and the local file system or file server of the proxy**. This adds to the expense of operating the network and slows down the communication path between the server and the client.

There are several sources of delay, **caused primarily by the proxy's surrendering control of its storage to its local operating system and local file system**: (a) the proxy is unable to organize the information from the server in its mass storage for most rapid access; and (b) the proxy is unable to delete old network objects received from the servers and store new network objects received from the servers in a manner which optimizes access to mass storage. In addition to the added expense and delay, the proxy's surrendering control of its storage restricts functionality of the proxy's use of its storage: (a) it is difficult or impossible to add to or subtract from storage allocated to the proxy while the proxy is operating; and (b) the proxy and its local file system cannot recover from

> loss of any part of its storage without using an expensive redundant storage technique, such as a RAID storage system.

Appx37 (1:26-57) (emphasis added); Appx2749-2750; Appx2816-2817 (¶24). As a result, the '794 Patent identifies a need for a "method and system for caching information transmitted using, a computer network, which is not subject to additional delay or restricted functionality **from having to use a local operating system and local file system or file server**." Appx37 (1:58-62) (emphasis added); Appx2750; Appx2817 (¶24).

The '794 Patent provides such a solution with a cache engine. Appx2817 (¶25). The cache engine has a cache, which "is not a file storage system," which a typical server or proxy would use. *Id.*; Appx38 (4:15); Appx2750.

> Moreover, the cache engine 100 operates exclusively to perform the operation of caching the network objects 114. There is no separate "operating system," no user, and there are no user application programs which execute independently on the processor 101. Within the memory 103, there are no separate memory spaces for "user" and "operating system."

Appx38 (4:33-39); Appx2750; Appx2817 (¶25). This cache engine, dedicated to caching network objects, is highly optimized for performance in cache storage and

retrieval. Appx2751; Appx2817 (¶25). Such optimization eliminates many of the performance bottlenecks associated with the prior art proxy servers. *Id.*

One important optimization is the use of a cache that includes both volatile memory (e.g., RAM) and mass storage (e.g., disk drives). Figures 1 and 2 of the '794 Patent illustrate this arrangement:




FIG. 1

Appx33 (excerpted and annotated); Appx2751; Appx2818 (¶26).




FIG. 2

Appx34 (annotated); Appx2752; Appx2819 (¶26). In both these examples, and in every embodiment disclosed in the '794 Patent, the cache 102 is described as comprising both a memory 103 and a mass storage 104. Appx2752; Appx2819 (¶26). For example, the '794 Patent teaches, "[t]he cache 102 includes the program and data memory 103 and a mass storage 104. In a preferred embodiment, the mass storage 104 includes a plurality of disk drives such as magnetic disk drives, but may

alternatively include optical or magneto-optical disk drives." Appx38 (3:30-34); Appx2752-2753; Appx2819-2820 (¶26).

As the '794 Patent notes further, "[i]n a preferred embodiment, the cache engine 100 uses the memory 103 as a cache for those network objects 114 maintained using the mass storage 104, while using the combined memory 103 and mass storage 104 as the cache 102 for those network objects 114 available on the network 110." Appx38 (4:9-14); *see also* Appx40 (8:9-13) ("A subset of the blocks 200 are maintained in the memory 103, so as to use the memory 103 as a cache for the mass storage 104 (just as the memory 103 and the mass storage 104 collectively act as the cache 102 for network objects 114)."); Appx41 (9:66-10:3) ("In a preferred embodiment, the cache engine 100 uses the memory 103 and the mass storage 104 (preferably a plurality of magnetic disk drives) to cache the network objects 114 so as to maintain in the cache 102 those network objects 114 most likely to be required by the client device 111."); Appx41 (10:17-24) ("The cache engine 100 maintains the cache 102 using the memory 103 and the mass storage 104 so that whether the object 210 is in the cache 102, and if in the cache 102, whether the object 210 is in the memory 103 or on the mass storage 104 is transparent to the client device 111 (except possibly for different time delays in retrieving the object 210 from the memory 103 or from the mass storage 104)."); Appx2753; Appx2820 (¶27). Thus, the '794 Patent teaches exclusively that the

cache comprises both main memory (e.g., RAM) and mass storage (e.g., disk drives). Appx2753-2754; Appx2821 (¶27).

A key component of this combined cache technique, which optimizes storage and retrieval of network objects from the cache, is the use of mass storage as part of the cache that is maintained without a file system. Appx2754; Appx2821 (¶28). For example, the '794 Patent teaches that existing proxy servers have "several sources of delay, caused primarily by the proxy's surrendering control of its storage to its local operating system and local file system." Appx37 (1:42-44); Appx2754; Appx2821 (¶28). Among these sources of delay, the '794 Patent teaches, are "(a) the proxy is unable to organize the information from the server in its mass storage for most rapid access; and (b) the proxy is unable to delete old network objects received from the servers and store new network objects received from the servers **in a manner which optimizes access to mass storage**." Appx37 (1:44-49) (emphasis added); Appx2754; Appx2821 (¶28).

Thus, the '794 Patent teaches, "it would be desirable to provide a method and system for caching information . . . which is not subject to additional delay or restricted functionality from having to use a local operating system and local file system or file server." Appx37 (1:58-62); Appx2754; Appx2821 (¶29). The invention of the '794 Patent solves this problem with "a cache engine coupled to the network [that] provides a cache of transmitted objects, **which it stores in memory**

**<u>and mass storage by taking direct control of when and where to store those objects in mass storage.</u>**" Appx37 (1:64-67); Appx2754-2755; Appx2821-2822 (¶29). More specifically, the '794 Patent teaches, the invention provides this "direct control" in two related ways.

First, "[i]n the invention, a cache engine determines directly when and where to store those objects in a memory (such as RAM) and mass storage (such as one or more disk drives), so as to **<u>optimally</u>** write those objects to mass storage and later read them from mass storage, without having to maintain them persistently." Appx37 (2:8-13) (emphasis added); *see also* Appx41 (9:66-10:3) ("In a preferred embodiment, the cache engine 100 uses the memory 103 and the mass storage 104 (preferably a plurality of magnetic disk drives) to cache the network objects 114 so as to maintain in the cache 102 those network objects 114 most likely to be required by the client device 111."); Appx2755; Appx2822 (¶30).

Second, and relatedly, the '794 Patent teaches that the cache engine has direct control over storage because the cache 102 does not use a file system (for either the memory or the mass storage) to maintain objects in storage, unlike prior systems:

> The cache 102 differs from a file system also in that the client device 111 has no control over storage of the network objects 114 in the cache 102, including (1) the name space at the cache 102 for storage of the network objects 114, (2) the ability to name or rename the network

> objects 114, (3) whether the network objects 114 are removed from the cache 102 at any time, and (4) whether the network objects 114 are even stored in the cache 102 at all.

Appx41 (9:58-65); *see also* Appx38 (4:15) ("The cache 102 is not a file storage system . . . .); Appx2755-2756; Appx2822-2823 (¶31).

## II. Challenged Claims

With respect to each of the Board's findings, independent claims 1 and 17 are illustrative. Appx4. Claim 1 recites:

> 1. A method, including steps of:
>
> [a] receiving a set of network objects in response to a first request to a server from a client; and
>
> [b] maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;
>
> [c] wherein said step of maintaining includes steps of recording said network objects in said cache memory and retrieving said network objects from said cache memory,
>
> [d] so as to substantially minimizes a time required for retrieving said network objects from said mass storage.

Appx45 (17:5-17); Appx2756.

As recited, the method of claim 1 "maintain[s] said network objects in a cache memory in a cache engine . . . said cache memory including mass storage," and operates in a way that "substantially minimizes a time required for retrieving said network objects from said mass storage." Appx45 (17:5-17); Appx2757; Appx2823-2824 (¶32). Thus, claim 1 recites a cache engine having "cache memory" that includes mass storage, as well as optimization ("minimiz[ing] a time required for retrieving network objects from the mass storage"). Appx45 (17:5-17); Appx2757; Appx2824 (¶32).

Claim 17 recites:

17. A method, including steps of:

[a] receiving a set of network objects in response to a first request to a server from a client; and

[b] maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

[c] wherein said step of maintaining is performed independently of a file system for said mass storage.

Appx45 (18:10-18); Appx2758; Appx2824-2825 (¶34).

Claim 17 is similar in scope to claim 1, except claim 17 recites an enabling technology of an optimization technique, "wherein . . . maintaining is performed

independently of a file system for said mass storage." Appx45 (18:17-18); Appx2758; Appx2825 (¶35). Thus, claim 17, in particular, highlights one difference between a cache engine and typical proxy servers – that the cache is maintained independent of any file system (which is the storage structure for a typical server). Appx2758; Appx2825 (¶35).

## III. The Board's findings of obviousness

The Board's ruling that the Challenged Claims are obvious, resulted in part from a legally erroneous determination of the scope of the plain and ordinary meaning of the term, "cache memory," as used in the claim limitation, "a cache memory in a cache engine, . . . said cache memory including mass storage." Appx45 (17:8-11, 17:41-44, 18:13-16). Specifically, the Board determined that the scope of "cache memory including mass storage" did not encompass "both (1) memory and (2) mass storage" in direct contradiction of the claim language and specification of the '794 Patent, as well as the other substantial evidence cited by CA. Appx9 (citing Appx3232). This determination then formed the basis of the Board's conclusions that the combinations of Medin and Seltzer, and Medin and Markatos, render obvious the Challenged Claims.

### A. The Board's claim construction findings concerning "cache memory"

At the outset of its claim construction analysis for the term "cache memory," the Board determined that "neither party contends that the claim language is

ambiguous." Appx8. Importantly, the Board noted that "both parties cite the Specification's references to a cache that includes a 'memory' and a mass storage." *Id.* (citing Appx2751-2755; Appx2780-2781 ("every time the '794 [p]atent refers to the cache 102, it refers to the cache including both memory 103 and mass storage 104"); Appx3011; Appx3013-3015). Even in light of this, and CA's evidence showing that "the '794 [p]atent uses the term 'cache memory' to refer to a cache with volatile memory, such as RAM," the Board determined that CA's positions were "inconsistent with the plain language of the claim." Appx8-9. The Board faulted CA for allegedly attempting to rewrite the claim term, even though CA's position that the term, "cache memory including mass storage," must include "memory" and "mass storage," directly reflects the claim language itself and every embodiment set forth in the specification. Appx9. The Board further concluded that "the Specification's use of the qualifier 'such as' in 'memory (such as RAM)' . . . evidences that RAM is merely a non-limiting example of memory." *Id.* (citations omitted). In coming to its determinations, the Board also relied on a limited portion of the prosecution history concluding that it "evidences that the applicant understood 'memory' to be a broad term," even though the Board conceded that the portion was "not directly applicable to our understanding of 'cache memory.'" *Id.* (citing Appx603).

The Board ultimately applied the "plain language of the claims" to the "cache memory" claim term, concluding that the plain language "require[s] mass storage but [] permissively allow[s] other types of memory, including volatile memory such as RAM." Appx10. In arriving at its conclusion, the Board rejected "[CA]'s arguments premised on intrinsic evidence, extrinsic evidence, and witness testimony," holding that this substantial evidence did "not support [CA]'s arguments that 'a cache memory in a cache engine, . . . said cache memory including mass storage' requires volatile memory." *Id.* The Board also disregarded Netflix's own statements made in its Petition, which implicitly construed "cache memory," as used in the Challenged Claims, to include both RAM and mass storage. *Id.* (n.5) (citing Appx2782-2783; Appx3232-3235); *see also* Appx3017-3018.

### B. The Board's findings concerning Medin and the claim limitation "maintaining said network objects in cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage"

At the outset of its analysis, the Board recognized that "[CA]'s arguments regarding this limitation turn on [CA]'s construction of 'cache memory.'" Appx15. Based on its claim constructions above, the Board "disagree[d] with [CA]'s arguments that this limitation requires volatile memory," and focused on Medin's teachings related to "storing network objects on disk arrays and cache storage devices." *Id.* The Board stated:

> [CA]'s arguments regarding this limitation turn on [CA]'s construction of "cache memory." As noted above, [CA] argues "[a] POSITA would recognize that, for several reasons, the plain and ordinary meaning of this limitation requires the cache to have both (1) memory and (2) mass storage." . . . Building on that position, [CA] also argues that "the record contains no evidence that Medin's caches include anything but mass storage devices; nor does the record provide any indication that these mass storage devices might be memory."

*Id.* (citation omitted). The Board disregarded CA's evidence that "Medin's 'memory modules' are used only to hold running programs, and Medin nowhere teaches that this memory is used to cache web content." *Id.* (citing Appx2784 (citing Appx2847 (¶65))). The Board also disregarded the testimony of Netflix's own expert, Dr. Houh, who "could not identify any disclosures in Medin of memory being used to cache web content." Appx15.

Reiterating that "we disagree with [CA]'s arguments that this limitation requires volatile memory," the Board again applied its overbroad interpretation of "cache memory, . . . said cache memory including mass storage" (which effectively reads "memory" out of the term) and "determined that [Netflix] has shown that Medin's teachings of local and regional servers that cache frequently-accessed information or content and that are connected via a network to content servers and

end users satisfy this claim limitation." Appx15-16; Appx45 (17:8-11). In other words, the Board found that Medin discloses this claim limitation of the Challenged Claims, even though Medin solely discloses caching using mass storage, and not caching using both memory and mass storage, as set forth in detail in the Specification of the '794 Patent. Appx10; *see* Appx2780-2789; Appx3248-3249.

### C. The Board's findings concerning combining Medin and Seltzer and the claim limitations related to "minimizing the time required for retrieving said network objects from said mass storage"

With respect to the combination of Medin and Seltzer, the Board acknowledged CA's argument that,

> [Netflix]'s citation to the references' goals of improving speed and efficiency of systems for storing information "'would render obvious the combination of any two references disclosing different computer systems, because all computer systems are directed to systems for storing information, and virtually all computer system designers have a generic goal of improving speed and efficiency."

Appx18. Further, the Board acknowledged CA's argument that, "to the extent a POSITA might attempt to combine Medin and Seltzer, it would not be to use Seltzer's LFS [log file system] for caching web content because 'file system cache schemes perform poorly as web caches, . . . .'" *Id*. The Board also acknowledged CA's argument that "a POSITA would find it difficult to predict what the performance of LFS in a caching system might be and would not simply assume, as

[Netflix] argues, that 'dramatic performance improvements' would result." Appx18-19 (citing Appx2791 (citing Appx907-908; Appx918; Appx2853-2855 (¶¶73-74))).

The Board then considered the competing testimony from the parties' respective experts "regarding whether a POSITA would combine the teachings of Medin and Seltzer and in particular whether a POSITA would combine Seltzer's teachings regarding LFS for caching web documents." Appx19 (citing Appx754-760 (¶¶113-121); Appx2852-2856 (¶¶71-76)). As noted by the Board, the parties' experts both testified substantially regarding disclosures in Netflix's other cited prior art, Markatos, and how that impacted any conclusions regarding combining Medin and Seltzer. The Board, however, "disagree[d] with [CA]'s implication that Markatos's disclosure of a purported improvement to traditional file system caching would lead a POSITA to dismiss Seltzer's teachings of optimization techniques applicable to file system caching." Appx20.

The Board summarized CA's argument that, "'the record evidence indicates clearly that a file system caching technique (such as Seltzer) is inappropriate for a web caching system' and that 'a POSITA (such as Markatos himself) would have no reasonable expectation of success in this combination.'" Appx19 (citing Appx2793 (citing Appx907-908; Appx918; Appx2856 (¶76))). The Board ultimately disregarded this substantial evidence, relying on the generalized "goal of improving the speed and efficiency," and concluded:

> [W]e are persuaded that a person of ordinary skill would have been motivated to combine the teachings of Medin and Seltzer "so as to substantially minimizes a time required for retrieving said network objects from said mass storage." In particular, as [Netflix] argues, Medin and Seltzer "share the goal of improving the speed and efficiency" of systems for storing information.

Appx19-20.

### D. The Board's findings concerning combining Medin and Markatos and the claim limitations related to "wherein said step of maintaining is performed independently of a file system for the mass storage"

With respect to claim 17,[2] the Board found "[i]mplicit in [CA]'s arguments is an interpretation of claim 17 as requiring all network objects to be cached independently of the file system." Appx26. The Board summarized CA's criticisms of Netflix's arguments, stating: "[CA] argues [Netflix]'s arguments read the wherein clause and the maintaining limitation in isolation because neither Medin nor Markatos teaches caching network objects in a cache having mass storage

[2] The Board initially concluded that "[t]hese limitations of claim 17 are identical to corresponding limitations of claims 1 and 9. [Netflix] contends ([Appx111-112]), and we agree, that Medin teaches these limitations for the same reasons addressed above. For the same reasons as those explained above addressing the identical limitations of claims 1 and 9, we determine [Netflix] has shown that Medin teaches these limitations of claim 17, notwithstanding [CA]'s contrary arguments." Appx24.

independently of a file system for mass storage." Appx25-26 (citing Appx2795-2796). However, the Board concluded:

> [C]laim [17] only requires maintaining a set of network objects in a cache memory independently of a file system for the mass storage, where the cache memory includes a mass storage. The claim does not exclude maintaining other network objects—network objects other than the "said set of network objects"—in the mass storage and having the maintenance of those other network objects implicate a file system. As noted above . . . , we disagree with [CA]'s arguments that "cache memory" requires volatile memory, but we determine the recited cache can have volatile memory as well as mass storage.

Appx27 (citation omitted).

Relying on Netflix's contention that "a POSITA would have been motivated to modify Medin based on the teachings of Markatos to incorporate main memory caching in combination with Medin's teachings regarding a cache engine with cache memory that includes mass storage" (citing Appx107-108), the Board concluded that "a person of ordinary skill in the art would have been motivated to make the proposed combination of Medin and Markatos and would have had a reasonable expectation of success." Appx27-28. The Board further concluded that "the resulting Medin-Markatos combination teaches" . . . "wherein said step of maintaining is performed independently of a file system for said mass storage." *Id.*

In other words, the Board found that the resulting Medin-Markatos combination teaches limitation [c], and the related portion of limitation [b], even though neither Medin nor Markatos teaches maintaining network objects in a mass storage system without a file system. Appx27; *see* Appx3244-3248; Appx3252-3255.

## SUMMARY OF ARGUMENT

The Board's decision that the "cache memory" claim term, as used in the limitation, "a cache memory in a cache engine, . . . said cache memory including mass storage," did not require both memory and mass storage, resulted in an erroneous obviousness determination with respect to the '794 Patent and the cited prior art of Medin, Seltzer, and Markatos. While the Board stated that it applied "the plain language of the claims," the Board's application was in direct contravention of the language of the Challenged Claims, the specification of the '794 Patent, CA's other substantial evidence, and Netflix's own statements in its Petition. In making this erroneous determination, the Board applied an unjustifiably broad meaning for "said cache memory including mass storage," that obliviated the distinction between the claimed memory and mass storage elements, effectively reading "memory" out of the limitation.

The Board's misapprehension of the plain and ordinary meaning of the "cache memory" term cascades through its findings on each of the disclosures of Medin, Seltzer, and Markatos. With respect to Medin, the Board's erroneous claim construction caused the Board to ignore substantial evidence, including Netflix's own statements, that the cited prior art did not disclose a cache system containing both the required memory and mass storage elements of the claimed limitation. Instead, the Board incorrectly agreed with Netflix's shifting arguments that the

claimed "cache memory including mass storage" did not require a cache with both "memory" and "mass storage." As a result, the Board found that Medin discloses a "cache memory including mass storage," despite Medin's failure to disclose anything but a cache consisting solely of mass storage.

As for the combination of Medin and Seltzer, the Board disregarded CA's substantial evidence and argument showing that "'a file system caching technique (such as Seltzer) is inappropriate for a web caching system' and that 'a POSITA (such as Markatos himself) would have no reasonable expectation of success in this combination.'" Appx19 (citing Appx2793 (citing Appx907-908; Appx918; Appx2856 (¶76))). Instead, the Board relied on an amorphous motivation to combine, based on increasing computing efficiency, which would allow for the combination of any prior art directed to different computer systems.

And for the combination of Medin and Markatos, the Board's flawed invalidity finding again stemmed from its improper determination of the plain and ordinary meaning of "cache memory," and the Board's blurred distinction between memory and mass storage. The Board then erred in concluding that the combination of Medin and Markatos rendered obvious the claim limitations, "[b] maintaining said network objects in a cache memory in a cache engine, . . . said cache memory including mass storage[,]" and "[c] wherein said step of maintaining is performed independently of a file system for said mass storage," even though neither prior art

reference teaches a system where said network objects are maintained in mass storage without a file system.

## ARGUMENT

### I. Standard of Review

The Court reviews the Board's claim construction determinations and its evaluation of the intrinsic record *de novo* and reviews any underlying factual findings for substantial evidence. *Teva Pharms. USA, Inc. v. Sandoz, Inc*., 574 U.S. 318, 322, 331 (2015); *Kaken Pharm. Co., Ltd. v. Iancu*, 952 F.3d 1346, 1350 (Fed. Cir. 2020). The Court reviews "the legal conclusion of obviousness de novo, but we uphold the Board's factual findings as long as they are supported by substantial evidence. Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Knauf Insulation, Inc. v. Rockwool International A/S*, 680 Fed.Appx. 956, 959-60 (Fed. Cir. 2017) (nonprecedential); *OSI Pharms., LLC v. Apotex Inc.,* 939 F.3d 1375, 1381 (Fed. Cir. 2019). The substantial evidence standard asks, "whether a reasonable fact finder could have arrived at the agency's decision," and "involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision." *OSI Pharms., LLC v. Apotex Inc.,* 939 F.3d 1375, 1381 (Fed. Cir. 2019).

The Supreme Court "has stressed the importance of not simply rubber-stamping agency factfinding. . . . The [Administrative Procedure Act] requires meaningful review; and its enactment meant stricter judicial review of agency

factfinding than Congress believed some courts had previously conducted." *Id.* at 1382. When "the Board relie[s] on erroneous reasoning in making the factual determinations . . . ," such determinations are "unsupported by substantial evidence." *In re Huai-Hung Kao*, 639 F.3d 1057, 1065 (Fed. Cir. 2011).

## II. The Board's claim construction determination of the scope of "cache memory" is improperly broad as it obviates the distinction between memory and mass storage

The Board found that the plain and ordinary meaning of "cache memory," did not in fact require memory at all. Instead, the Board incorrectly found that the plain language of "cache memory" in the larger claim term "said cache memory including mass storage," to "require mass storage but to permissively allow other types of memory, including volatile memory such as RAM." Appx10. In other words, the Board found that "cache memory including mass storage" can consist of a cache solely comprising mass storage. This is incorrect. Moreover, this finding is premised on the idea that "mass storage" is a type of "memory," which is not supported by the weight of either the intrinsic or extrinsic evidence in this case. This improper claim construction determination is subject to *de novo* review by this Court and should be overturned because it improperly broadens the scope of the "cache memory" term beyond its plain and ordinary meaning and effectively reads "memory" out of the claim. *See generally* Appx2748-2758; Appx2780-2783; Appx3231-3244.

### A. The Board's findings concerning "cache memory" are subject to *de novo* review

As set forth in detail above, the Board's conclusion that the Challenged Claims are unpatentable rests substantially on its construction of the term "cache memory." *Supra* §III. In its claim construction analysis, the Board concluded that "[i]n our analysis below, we apply the plain language of the claims, noting that we understand the plain language to require mass storage but to permissively allow other types of memory, including volatile memory such as RAM." Appx10. In arriving at this conclusion, the Board referenced the "'794 patent's Specification," the "plain language of the claim" for independent claims 1, 9, and 17, as well as the "file history." Appx8-9. Thus, because the Board purported to base its claim construction findings on this intrinsic evidence, the Court should review the Board's claim construction of the Quality Level Terms *de novo*. *Kaken Pharm. Co., Ltd. v. Iancu*, 952 F.3d 1346, 1350 (Fed. Cir. 2020) ("We review the Board's claim construction de novo and any underlying factual findings for substantial evidence."); *SimpleAir, Inc. v. Sony Ericsson Mobile Comms. AB*, 820 F.3d 419, 425 (Fed. Cir. 2016); *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 322, 331 (2015).

### B. The Board's characterization of the intrinsic evidence does not reflect what the inventor intended to convey in the Challenged Claims

The Board did not expressly construe "cache memory" and, therefore, construed these terms under their purported plain and ordinary meaning. *See*

*NobelBiz, Inc. v. Glob. Connect, L.L.C.*, 701 F. App'x 994, 999 (Fed. Cir. 2017). But the Board's interpretation of the plain and ordinary meaning of "cache memory" must still align with the '794 Patent's claim language, specification, and prosecution history: This Court has long held that the plain and ordinary meaning of a claim term must reflect the meaning a POSITA would give the term in the context of the intrinsic evidence.[3] Thus, because the Board's analysis of "cache memory" ignored the clear intent of the inventors as reflected in the '794 Patent, the Board's determination should be overturned.

**1. The Board improperly disregarded the '794 Patent's claim language and specification**

As CA demonstrated in the underlying IPR, the language of claims 1, 9, and 17 require, in pertinent part, "maintaining said network objects in a **cache memory** in a cache engine, . . . said **cache memory including mass storage**."

---

[3] *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) (holding that "[c]laim terms are generally given their plain and ordinary meanings to one of skill in the art when read in the context of the specification and prosecution history"); *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."); *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1094 (Fed. Cir. 2013) (holding that a claim term's "ordinary meaning must be considered in the context of all the intrinsic evidence, including the claims, specification, and prosecution history"); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("the court starts the decision making process by reviewing the same resources as would that person, *viz.*, the patent specification and the prosecution history").

Appx45 (17:8-11, 17:41-44, 18:13-16) (emphasis added); *see* Appx2780-2781; Appx2842 (¶59). A POSITA would recognize that the plain and ordinary meaning of this limitation requires the cache to have both (1) memory and (2) mass storage for several reasons. Appx2780-2781; Appx2842-2843 (¶59).

First, the claim language itself, "cache memory including mass storage," includes the words "memory" and "mass storage." Outside the Challenged Claims, the '794 Patent uses the term, "memory," exclusively to refer to volatile memory, such as RAM, which it distinguishes from mass storage. *See, e.g.*, Appx31 (distinguishing, in the Abstract, between "a memory (such as RAM) and mass storage (such as one or more disk drives)"); Appx37 (2:9-10) (repeating the same phrase in the Summary of the Invention); Appx38 (3:30-31) ("The cache 102 includes the program and data memory 103 and a mass storage 104."); Appx33-34 (Figures 1 and 2 displaying a cache 102 comprising "memory" 103 and "mass storage" 104); *passim* (consistently referring to "memory 103"); Appx2780-2781; Appx2842-2843 (¶59). From the exclusive use of "memory" to refer to volatile memory, such as RAM, a POSITA could conclude only that the '794 Patent uses the term, "cache memory," to refer to a cache with volatile memory, such as RAM. Appx2781; Appx2843 (¶59).

Importantly, as the Board and both parties identified, **every time** the '794 Patent refers to the cache 102, it refers to the cache including both memory 103

and mass storage 104. Appx8; Appx2781; Appx2844 (¶61). This is clearly shown in Figures 1 and 2 of the '794 Patent:




FIG. 1

Appx33 (excerpted and annotated); Appx2751; Appx2818 (¶26).




FIG. 2

Appx34 (annotated); Appx2752; Appx2819 (¶26).

As seen in these figures, the cache 102 is comprised of both "memory" and "mass storage." Importantly, both parties' experts agree that cache 102 disclosed in the specification is an example of the recited "cache memory." Appx2782; Appx2844 (¶62); *accord* Appx2940-2941 (184:16-186:22) (Netflix's expert testifying that "[s]o that the cache memory that's introduced in line 8 of column 17 [Claim 1], which is required by lines 10 and 11 of this element of Claim 17 to

include a mass storage, **<u>I certainly think that a person of ordinary skill would understand that cache 102 would be an example of such a cache memory in these lines</u>**.") (emphasis added). Moreover, the Board ignored the fact that Netflix's expert was unable to identify a single embodiment that did not require both a memory and a mass storage device. Appx2782; Appx2941-2943 (187:21-193:11); *see* Appx2844-2845 (¶62). The description and figures leave no room for ambiguity: "memory" means "RAM."

In fact, Netflix's Petition interpreted the Challenged Claims the same way by interpreting the term "cache memory" to require both memory and mass storage. For example, Netflix argued:

> Medin also teaches that the cache servers have cache memory including mass storage because Medin teaches that the servers include **<u>both memory and disk storage</u>**. [Appx776-777 (¶143)]. For example, FIG. 3 of Medin depicts the disk array 306 (mass storage) that is used to store cached content on Medin's regional cache servers. *Id.*, *see also* [Appx870 (11:48-50); Appx867 (5:60-64)]. FIG. 5 of Medin shows that the regional servers also include **<u>memory</u>**. [Appx856; *see also* Appx868 (7:46-50); *id.* (7:61-8:2)]. Medin similarly teaches that the local caching servers include a mass storage device—cache storage 616—**<u>as well as memory</u>**. [Appx869 (9:8-9);

> *id.* (9:20-26); Appx868 (8:63-67); Appx869 (9:12-31)]; *see also* [Appx776-777 (¶143)].[4]

Appx88 (emphasis added); Appx2782-2783; Appx2845-2846 (¶¶63-64); *see* Appx3234. Only on reply did Netflix change position to argue that cache memory does not need to include memory. Again, however, the Board completely disregarded the substantial evidence of Netflix's own original reading of the term.

But as shown above, and as CA repeatedly demonstrated in the IPR before the Board, the '794 Patent's specification is the "single best guide" to determining the meaning of "cache memory including mass storage." *Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*, 811 F.3d 1334, 1339-40 (Fed. Cir. 2016) ("The claims 'must be read in view of the specification, of which they are a part.' . . . Indeed, we have said that the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'") (citations omitted).

Ignoring this "usually . . . dispositive," "single best guide," as well as the claim language itself, the Board agreed with Netflix's shifting argument, ultimately concluding that the term "cache memory" did not require memory at all. Appx10.

---

[4] As discussed further below, while Netflix argued that Medin includes both memory and disk storage, Netflix failed to present any evidence that Medin discloses a "memory" that is used as a cache as Medin's cache consists solely of mass storage. *Infra*, §III.

The Board, however, offered no cogent reason for its variance from this Court's instruction to look primarily to the specification. The Board's conclusion reads out "memory" from the Challenged Claims because it allows a cache consisting of **only** mass storage to constitute "a cache **memory** including mass storage." This Court has held, "such a result is disfavored." *Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*, 811 F.3d 1334, 1340 (Fed. Cir. 2016) (citing *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.")). Thus, the Board's determination that "cache memory" "require[s] mass storage" but "permissively allow[s] other types of memory" is a plain mischaracterization of the '794 Patent, finds no support in the specification of the '794 Patent, and should be reversed.

#### 2. The Board mischaracterized the '794 Patent's prosecution history

In coming to its determination as to the scope of "cache memory," the Board, again without explanation, disregarded the specification in favor of Netflix's flawed interpretation of the prosecution history. In analyzing the prosecution history, the Board noted that "the file history refers to 'memory' broadly" and that "the applicant stated 'the term "memory" in the claims is meant to broadly encompass both fixed memories . . . as well as removable memories." Appx9 (citing Appx603). What the Board did not address is that the paragraph preceding the quoted paragraph discusses

the addition of nineteen "Beauregard-style claims reciting ***memories*** that store instructions," before adding boilerplate language about both the memories and the instructions in the ***preambles*** of the newly-added claims, which recited "[a] ***memory*** storing information including instructions." Appx598; Appx602-603 (emphasis added). A comparison of the claims at issue shows the important differences:

| Claim 1 | Claim 39 |
|---|---|
| 1. A method, including steps of: receiving a set of network objects in response to a first request to a server from a client; and maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage; wherein said step of maintaining includes steps of recording said network objects in said cache memory and retrieving said network objects from said cache memory, so as to substantially minimizes a time required for retrieving said network objects from said mass storage. | 39. A memory storing information including instructions, the instructions executable by a processor to control a cache engine, the instructions including steps of: receiving a set of network objects in response to a first request to a server from a client; and maintaining said network objects in a cache memory in the cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage; wherein said step of maintaining includes steps of recording said network objects in said cache memory and … |

Appx45 (17:5-17); Appx46 (20:57-67).

Thus, this comment is immaterial to the inventor's understanding of the term "cache memory" at time of filing. CA addressed this issue specifically before the Board, noting that "there is nothing in the file history that says cache memory can be any type of memory because that goes against what this whole patent is about." Appx3434 (28:17-20); *see also* Appx3241.

Neither Netflix nor the Board provided any authority indicating that this novel concept of "reverse prosecution history estoppel" can be used to ***broaden***, using a statement from the prosecution history, the plain and ordinary meaning of any limitation, let alone a limitation the statement did not address. This Court therefore

should reverse the Board's improper determination. Appx3241. The Board's understanding of "cache memory" finds no support in the intrinsic evidence and should be reversed.

### C. The extrinsic evidence confirms that "cache memory" must include both volatile memory and mass storage

In addition to the intrinsic evidence noted above, the extrinsic evidence also provides substantial support showing that "cache memory" must include both volatile memory and mass storage. Initially, CA showed that this usage is consistent with the use of the term "memory" in each of Medin, Seltzer, and Markatos. *See, e.g.*, Appx868 (7:50) (referring to "software devices in a memory module 504"); Appx885 (referring to RAM as "memory" consistently); Appx908 (distinguishing between documents stored in "main memory" and those stored on disk and proposing "Main Memory Caching of frequently requested Web documents on the Web server's memory"); Appx2781; Appx2843-2844 (¶60). In fact, a detailed review of Netflix's three references reveals not a single use of "memory" to refer to anything other than main memory (i.e., volatile memory such as RAM). *Id*.

In addition, CA presented substantial extrinsic evidence showing that a POSITA also would have understood, at the time of invention, that the term "memory" referred nearly exclusively to RAM. *Id*. For example, one prominent computer dictionary at the time defined "memory" thus:

> A device where information can be stored and retrieved. In the most general sense, memory can refer to external storage such as disk drives or tape drives; **<u>in common usage, it refers only to the fast semiconductor storage (RAM) directly connected to the processor</u>**. *See also* core, EEPROM, EPROM, flash memory, PROM, RAM, ROM. <u>***Compare*** **bubble memory, mass storage**</u>.

Appx2998 (emphasis added); Appx2782; Appx2843-2844 (¶60). In support of this analysis, CA offered expert testimony that "a POSITA at the time would most often use the 'common usage' for memory, i.e., to refer 'only to the fast semiconductor storage (RAM) directly connected to the processor,'" and CA's expert noted, "this usage is consistent with the usage I describe above in the '794 Patent, Medin, Seltzer, and Markatos." Appx3243; Appx2844 (¶60). Moreover, the Board's agreement with Netflix's "most general sense" of the term "memory," disregards the distinction drawn directly between "memory" and "mass storage" in the cited dictionary's reference to related terms, which parallels the distinction between "memory" and "mass storage" in the recited "cache memory including mass storage." Appx3243; Appx3015-3016; Appx2998.

CA presented substantial extrinsic evidence indicating that a POSITA would understand that the plain and ordinary meaning of the term "cache memory," as used in the claim limitation, "a cache memory in a cache engine, . . . said cache memory including mass storage," to mean a cache including both memory and mass storage.

Appx2783; Appx2845-2846 (¶¶63-64). The Board's flawed understanding of "cache memory" finds no more support in the extrinsic evidence than the intrinsic evidence, and as such, the Board's construction should be reversed.

## III. Medin does not disclose a "cache memory" when analyzed using the proper plain and ordinary meaning of the term

Based on its overly broad understanding of "cache memory," the Board found that Medin disclosed "maintaining said network objects in cache memory in a cache engine, . . . said cache memory including mass storage," set forth in each of the Challenged Claims. Appx45 (17:8-11, 17:41-44); Appx16. However, as noted above, the Board's determination as to the plain and ordinary meaning of "cache memory" is flawed, and the record contains no evidence that Medin's caches include anything but mass storage devices. Appx2783-2784; Appx2846 (¶64). On this point, there is no legitimate dispute. *See generally* Appx2767-2776; Appx2780-2787; Appx3248-3249.

### A. Overview of Medin

Medin discloses a distributed, hierarchical network architecture with local and regional servers that can obtain network objects from remote source servers and present these objects to clients. Appx2767; Appx2825-2826 (¶36); *accord* Appx850. These local and regional servers act as proxy servers, which satisfy web requests from end users. Appx2767; Appx2827 (¶38). As CA noted in the underlying IPR, a POSITA would understand that a proxy server acts similarly to a

web server, except that the files it serves are files that have been requested previously by users, obtained from the original source (or another proxy), and cached at the proxy to serve further requests from users. *Id*. Figure 1 is an example of such a network architecture:




FIG. 1

Appx852 (annotated); *see* Appx866 (3:51-54); Appx2768; Appx2826 (¶36).

The network includes a private backbone 102 that essentially connects the Internet 170 and a variety of content sources (represented by LANs 114) to a number of end users 124 through private network 180 that includes a network of regional data centers ("RDC") 118 and modified head ends ("HE") 120. Appx2768;

Appx2826-2827 (¶37); *accord* Appx866 (3:51-4:30) (describing Internet 170); *id.* (4:31-45) (describing private network 180).

Figure 3 illustrates an exemplary RDC 118:




FIG. 3

Appx854 (annotated); Appx2769; Appx2829 (¶40). The RDC 118 includes a regional server 302, as illustrated by Figure 3. Appx866 (4:32-34); Appx2769; Appx2829 (¶40). Medin discloses, "[t]he regional server 302 may include a cluster of computers for high availability and performance. In this embodiment, the regional server 302 comprises two regional computers 304 which are both able to access a regional disk array 306 via a regional array controller 305." Appx867

(5:60-64); Appx2769-2770; Appx2829 (¶40). The regional computers 304 are illustrated by Figure 5:




FIG. 5

Appx856 (annotated); Appx2770; Appx2830 (¶40). Medin does not describe any relevant functionality of the regional computers themselves, other than the following disclosure:

> The regional web (http) server 524 serves multimedia content from the regional server 302 to end-user systems 124. The multimedia content is served in the form of html, vrml, image, audio, and video files, or may be in other forms. These files may be updated via replication

> from the central server 703 and amongst the regional servers 302.

Appx868 (8:37-42); Appx2770; Appx2830 (¶40). Of more relevance is the way Medin describes the function of the regional server, as providing the regional computers access to the regional disk array. Appx2771; Appx2830 (¶40).

Although Medin provides few specifics about the regional disk array, the parties' experts agree that this regional disk array, which is shared by the regional computers, provides mass storage (as indicated by the term "disk") and is not memory (RAM), as that term is used in the '794 Patent. Appx2771; Appx2831 (¶41); *accord* Appx2902-2904 (30:10-38:22). The parties' experts also agree that a POSITA would understand that such a disk array typically would be maintained by a file system. Appx2771; Appx2831 (¶41); *accord* Appx2904-2905 (38:23-41:1). Moreover, in the absence of contrary disclosure (which Medin lacks), a POSITA would have no reason to believe that such an operating system would be able to use such a disk array in a cache without a file system. Appx2771; Appx2831 (¶41).

The parties' experts also agree that Medin fails to disclose caching web content in any location other than the regional disk array; for example, they agree that Medin does not disclose caching web content in the memory module 501, which Medin teaches merely holds "software devices" (i.e., running operating system and programs). Appx2771-2772; Appx2905 (41:25-42:11); Appx2906 (47:2-12);

*accord* Appx2831-2833 (¶¶42-43).[5] Thus, CA provided substantial evidence showing that there is no factual dispute that, with respect to the regional server: (1) Medin fails to teach a cache that includes a memory and mass storage, and (2) Medin fails to teach maintaining network objects in mass storage without a file system. Appx2772; Appx2832-2833 (¶43).

Medin further discloses that the HEs 120 communicate with the RDCs 118. Figure 4 illustrates an exemplary HE:




FIG. 4

[5] The parties' experts agree that the memory modules 501 and 601 in Figures 5 and 6, respectively, of Medin are mislabeled and are referenced in the specification with the numerals 504 and 604 respectively. Appx2772 (n.4); Appx2832 (¶43) (n.2); *accord* Appx2905 (43:2-25); Appx2913 (73:9-24).

Appx855 (annotated); Appx2773; Appx2833 (¶44).

Each of the HEs comprises (in addition to other equipment that is not material here) a caching server 402, which itself includes one or more caching computers 403, as illustrated above in Figure 4. Appx867 (6:37-48); Appx2774; Appx2834 (¶45). The caching computers 403 are further illustrated by Figure 6 (reproduced and discussed below).




FIG. 6

Appx857 (annotated); Appx2774; Appx2834 (¶45). Of note, the caching computer 403 includes cache storage 616 and memory module 601. Appx2774-2775; Appx2835 (¶45).[6] As with the regional server, the parties' experts agree that

[6] As noted above, the memory module 601 of Figure 6 is referenced using numeral 604 in the specification. *See supra* n.5; Appx2835 (¶45) (n.3).

Medin teaches that the cache storage 616 is mass storage. Appx2775; Appx2835 (¶45); *accord* Appx2909 (58:24-60:4). The experts also agree that Medin does not teach storage of web content anywhere but in this mass storage 616. Appx2775; Appx2835 (¶46); *accord* Appx2909-2911 (58:12-66:23). Finally, as with the disk array of the regional server discussed above, Medin does not disclose that the cache storage 616 could be usable without a file system, and without such disclosure, a POSITA would assume that the cache storage 616 requires a file system to maintain objects in storage. Appx2775; Appx2835 (¶46).

Thus, there is no material dispute between the parties' respective experts on the following points:

1. Medin fails to teach that web data is cached anywhere but in mass storage (i.e., the disk array 306 of the regional server 302 (*see* Figures 3 and 5 above) and the cache storage 616 of the caching computer 403 (*see* Figures 4 and 6 above)); and
2. Medin fails to teach that the mass storage is maintained without a file system.

Appx2775-2776; Appx2836 (¶47). Moreover, as CA's expert, Dr. Sundaresan, testified, a POSITA would not find it obvious, based on Medin's disclosure, to implement the mass storage without a file system. Appx2776; Appx2836 (¶47). As such, it is clear that Medin's disclosed memory is not used for caching because

Medin's caches are solely comprised of mass storage devices that are maintained by file systems.

### B. Medin fails to disclose a cache memory with mass storage

While the Board concluded that "Medin's teachings of local and regional servers that cache frequently-accessed information or content and that are connected via a network to content servers and end users satisfy this claim limitation," this conclusion is based on an improper construction of "cache memory" and is unsupported by evidence. Appx16; *compare id.*, *with* Appx2783-2784; Appx2846 (¶64). Contrary to the Board's conclusions, the underlying record contains no evidence that Medin caches network objects in anything but mass storage devices; nor does the record provide any indication that these mass storage devices might be memory. *Id.*

#### 1. Medin's memory modules 504 and 604 are not part of Medin's cache

The Board based its obviousness findings for this limitation largely on Netflix's arguments regarding Medin's regional servers and local caching servers. Appx14-16. The Board relied on Netflix's arguments that "FIG. 5 of Medin shows that the regional servers also include memory," and "Medin similarly teaches that the local caching servers include a mass storage device—cache storage 616—as well as memory." Appx14-15 (citing Appx88). However, Medin's memory modules 504 and 604 identified by Netflix are not part of any cache. Appx2784; Appx2846-2847

(¶65).[7] Instead, as noted above and in the underlying IPR, a review of Medin indicates that the disclosed memory modules are used only to hold running programs, and Medin nowhere even suggests that this memory is used to cache web content. Appx2784; Appx2847 (¶65).

Netflix's expert could not dispute this teaching and acknowledged that Medin fails to disclose caching content in the memory module 504:

> Q So maybe I'll say it this way then: As you sit here today, you're not aware of any disclosure in Medin that talks about the content obtained from sources 114 is disclosed -- I'm sorry -- is stored in memory module 504, correct?
>
> A Well, I don't see that it says in that section of this description of a preferred embodiment at the bottom of 11 where it is being stored in memory module 504. But that's just one embodiment.
>
> And Medin does describe that the invention is not intended to be limited by the preferred embodiments discussed within the specification.
>
> And I think there are a lot of things that could be consistent with what's described and claimed in Medin that are not actually disclosed.

[7] As noted in the underlying IPR, memory modules 504 and 604 are mislabeled 501 and 602 in Figures 5 and 6, respectively. Appx2784 (n.7).

Appx2906 (48:3-19); Appx2784-2785; Appx2847 (¶66). While Netflix's expert argued that "[Medin's] invention is not intended to be limited by the preferred embodiments," he was unable to identify any location in Medin that teaches the caching of content in the memory module 504, likely because Medin neither teaches nor suggests that content might be cached anywhere by the regional server other than the disk array, let alone in the memory module 504. Appx2785; Appx2848 (¶66).

Similarly, regarding the local server (caching computer), Netflix's expert did not identify any disclosure in Medin that disclosed caching of content in memory module 604. Appx2785; Appx2848 (¶67). Dr. Houh did, however, identify cache storage 616 as the location Medin discloses as caching web content in the local server:

> Q Does the Medin reference talk about whether -- well, bad question.
>
> In the description of Medin, does caching module 622 store information from LANs 114 in any location other than cache storage 616?
>
> A Well, I'm looking in column 11, where it's describing some of the interaction with the cache storage 616. And I don't see that it's limiting that storage only to be in 616; it's just in this preferred embodiment, it's describing the use of cache storage 616.

Appx2910 (63:7-17); *see* Appx2785-2786; Appx2848-2849 (¶67). While Netflix's expert refused to concede that the cache 616 is the only place the local server caches content, he could not identify any other location (including, in particular, memory module 604) where the local server does cache content; this is unsurprising, because Medin discloses no location for the local cache other than in the cache storage 616. Appx2786; Appx2849 (¶67). However, the Board disregarded the entirety of this substantial evidence in agreement with Netflix's argument.

Thus, while the Board relied on Netflix's argument that the memory modules 504 and 604 disclose the recited memory in the term "cache memory," the Board disregarded unrebutted evidence showing that Medin provides no such teaching of using memory to cache anything. Appx2786; Appx2849 (¶67). As a result of this faulty conclusion, as well as the Board's incorrect finding regarding the scope of "cache memory," the Board's decisions regarding Medin should be reversed.

### 2. Medin's disk array 306 or cache storage 616 is not "memory"

The Board also relied on Netflix's argument that "Medin similarly teaches that the local caching servers include a mass storage device—cache storage 616—as well as memory" and that "Medin teaches storing network objects on disk arrays and cache storage devices." Appx14-15; Appx88. However, this issue again highlights the error in the Board's determination as to the scope of "cache memory," because it

shows that the Board's determination does not maintain the '794 Patent's requirement that the "cache memory" have both a volatile memory and mass storage.

As noted above, and in the underlying IPR, this conclusion is contrary to the '794 Patent's specification, as well as Netflix's own arguments. Appx2786-2787; Appx88 ("For example, FIG. 3 of Medin depicts the disk array 306 (**<u>mass storage</u>**) that is used to store cached content on Medin's regional cache servers.") (emphasis added); *id*. ("Medin similarly teaches that the local caching servers include **<u>a mass storage device</u>**—cache storage 616—**<u>as well as memory</u>**.") (emphasis added); Appx2849 (¶68). As Netflix previously took the position that these devices are mass storage, and specifically distinguished mass storage from "memory," the Board improperly determined that these elements also satisfy the "memory" requirement of "cache memory." Appx2787; Appx2849-2850 (¶68). Under a proper construction of "cache memory," there is no legitimate argument that Medin discloses the required distinct elements of memory and mass storage, and the Board's determinations on this issue should be reversed.

## IV. A POSITA would not find it obvious to combine Medin and Seltzer such that a combination of these references would disclose limitation [d] of claim 1

Limitation [d] of claim 1 states, "so as to substantially minimizes a time required for retrieving said network objects from said mass storage," and the Board concluded that "a person of ordinary skill would have been motivated to combine

the teachings of Medin and Seltzer" to disclose this limitation. Appx45 (17:5-17); Appx19-20. However, the Board based its decision on the incorrect construction of "cache memory," and in doing so, ignored substantial evidence showing that there is no reason to combine Medin and Seltzer such that the combination of these references would disclose limitation [d] of claim 1. *See* Appx2789; Appx2852 (¶71); *see generally* Appx2776-2777; Appx2787-2793; Appx3249-3252.

### A. Overview of Seltzer

Seltzer is titled, "An Implementation of a Log-Structured File System for UNIX," and that title summarizes Seltzer's disclosure well. Appx881; Appx2776; Appx2836-2837 (¶48). Seltzer's log file system ("LFS") "offers the potential for dramatically improved write performance, faster recovery time, and faster file creation and deletion than traditional UNIX file systems." *Id*. Seltzer's authors admit, however, that, "[u]nfortunately, an enhanced version of FFS (with read and write clustering) [] provides comparable and sometimes superior performance to our LFS." *Id*. As an additional advantage over FFS (an earlier "Fast File System"), "[h]owever, LFS can be extended to provide additional functionality such as embedded transactions and versioning, not easily implemented in traditional file systems." *Id*.

Seltzer generally discloses **a file system** which provides some features that are similar to certain aspects of the '794 Patent's disclosure. Appx94-97; Appx2776;

Appx2837 (¶49). A POSITA would quickly ascertain, however, that Seltzer does not disclose the caching of network objects, and in fact does not mention anything about storage, retrieval, or service of web pages or any other network objects. Appx94-97; Appx2776-2777; Appx2837 (¶49). Instead, Seltzer proposes an alternative to a normal file system, which allegedly increases performance in storage and retrieval of operating system files and other files on an ordinary UNIX computer under certain circumstances. *Id.*

### B. There is no motivation to combine Medin and Seltzer

As justification for combining Medin and Seltzer, the Board relied on Netflix's argument that "Medin and Seltzer are directed to the same area—systems for storing information—and share the goal of improving the speed and efficiency of such systems." Appx19-20 (citing Appx76-77). But this rationale would render obvious the combination of any two references disclosing different computer systems, because virtually all computer systems are directed to systems for storing information, and virtually all computer system designers have a generic goal of improving speed and efficiency. Appx2789-2790; Appx2852 (¶71).

The Board also relied on Netflix's argument that "applying Seltzer's techniques for their stated purpose of optimizing the writing and retrieval of files in computers such as those taught in Medin amounts to 'a combination of familiar elements according to known methods' to 'yield predictable results." Appx18;

Appx78; Appx2790; Appx2853 (¶73). This argument misunderstands both Seltzer and Medin. As CA pointed out, Netflix's own cited reference, Markatos, teaches that implementing a file system caching technique, such as that disclosed in Seltzer for web caches, is not a combination of familiar elements, nor does it yield predictable results:

> Our approach is in several ways similar to file system caching []. However, Main Memory Caching of Web Documents differs from file system caching mainly because Web access patterns are different from file access patterns: Web clients access *entire* Web documents, in *read-only* mode, (usually) *only once*. On the other hand, file systems access *portions* of files, usually in *read-rite* mode*, repeatedly*.
>
> For the above reasons we believe that caching policies used in file systems should not be used " per se" in Main Memory Web caches as well. Our performance results strengthen our point even more.

Appx918 (emphasis in original); *see also* Appx907-908 (discussing several reasons why, "as we show in this paper, traditional methods for caching like those used in file systems do not perform well for Web traffic . . . ."); Appx2790-2791; Appx2853-2854 (¶73). As a result, this disclosure in Netflix's own prior art directly opposes the combination of Seltzer and Medin – a combination that the Board held would have been obvious to a POSITA.

The Board's dismissal of this argument is grounded in the Board's misunderstanding of the "memory" and "mass storage" elements of the '794 Patent. Appx20. This can be seen by the Board's argument that "[e]ven if Markatos's system purportedly outperforms other systems, that does not change the fact that Seltzer suggests techniques to improve Medin's teachings that a POSITA would have had reason to implement to substantially minimize the time for retrieving network objects from mass storage with a reasonable expectation of success." *Id*. CA demonstrated the flaws with this analysis by highlighting that, based at least on the disclosure of Markatos, a POSITA would have no reasonable expectation of success in combining Seltzer with Medin. Appx2792; Appx2855 (¶75). And while the Board and Netflix relied heavily on Netflix's expert testimony, Dr. Houh's testimony amounts to little more than a restatement of Netflix's own argument. *Compare* Appx79, *with* Appx760 (¶121); Appx2792; Appx2855 (¶75). On the other hand, the record evidence presented by CA indicates clearly that a file system caching technique (such as Seltzer's) is inappropriate for a web caching system given the distinct differences between the caching needs for files verses web content – differences expressly highlighted by Netflix's own prior art. Appx907-908; Appx918; Appx2793; Appx2856 (¶76).

As such, the balance of the record evidence, rather than unsupported, conclusory testimony set forth by Netflix and adopted by the Board, indicates that a

POSITA (such as Markatos himself) would have no reasonable expectation of success in this combination. Appx2793; Appx2856 (¶76). Thus, the Board's conclusions with respect to the combination of Medin and Seltzer should be reversed for lack of substantial evidence.

## V. Markatos does not disclose limitation [c] of claim 17 and no combination of Medin and Markatos discloses limitations [b] and [c] of claim 17

With respect to claim 17, the Board erred in concluding that Markatos discloses limitation [c] and that the combination of Medin and Markatos discloses limitations [b] and [c], which recite, in pertinent part, "[b] maintaining said network objects in a cache memory in a cache engine, . . . said cache memory including mass storage[,] [c] wherein said step of maintaining is performed independently of a file system for said mass storage." Appx45 (18:13-18); *see* Appx27-28; Appx2795; Appx2857-2858 (¶80).

As discussed further below, Markatos does not disclose limitation [c] of claim 17, because Markatos does not maintain requested documents solely in main memory, but rather a combination of main memory and mass storage, and requires the use of a file system. With respect to the combination of Medin and Markatos, the Board's conclusion disregards the fact that limitations [b] and [c] must be read together, and the Board's combination would comprise a cache memory with a main memory and mass storage that maintains objects using a file system, in direct contradiction to requirements of limitation [c]. Furthermore, the Board's decision

sidesteps this evidence by finding that claim 17 can be satisfied by maintaining certain network objects in memory without using a file system, while other network objects can be maintained in mass storage using a file system – a finding that improperly reads the individual limitations of claim 17 in isolation and effectively rewrites claim 17 to directly contradict the very teachings of the '794 Patent. *See generally* Appx2777-2779; Appx2794-2803; Appx3244-3248; Appx3252-3255.

**A. Overview of Markatos**

Markatos is titled, "Main memory caching of Web documents," and it "propose[s] the notion of caching a World Wide Web server's documents in its main memory (which we call Main Memory Web Caching)." Appx907; Appx2777; Appx2837 (¶50). Markatos claims to show that even a small amount of main memory (512 Kbytes) that is used as a document cache, "is enough to hold more than 60% of the documents requested." *Id*.

Markatos discloses a proposal based on a set of simulations (not a working system) using web traces from five different web servers at universities around the world, which Markatos refers to as "Crete," "Parallab," "NCSA," "FORTH," and "Rochester." Appx908-909; Appx2777; Appx2797; Appx2838 (¶51); Appx2860 (¶85). "These traces were fed into a trace-driven simulator that simulates a main memory cache of a given size" and applies different caching policies: (1) caching all documents until the memory cache is full, at which time least recently used (LRU)

documents are removed from the cache, (2) caching all documents up to a certain document size threshold and then removing LRU documents, and (3) a dynamic threshold policy implementing LRU removal. Appx909; Appx2777-2778; Appx2838 (¶51).[8]

Specifically, Markatos describes its proposal as follows:

> In this paper we propose and explore *Main Memory Caching* of frequently requested Web documents on the *Web server's memory*. That is, if a document is frequently accessed, then it is kept in the Main Memory Cache, inside the Web server's address space. **The server accesses its own cache directly, without any help from the file system.** When a client requests a document that resides in the server's main memory cache, the document is directly read from the server's cache and sent to the client without making any file system calls to access the document.

Appx908 (italics in original) (emphasis added); Appx2778; Appx2838-2839 (¶52).[9]

In other words, Markatos's proposed system can avoid use of file system only to the

---

[8] Although Markatos uses the term LRU to abbreviate "last recently used," the common use of that abbreviation in cache replacement policy is "least recently used," and a POSITA would understand that Markatos simply misspelled that common phrase. Appx2778 (n.6); Appx2838 (¶51).

[9] Netflix never argued in its Petition that the disk in Markatos's proposed system would not include a file system, and in fact seems to agree that it would, because Netflix cited this exact passage. Appx112-113 (quoting Appx908) (citing Appx814-815 (¶204)); *see* Appx2802; Appx2865-2866 (¶91). Instead, Netflix initially argued

extent the system can find the requested documents in main memory (i.e., RAM). Appx2778; Appx2839 (¶52).

Markatos evaluates whether a requested document is found in main memory based on a "Cache Hit Rate" with the goal of achieving the highest possible hit rate. Specifically, Markatos states: "The ultimate goal of each Web server is to be able to serve client requests at the maximum rate. This rate becomes higher when most of the requested documents are found in the Main Memory Cache. Thus, the Cache Hit Rate is a fundamental factor in the server's performance." Appx909; Appx2779; Appx2797; Appx2839 (¶53); Appx2860-2862 (¶85). The cache hit rate can be calculated by document or by byte, but in each case, it represents "the ratio of the number of [documents | bytes] found in the cache to the number of [documents | bytes] requested." Appx910; Appx2779; Appx2839 (¶53).

However, Markatos's proposed system never achieves a cache hit rate of 100%, which means not all the documents requested by a client will be found in the main memory cache. Instead, as Netflix's expert agrees, the hit rates for various schemes rarely exceed approximately 90%, thereby showing that at least 10% of the requested documents are cache misses – i.e., these documents are not stored in the

---

Markatos teaches a system in which documents are never obtained from disk, because this is the only way Markatos can be read to disclose, "wherein said step of maintaining is performed independently of a file system for said mass storage," as claim 17 requires. Appx45 (18:17-18); Appx2802-2803; Appx2866 (¶91).

main memory cache. Appx2797; Appx2799; Appx2860-2862 (¶85); Appx2926-2928 (127:20-136:6). For requested documents not found in main memory, Markatos's proposed system obtains the requested documents from a disk using a file system. Appx2839 (¶53) (citing Appx910) (noting that a document not found in the Main Memory Cache is retrieved from disk).

Figures 12 and 13 of Markatos summarize the document hit rates of all the simulations, and they show what Netflix's expert accurately describes as "showing, for each of the traces, a ton of comparisons between adaptive and other policies." Appx2928 (134:12-14); Appx2797; Appx2860 (¶85).



Fig. 12. Performance of the adaptive policy.



Fig. 13. Performance of the adaptive policy.

Appx916 (annotated); Appx917 (annotated); Appx2798; Appx2861 (¶85). As these figures show, the "best" hit rates of all of the simulations vary between around 60% and 90%, which Netflix's expert confirmed:

Q Okay. And then, in Figure 12, the maximum hit rate that you get is somewhere between 60 and -- probably around 60 percent. Is that what Figure 12 is showing?

A Well, I mean, I think, you know, adaptive kind of goes all over the place, between 50 something and maybe 60 something, if that's what you're referring to, the adaptive bar. The different bars are color-coded or gray-shade coded.

Q Right. All I'm trying to say is that, in the best scenario, you get a hit rate of somewhere around 60 percent with a cache of 512 kilobits, right?

A For particular traces indicated and the specific sequence of requests in the trace for the simulation, that's the result.

Q Okay. So then, with the larger cache shown in Figure 13, the best hit rate you get is somewhere around 90 percent; is that right?

A That's about -- that looks about right.

Appx2928 (135:10-136:6); Appx2798-2799; Appx2861-2862 (¶85).

Netflix's expert also agreed that Markatos's proposed system would obtain from mass storage (e.g., a disk) the documents that are cache misses:

Q Okay. So, in this case, if they can't find it in cache, they have to get it from the disk; is that right?

> A In Markatos, that would be the case. If it's not in the cache, it would be retrieved from the disk.

Appx2924 (117:14-19); Appx2799; Appx2862 (¶86).

Thus, Markatos teaches that, in the best-case simulation, 10% of the requested documents are not stored in the main memory cache, and Markatos's proposed system would obtain these documents from mass storage by using a file system. Appx2799; Appx2862-2863 (¶86).

### B. Markatos fails to disclose limitation [c] of claim 17

The Board relied on Markatos alone as teaching limitation [c] of claim 17,[10] which recites, "wherein said step of maintaining is performed independently of a file system for said mass storage." Appx27-28; *see* Appx2794; *see also* Appx2857 (¶79). In reaching this conclusion, the Board relied on Netflix's argument that, "Markatos teaches 'said step of maintaining is performed independently of a file system for said mass storage' because Markatos teaches caching web documents in the main memory of a web server independently of the file system for the mass storage of a web server." Appx25; Appx112-113 (citing Appx813 (¶202)).

[10] As explained above, no POSITA would understand Medin's disclosure to suggest that its mass storage devices, which is the only cache disclosed in Medin, can be implemented without a file system, thus Medin could not disclose limitation [c]. *See supra* §III.A "Overview of Medin"; Appx2796; Appx2859 (¶82).

However, as the above evidence shows, Markatos does not maintain the requested documents (i.e., network objects) solely in main memory, but rather a combination of main memory and mass storage. Further, the mass storage uses a file system to maintain the requested documents. As noted above, there is no factual disagreement that Markatos teaches that a material portion of the documents in each simulation (between 10%-50%) must be obtained from disk because they are cache misses. Appx2803; Appx2866 (¶92). Thus, in any scenario under Markatos's proposed system where one or more documents is retrieved from a disk, the network objects maintained in Markatos's proposed system necessarily would **not** solely be stored in the main memory cache. *Id*.

Moreover, while the Board disregarded this substantial evidence, the indisputable inference a POSITA would take from Markatos is that the disk that stores cache misses employs a file system, because Markatos teaches that for cache hits, "[t]he server accesses its own [main memory] cache directly, without any help from the file system," and, thus, documents not found in main memory (i.e., cache misses) are found on a disk implementing a file system. Appx908; Appx2801-2802; Appx2865 (¶90). Undisputed evidence shows that a POSITA would expect a typical mass storage device to have a file system and would expect that such a device likely would not work without a file system. Appx2802; Appx2865 (¶90).

Thus, from the entirety of Markatos's disclosure, a POSITA would conclude that Markatos teaches that the step of maintaining network objects **is not independent** of a file system for the mass storage device as required by limitation [c]. Appx2803; Appx2866 (¶92). As the Board completely disregarded this argument in concluding that Markatos disclosed limitation [c] of claim 17, the Board's conclusion should be reversed.

### C. The combination of Medin and Markatos fails to disclose limitations [b] and [c] of claim 17

As shown above, the Board erred in relying on Netflix's argument that Markatos teaches limitation [c] based on the flawed reasoning that Markatos uses only main memory for caching. Appx25 (citing Appx112-113). Furthermore, the Board erred in concluding that Medin discloses limitation [b] based on its flawed construction of the "cache memory" term. *See supra* §III "Medin does not disclose . . . "; *see also* Appx2780-2789; Appx3248-3251; Appx2856-2857 (¶78).[11]

Flowing from these incorrect analyses, the Board agreed with Netflix that "a POSITA would have been motivated to modify Medin based on the teachings of Markatos to incorporate main memory caching in combination with Medin's

---

[11] Netflix agreed that limitation [b] of claim 17 is identical to limitation [b] of claim 1, and Netflix did not argue that Markatos remedies Medin's failing with respect to limitation [b]. *See* Appx111-112; Appx2794; Appx2856-2857 (¶78). The Board found that Medin disclosed limitation [b] of claim 17 for these reasons. Appx24.

teachings regarding a cache engine with cache memory that includes mass storage." Appx27. This finding is flawed, however, because it disregards the fact that limitations [b] and [c] must be read together and, as a result, the Board's adoption of Netflix's proposed combination improperly reads out the requirements of limitation [c].

#### 1. The Board's conclusion disregards the fact that limitations [b] and [c] must be read together

Limitations [b] and [c] of claim 17 collectively recite, in pertinent part, "[b] maintaining said network objects in a cache memory in a cache engine, . . . said cache memory including mass storage[,] [c] wherein said step of maintaining is performed independently of a file system for said mass storage." Appx45 (18:13-18); Appx2795; Appx2857-2858 (¶80). The Board's conclusion that the combination of Medin and Markatos teaches limitations [b] and [c] can be viewed in one of two ways, which both fundamentally change the requirements of claim 17: (1) the combination of Medin and Markatos no longer maintains network objects in a cache that includes mass storage, because the main memory is the only cache; or (2) the combination of Medin and Markatos maintains network objects in a cache that includes mass storage using a file system. Appx2795; Appx2858 (¶81). One of these two interpretations must be true, because neither Medin nor Markatos teaches maintaining network objects in a mass storage device without the use of a file system. Appx2795-2796; Appx2858 (¶81).

In support of its position, CA provided substantial evidence that the disk storage in Markatos's proposed system (i.e., a web server) operates in much the same manner as the mass storage devices in Medin's system (i.e., a proxy server). Appx2799-2800; Appx2839-2841 (¶¶54-56); Appx2863-2864 (¶¶87-88). As CA explained, a web server and a proxy server generally behave in similar fashions, except that a web server serves files stored permanently on its own mass storage device (and, as Markatos teaches, may use a RAM buffer to more efficiently serve web content). *Id.* A proxy server generally performs the same way, except that the files on its mass storage device are cached files, which have been obtained from another web server. Appx2800. With this distinction, the two servers operate very similarly in serving requested documents to clients – indeed, the entire point of a proxy is to transparently (to the client) replicate the functionality of the web server. *Id.*; Appx2839-2841 (¶¶54-56); Appx2863-2864 (¶¶87-88).

Thus, the mass storage device in Markatos, while technically not part of the cache, works essentially the same way as the mass storage devices in Medin. Appx2800; Appx2863 (¶88). In particular, Markatos discloses that its disk (i.e., mass storage) relies on a file system. Appx908 (noting that, "[w]hen a client requests a document that resides in the server's main memory cache, the document is directly read from the server's cache and sent to the client **without making any file system calls** to access the document") (emphasis added); Appx2800; Appx2863-2864 (¶88).

A POSITA would easily understand that Markatos's reference to "making any file system calls" refers to the file system of the server's own disk (mass storage device). Appx2800; Appx2864 (¶88).

In the web server context, therefore, Markatos's main memory cache is simply caching documents that are permanently stored on disk, so it is technically the only "cache." Appx2801; Appx2864 (¶89). When combined with Medin's proxy server system pursuant to the Board's finding, however, the disk on which Markatos's documents are stored (and from which they are cached in the main memory cache) would be the mass storage portion of the proxy cache, while the main memory cache would be the memory portion of the proxy cache. *Id.* Thus, in the combined Medin-Markatos system, any document that was a cache miss from the memory portion of the proxy cache would be obtained from the mass storage portion of the cache, which, as discussed above, indisputably uses a file system to maintain information. *Id.; see supra* §V.A.

Thus, the alleged modification of Medin by Markatos cannot disclose a cache memory that maintains network objects wherein this cache memory includes mass storage without using a file system. Appx2797; Appx2860 (¶84). But the Board did not address this argument, even though this alleged combination relies on Medin, which discloses only storing network objects in mass storage using a file system as a cache for limitation [b], and Markatos, which discloses storing and maintaining

network objects in both main memory and disk storage using a file system for limitation [c]. *See* Appx16 ("we determine [Netflix] has shown that Medin teaches this claim limitation [b]"); Appx25 ("[Netflix] contends Markatos teaches this limitation [c]"); *see also* Appx112-113; Appx2796; Appx2859 (¶82).

**2. The Board's conclusion disregards the "wherein" limitation**

Rather than directly addressing the clear shortcoming of Netflix's alleged combination of Medin and Markatos, the Board found that "[i]mplicit in [CA]'s arguments is an interpretation of claim 17 as requiring all network objects to be cached independently of the file system." Appx26. Based on this incorrect claim interpretation, the Board incorrectly concluded that merely "maintaining a set of network objects in a cache memory independently of a file system for a mass storage, where the cache memory includes a mass storage" is sufficient to teach the "wherein" limitation of claim 17, even if a caching system maintains other sets of network objects using the file system. Appx26-28. However, nowhere in its decision does the Board define the "set of network objects" it claims satisfies the limitations of claim 17. This is problematic because Medin, which the Board relied on exclusively to satisfy limitations [a] and [b], where the "set of network objects" is first defined, stores and maintains all of its network objects in mass storage using a file system, and Markatos stores only a percentage of the requested network objects in main memory (without a file system), with the remaining documents being stored and

maintained on disk using a file system. Therefore, regardless of the combination of Medin and Markatos, a portion of the "set of network objects" are maintained using a file system in direct contradiction of limitation [c]. Appx2795-2803; Appx3252-3255.

The Board's finding effectively holds that if a system built from the combination of Medin and Markatos were to cache any network objects in main memory, that system would be maintaining the entire recited set of network objects independently of a file system. *See* Appx3245. However, this effectively eliminates the "independently of a file system" claim limitation, which, as noted above, is one of the primary novelties disclosed in the '794 Patent. *Supra* §I "Overview of the '794 Patent" (discussing the '794 Patent criticisms of the delay created by a traditional proxy server storing network objects in mass storage using a file system). Such a result is contrary to the caselaw of this Court, which holds that invalidity findings that effectively eliminate claim limitations are disfavored. *Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*, 811 F.3d 1334, 1340 (Fed. Cir. 2016) (citing *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.")).

Moreover, contrary to the Board's findings, CA's analysis of claim 17 does not require "all network objects to be cached independently of a file system;" instead,

claim 17 requires ***maintaining*** all the recited "said objects" "independently of a file system for said mass storage." Appx26-27; Appx2795; Appx3245-3246. The claim language in the wherein portion of limitation [c] of claim 17 does not recite maintaining a cache; it recites "said step of maintaining," which refers to the recited "maintaining said network objects" in the cache. Appx3246. Importantly, limitation [c] does not say "maintaining *some* of said objects independently of a file system for said mass storage;" it says, "*said step of maintaining* [said network objects] is performed independently of a file system for said mass storage." *Id.*; Appx45 (18:13-18) (emphasis added); *see* Appx2795. The phrase, "said step of maintaining," refers to *all of* the recited objects, but not to the cache itself.

Therefore, in the context of claim 17, limitation [c] does in fact require maintaining "all" of the recited "said network objects" independently of a file system for the mass storage, not just "a set" (e.g., some) of the recited "said network objects," as the Board improperly concluded. Appx3246. For these reasons, the combination of Medin and Markatos does not disclose limitations [b] and [c], and this Court should reverse the Board's findings concerning claim 17.

## VI. Remaining Claims

For the purposes of this appeal, independent claim 9 has substantially the same limitations as independent claim 1, and the Board treated them in an identical manner. Appx13-21. Similarly, the Board incorporated its findings from

independent claims 1 and 9 to support its obviousness findings of dependent claims 3-8 and 11-16. Appx21-24. Likewise, independent claim 17 has substantially the same disclosures as independent claim 1, with respect to the preamble and limitations [a] and [b], as discussed above. *Supra* §V.C.1. As a result, the Board's findings concerning claims 3-9 and 11-17 should be rejected for the same reasons as the Board's findings concerning independent claim 1.

## CONCLUSION

For these reasons, the Board's determination that the Challenged Claims 1, 3-9, and 11-17 are unpatentable should be reversed or, at a minimum, vacated and remanded.

Respectfully submitted,

/s/ Daniel S. Young

Daniel S. Young
QUARLES & BRADY LLP
8210 Southpark Terrace
Littleton, CO 80120
(303) 268-0066 (telephone)
(833) 793-0703 (facsimile)
Email: dyoung@quarles.com

*Counsel for Appellant CA, Inc.*

# ADDENDUM

Trials@uspto.gov
571-272-7822

Paper 35
Entered: February 8, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE PATENT TRIAL AND APPEAL BOARD

---

NETFLIX, INC.,
Petitioner,

v.

CA, INC.,
Patent Owner.

---

IPR2021-01319
Patent 7,103,794 B2

---

Before KRISTEN L. DROESCH, NATHAN A. ENGELS, and JULIET MITCHELL DIRBA, *Administrative Patent Judges*.

ENGELS, *Administrative Patent Judge*.

# JUDGMENT
Final Written Decision
Determining All Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

# I. INTRODUCTION

Petitioner Netflix, Inc. filed a Petition (Paper 2, "Pet.") requesting *inter partes* review of claims 1, 3–9, and 11–17 of U.S. Patent No. 7,103,794 B2 (Ex. 1001, "the '794 patent"). Patent Owner CA, Inc. filed a Preliminary Response. Paper 7. The Board issued a Decision Granting Institution. Paper 15.

After institution, Patent Owner filed a Response (Paper 24, "PO Resp."), Petitioner filed a Reply (Paper 27), and Patent Owner filed a Sur-Reply (Paper 28). Both parties presented oral arguments, and a copy of the hearing is in the record. Paper 34.

Based on the complete record in this proceeding, we determine that Petitioner has shown by a preponderance of the evidence that claims 1, 3–9, and 11–17 of the '794 patent are unpatentable.

## *A. Real Parties in Interest*

Petitioner identifies Netflix, Inc. and Netflix Streaming Services, Inc. as the real parties-in-interest. Pet. 65. Patent Owner identifies CA, Inc. as the real party-in-interest. Paper 5, 1.

## *B. Related Matters*

The parties state that the '794 patent is the subject of *CA, Inc. v. Netflix, Inc.*, No. 2:21-cv-00080 (E.D. Tex.) and *Netflix, Inc. v. CA, Inc.*, No. 3:21-cv-03649 (N.D. Cal.). Pet. 65; Paper 5, 1. Patent Owner also identifies *Esoft, Inc. v. Blue Coat Systems, Inc.*, No. 1:06-cv-02192 (D. Colo.) as a related matter. Paper 5, 1.

## *C. The '794 Patent*

Titled "Network Object Cache Engine," the '794 patent describes a cache engine used to cache network objects such as HTML pages, text,

graphics, and frames of streaming audio or video. Ex. 1001, 6:30–35, codes (54), (57). The '794 patent states that the cache engine is in communication with a plurality of client devices and server devices via a network such that the cache engine receives protocol messages from client devices requesting network objects from the server devices. Ex. 1001, 3:3:4–19, 43–45. In response to the messages, the cache engine obtains the network objects from the server devices and transmits the network objects to the requesting client devices. Ex. 1001, 3:46–51. The cache engine preserves the network objects in its cache and reuses relevant network objects from its cache to respond to requests from other client devices. Ex. 1001, 4:1–4.

The '794 patent states that the cache engine includes a processor that may be a general-purpose processor operating under software control. Ex. 1001, 1:20–29. The cache engine also includes a cache which includes program and data memory and a mass storage, such as a plurality of disk drives. Ex. 1001, 3:30–41.

The '794 patent states that the cache is not a file storage system and network objects and other data maintained in the cache are transient, except for a small number of system objects required for operation. Ex. 1001, 4:15–24. The '794 patent also states that the cache engine operates exclusively to perform the operation of caching the network objects and has no separate operating system, no user, and no application programs. Ex. 1001, 4:34–38.

*D. Illustrative Claims*

Claims 1, 9, and 17 are independent claims. Claims 1 and 17 are reproduced below.

> 1. A method, including steps of:
>
> receiving a set of network objects in response to a first request to a server from a client; and
>
> maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;
>
> wherein said step of maintaining includes steps of recording said network objects in said cache memory and retrieving said network objects from said cache memory,
>
> so as to substantially minimizes a time required for retrieving said network objects from said mass storage.
>
> 17. A method, including steps of:
>
> receiving a set of network objects in response to a first request to a server from a client; and
>
> maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;
>
> wherein said step of maintaining is performed independently of a file system for said mass storage.

*E. Alleged Grounds of Unpatentability*

Petitioner asserts that claims 1, 3–9, and 11–17 would have been unpatentable on the following grounds:

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 3–9, 11–16 | 103[1] | Medin,[2] Seltzer[3] |
| 17 | 103 | Medin, Markatos[4] |

## II. ANALYSIS

### *A. Level of Ordinary Skill in the Art*

In determining the level of skill in the art, we consider the type of problems encountered in the art, the prior art solutions to those problems, the rapidity with which innovations are made, the sophistication of the technology, and the educational level of active workers in the field. *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986); *Orthopedic Equip. Co. v. U.S.*, 702 F.2d 1005, 1011 (Fed. Cir. 1983).

Petitioner contends a person of ordinary skill in the art ("POSITA") at the time of the invention would have been a person with a "bachelor's degree in electrical engineering, computer engineering, mathematics, or a similar field with at least two years of experience with computer networks and data storage, or a person with a master's degree in electrical engineering, computer engineering, mathematics, or a similar field with a specialization in computer networking." Pet. 24 (citing Ex. 1003 ¶¶ 25–26). Petitioner also states that a POSITA would have had knowledge of a list of

---

[1] Based on the June 8, 1998 filing date of the '794 patent, we apply the pre-AIA version of § 103.
[2] U.S. Patent No. 6,370,571 B1, issued Apr. 9, 2002 (Ex. 1004).
[3] Margo Seltzer, *An Implementation of a Log-Structured File System for UNIX*, Proceedings of the 1993 Winter USENIX (Jan. 25–29, 1993) (Ex. 1005).
[4] Evangelos P. Markatos, *Main Memory Caching of Web Documents*, Computer Networks and ISDN Systems, vol. 28, issues 7–11, pp. 893–905 (May 1996) (Ex. 1006).

topics, including the operation of networks, certain communication protocols, and caches. Pet. 24–25 (citing Ex. 1003 ¶ 27).

Patent Owner states that a POSITA would have had "a bachelor's degree in Electrical Engineering, Computer Science, or a similar discipline, with one or two years of experience in this or a related field." PO Resp. 21 (citing Ex. 2018 ¶ 20). Patent Owner notes that Petitioner presents a "similar" description of a POSITA, but Patent Owner states that it "does not necessarily agree with all of the 'knowledge' required by Petitioner's definition." PO Resp. 21. Patent Owner states, though, that "any differences in the parties' view of a POSITA are not material" to Patent Owner's arguments. PO Resp. 21.

Based on the complete record, we determine an appropriate definition of the level of ordinary skill is a person with a bachelor's degree in electrical engineering, computer science, or a similar discipline with two years of experience with computer networks and data storage, which is consistent with the parties' contentions.

*B. Claim Construction*

We construe claims using the principles set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–17 (Fed. Cir. 2005) (en banc) and related cases. 37 C.F.R. § 42.100(b) (2021). Under that precedent, the words of a claim are generally given their "ordinary and customary meaning," which is the meaning the term would have to a person of ordinary skill at the time of the invention, in the context of the entire patent including the specification. *Phillips*, 415 F.3d at 1312–13.

1. *"receiving a set of network objects in response to a first request to a server from a client"*

Petitioner contends the claim language "receiving a set of network objects in response to a first request to a server from a client" would have been understood by a person of ordinary skill to be a step that must be performed at the cache engine. Pet. 25. Further, Petitioner states that the limitation should be construed to mean "receiving a set of network objects at the cache engine in response to a first request to a server from a client." Pet. 25–26. According to Petitioner, claims 20, 28, 39, and 47 require a cache engine that performs an equivalent receiving step, and Petitioner additionally cites certain dependent claims and portions of the Specification as support for its argument. Pet. 26–27 (citing Ex. 1001, 1:26–35, 3:42–51, 5:61–67, claims 2–6, 10–14).

Patent Owner disagrees with Petitioner's proposed construction and contends this limitation does not require any construction. PO Resp. 21 (citing Ex. 2018 ¶ 21). Patent Owner also states that the construction of this limitation is immaterial to the patentability of the challenged claims. PO Resp. 21.

We determine it is unnecessary to expressly interpret this limitation to resolve the issues presented in this proceeding. *See Realtime Data, LLC v. Iancu*, 912 F.3d 1368, 1375 (Fed. Cir. 2019) ("The Board is required to construe 'only those terms . . . that are in controversy, and only to the extent necessary to resolve the controversy.'") (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).

2. *"cache memory"*

Independent claims 1, 9, and 17 recite "maintaining said network objects in a cache memory in a cache engine, . . . said cache memory

including mass storage." Patent Owner contends the plain and ordinary meaning of the claimed "cache memory" includes "both a memory (*e.g.*, RAM) and mass storage (*e.g.*, disk drives)." PO Resp. 35; *accord* Sur-Reply 3–4. Petitioner contends the term "cache memory" is not limited to any particular type of memory, other than the requirement that it includes mass storage. Reply 10; *see* Reply 11, 13 (noting the claims recite that the cache memory includes mass storage).

As an initial matter, we note that neither party contends that the claim language is ambiguous. The '794 patent's Specification does not use the term "cache memory," but both parties cite the Specification's references to a cache that includes a "memory" and a mass storage. PO Resp. 6–10, 35, 36 ("**every time** the '794 [p]atent refers to the cache 102, it refers to the cache including both memory 103 and mass storage 104"); Reply 13, 15–17. The parties also note that the Specification identifies RAM as an example of "memory," as in the following passage: "a cache engine determines directly when and where to store those objects in a memory (such as RAM) and mass storage (such as one or more disk drives)." Ex. 1001, 2:8–10, code (57); *see* PO Resp. 35, 37, 38; Reply 8, 12; Sur-Reply 10–12.

Citing those examples, Patent Owner argues "the '794 [p]atent uses the term 'memory' exclusively to refer to volatile memory, such as RAM." PO Resp. 35 (citing Ex. 1001, 2:9–10, 3:30–31, code (57), Figs. 1, 2). Further, citing the Declaration of Karthikeyan Sundaresan (Ex. 2018), Patent Owner argues that, in view of the '794 patent's "exclusive use of 'memory' to refer to RAM, a POSITA could infer only that the '794 [p]atent uses the term 'cache memory' to refer to a cache with volatile memory, such as

RAM." PO Resp. 36 (citing Ex. 2018 ¶ 59); *accord* PO Resp. 37 (citing Ex. 2018 ¶¶ 60, 62).

Those positions, though, are inconsistent with the plain language of the claim. The claimed "cache memory" cannot refer only to a cache with volatile memory because the claim states that the "cache memory includ[es] mass storage." Further, Patent Owner seeks to rewrite this claim term, with Patent Owner arguing "the plain and ordinary meaning of this limitation requires the *cache* to have both (1) *memory* and (2) *mass storage*." Sur-Reply 3 (emphasis added). Independent claims 1, 9, and 17 do not recite a "cache" or a "memory" separate from "a cache memory in a cache engine, . . . said cache memory including mass storage." Ex. 1001, 17:8–11, 17:41–44, 18:13–16. Moreover, the Specification's use of the qualifier "such as" in "memory (such as RAM)" (Ex. 1001, code (57), 2:9) evidences that RAM is merely a non-limiting example of memory; nothing in the Specification limits "memory"—much less "cache memory"—to RAM or volatile memory.

Finally, although not directly applicable to our understanding of "cache memory," the file history refers to "memory" broadly. In the file history, the applicant stated "the term 'memory' in the claims is meant to broadly encompass both fixed memories such as DRAMs, SRAMs, hard disks, caches, etc., as well as removable memories such as floppy disks, CD-ROMs, data tapes, etc." Ex. 1002, 482. Contrary to Patent Owner's arguments, that statement from the prosecution history evidences that the applicant understood "memory" to be a broad term and that the applicant could have limited its claims to particular types of memory, but chose not to.

In total, the evidence of record, including Patent Owner's arguments premised on intrinsic evidence, extrinsic evidence, and witness testimony,[5] does not support Patent Owner's arguments that "a cache memory in a cache engine, . . . said cache memory including mass storage" requires volatile memory. In our analysis below, we apply the plain language of the claims, noting that we understand the plain language to require mass storage but to permissively allow other types of memory, including volatile memory such as RAM.

*3. "minimiz[es/ing]" and "maximizing"*

Claim 1 recites "substantially minimizes a time required for retrieving said network objects from said mass storage" and claim 9 recites "maximizing a rate at which said network objects can be written to said mass storage, maximizing a rate at which said network objects can be erased from said mass storage, maximizing a rate at which said network objects can be retrieved from said mass storage, or minimizing a time required for retrieving said network objects from said mass storage." Ex. 1001, 17:15–17, 17:49–56. In the parties' district-court litigation, the court determined the claims' uses of "minimiz[es/ing]" and "maximizing" are indefinite. Ex. 2013, 21–30.

[5] We also disagree with Patent Owner's arguments that the Petition implicitly construes "cache memory" to include both RAM and mass storage. PO Resp. 37–38; Sur-Reply 3–6. Petitioner's arguments that the references disclose volatile memory in addition to mass storage do not amount to claim interpretations and do not factor into our interpretation of "cache memory." *See* Reply 19–20 (explaining that cache memory may optionally include other types of memory, such as volatile memory in addition to the recited mass storage).

Petitioner states that "[w]hile the bounds of 'substantially mimimiz[ing]' are not clear, a [person of ordinary skill in the art] would have understood that the exemplary optimization techniques discussed in the '794 patent fall within the scope of the claims." Pet. 45. Patent Owner states that "to the extent Petitioner argues that the claims are invalid under [35 U.S.C.] § 112, Petitioner cites no authority indicating that the Board should decide the validity of those claims under §§ 102, 103." Sur-Reply 19.

Although we note the district court's determination of indefiniteness, we determine these claims are amenable to an obviousness analysis. *See Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 812–813 (Fed. Cir. 2021) ("it is not always impossible to adjudicate a prior-art challenge, one way or the other, just because some aspect of a claim renders the claim indefinite"). Here, we agree with Petitioner that the Specification's examples of optimization techniques fall within the scope of the minimiz[es/ing]/maximizing limitations. Among other things, the Specification states that "[e]ach write episode is structured so as to optimize both the operation of writing blocks **200** to the mass storage **104** and later operations of reading those blocks **200** from the mass storage **104**," followed by a list of four "techniques . . . used to optimize the read and write optimization goals." Ex. 1001, 12:35–60. Although we do not determine the precise metes and bounds of these limitations, we determine at least those techniques described in the Specification satisfy the relevant minimiz[es/ing]/maximizing limitations.

*C. Summary of Medin*

Titled "System and Method for Delivering High-Performance Online Multimedia Services," Medin discloses a system and method for delivering online multimedia services using a distributed network architecture and processes for replicating and caching frequently accessed multimedia content. Ex. 1004, 2:18–24, code (54). Medin's network architecture couples a high-speed backbone to multiple network access points of the Internet, to a network operation center, to a back office system, and to multiple regional data centers. Ex. 1004, 2:26–29. Each regional data center couples to several modified head-ends, which in turn couple to neighborhood nodes, which in turn couple to end user systems. Ex. 1004, 2:29–33.

Medin states that frequently accessed content is cached within and replicated among the regional data centers. Ex. 1004, 2:54–55. "This reduces traffic redundancy since an end-user's request for data that has been so replicated or cached may be fulfilled by the 'nearest' (most closely coupled) [regional data center]." Ex. 1004, 2:55–58. Frequently accessed content is also cached within the modified head-ends to further reduce redundant traffic. Ex. 1004, 3:1–4.

*D. Ground 1: Obviousness Based on Medin and Seltzer*

The Petition includes a limitation-by-limitation comparison of Medin and Seltzer to claims 1, 3–9, and 11–16, and Petitioner contends a person of ordinary skill "would have been motivated to combine Medin's teaching of servers that cache content requested over the Internet, with Seltzer's teaching of methods to optimize the recording and retrieval of data" (Pet. 27) for a number of reasons. *See* Pet. 27–48. Patent Owner contends the

combination of Medin and Seltzer would not satisfy each claim limitation, and Patent Owner disputes Petitioner's reasons for combining the references.

Below, we address the parties' arguments for each limitation, and we address the parties' arguments regarding Petitioner's rationale to combine the references with the "substantially minimizes" limitation.

*1. Independent Claims 1 & 9*

Independent claims 1 and 9 include substantially the same limitations with the exception of the "minimizes" (claim 1)/"maximizing/minimizing" (claim 9) elements addressed below.

> *"A method, including steps of:*
>
> *receiving a set of network objects in response to a first request to a server from a client; and"*

Petitioner contends Medin satisfies this limitation with its teachings of regional and local servers that receive multimedia content in response to a first request from an end user to an Internet server. Pet. 32–36 (citing Ex. 1004, 4:24–27, 8:37–40, 9:17–19, 11:21–12:17, Fig. 11; Ex. 1003 ¶¶ 125–131). Patent Owner does not address Petitioner's showing for this limitation.

Based on the evidence of record, we determine Petitioner has shown that Medin teaches this claim limitation.

> *"maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage"*

Petitioner contends Medin's regional and local servers teach or suggest the claimed "cache engines." Pet. 36, 37–38. According to Petitioner, Medin teaches that network objects (e.g., multimedia content) are stored on a disk array of regional servers and on a cache storage device of

the local servers. Pet. 37–39 (citing Ex. 1004, 2:21–25, 2:54–58, 3:1–4, 5:56–59, 6:36–44, 9:12–31, 11:23–26, 11:55–60, Figs. 3–6, 11; Ex. 1003 ¶¶ 138–42). Petitioner also contends Medin's regional and local servers are part of a private network that connects end users and content servers. Pet. 39–40.

Petitioner states that Medin teaches that, upon receiving requested network objects, the regional and local servers store the objects. Pet. 36–37. Further, Petitioner states that "Medin teaches maintaining the network objects in a cache memory of a cache engine because Medin teaches that the network objects are stored on a disk array of the regional servers and on a cache storage device of the local servers." Pet. 37 (citing Ex. 1004, 11:22–25, 11:67, 12:15–16, Figs. 3–6; Ex. 1003 ¶ 135). Petitioner states that a POSITA "would have understood that the regional and local servers of Medin are 'cache engines' because the regional and local serv[ers] are comprised of hardware (e.g., a processor, memory, mass storage) and software to perform the function of caching network objects." Pet. 37–38 (citing Ex. 1004, 2:21–25, 2:54–58, 3:1–4, 5:56–59, 6:36–42, 9:12–31, 11:22–26, 11:55–60, 11:67, Figs. 3–6; Ex. 1003 ¶¶ 136–138).

Petitioner states that "Medin also teaches that the cache servers have cache memory including mass storage because Medin teaches that the servers include both memory and disk storage. For example, FIG. 3 of Medin depicts the disk array 306 (mass storage) that is used to store cached content on Medin's regional cache servers." Pet. 39 (citing Ex. 1004, 5:60–64, 11:48–50; Ex. 1003 ¶ 143). Further, "FIG. 5 of Medin shows that the regional servers also include memory" and "Medin similarly teaches that the local caching servers include a mass storage device—cache storage 616—as

well as memory." Pet. 39 (citing Ex. 1004, 7:46–50, 7:61–8:2, 8:63–67, 9:8–9, 9:12–31, Fig. 5; Ex. 1003 ¶ 143).

Patent Owner's arguments regarding this limitation turn on Patent Owner's construction of "cache memory." As noted above, Patent Owner argues "[a] POSITA would recognize that, for several reasons, the plain and ordinary meaning of this limitation requires the cache to have both (1) memory and (2) mass storage." PO Resp. 35. Building on that position, Patent Owner also argues that "the record contains no evidence that Medin's caches include anything but mass storage devices; nor does the record provide any indication that these mass storage devices might be memory." PO Resp. 38–39 (citing Ex. 2018 ¶ 64). According to Patent Owner, Medin's "memory modules are used only to hold running programs, and Medin nowhere teaches that this memory is used to cache web content." PO Resp. 39 (citing Ex. 2018 ¶ 65). Patent Owner further contends that Petitioner's declarant, Dr. Houh, could not identify any disclosures in Medin of memory being used to cache web content. PO Resp. 40–41.

For the reasons explained above, we disagree with Patent Owner's arguments that this limitation requires volatile memory. As cited by Petitioner (Pet. 36–43; Reply 24–25), Medin teaches storing network objects on disk arrays and cache storage devices (Ex. 1004, 2:54–58, 11:53–55, 11:65–67, Fig. 11 (step 1112: "Store Content at Nearest Caching Server"; step 1118 "Store Content at Nearest Regional Server")). Among other things, Medin teaches that "[c]ertain frequently-accessed information or content is cached within and replicated amongst the [regional data centers]. This reduces traffic redundancy since an end-user's request for data that has been so replicated or cached may be fulfilled by the 'nearest' (most closely

coupled) [regional data center].” Ex. 1004, 2:54–58. Patent Owner acknowledges that Medin’s cache system includes mass storage. *See* PO Resp. 38–39 (arguing “the record contains no evidence that Medin’s caches include anything but mass storage devices”). In addition, we agree with the contentions of Petitioner that are summarized above. Accordingly, based on the evidence of record, we determine Petitioner has shown that Medin’s teachings of local and regional servers that cache frequently-accessed information or content and that are connected via a network to content servers and end users satisfy this claim limitation.

> *“wherein said step of maintaining includes steps of recording said network objects in said cache memory and retrieving said network objects from said cache memory,”*

Petitioner contends Medin satisfies this limitation because its local and regional servers store requested network objects and later retrieve and serve those objects from the servers’ cache memory. Pet. 41–44 (citing Ex. 1004, 11:53–55, 11:65–67, Fig. 11; Ex. 1003 ¶¶ 146–149). Petitioner also cites Seltzer for its teaching of recording and retrieving objects. Pet. 43 (citing Ex. 1005 p. 307, 309, 311, 315–16, 320).

Patent Owner does not address Petitioner’s showing for this limitation.

Based on the evidence of record, we determine Petitioner has shown that Medin teaches this claim limitation.

> *Claim 1: “so as to substantially minimizes a time required for retrieving said network objects from said mass storage.”*
>
> *Claim 9: “so as to perform at least one of: . . . minimizing a*

> *time required for retrieving said network objects from said mass storage."*

Petitioner contends the combination of Medin and Seltzer teach these limitations with Seltzer teaching techniques for optimizing the writing and retrieval of objects to minimize retrieval times. Pet. 45–48. As noted above, the district court determined "minimizes" and "minimizing" are indefinite (Ex. 2013, 30), but for the purposes of assessing obviousness, we agree with Petitioner that a person of ordinary skill "would have understood the exemplary optimization techniques discussed in the '794 patent fall within the scope of the claims" (Pet. 45 (citing Ex. 1001, 12:36–39; Ex. 1003 ¶ 153)).

According to Petitioner, "Seltzer teaches techniques for optimizing the writing and retrieval of objects to minimize retrieval times that closely mirror the exemplary techniques discussed in the '794 patent." Pet. 45, 46–48 (citing Ex. 1003 ¶¶ 150, 152, 153, 157, 161; Ex. 1001, 12:36–54, 15:60–65). Petitioner cites Seltzer's teachings of log-structured file system ("LFS") techniques for recording and retrieving objects to optimize the performance of mass storage. Pet. 43 (citing Ex. 1005, 307). Petitioner also cites Seltzer's teachings of using "staging buffers" in which data is first written to buffer memory and read from buffer memory as part of the process for storing a file on disk. Pet. 43 (citing Ex. 1005, 309, 311, 315–316; Ex. 1003 ¶ 150). Petitioner also cites Seltzer's teachings for recording objects sequentially and contiguously to disk to eliminate seek time and minimize the time required to retrieve files from disk. Pet. 45 (citing Ex. 1003 ¶ 155). Further, Petitioner cites Seltzer's teachings that recording related information close together on the disk will "dramatically" improve file system performance by reducing the number and length of

seeks. Pet. 45–46 (citing Ex. 1005 p. 307, 308, 321, Fig. 12; Ex. ¶¶ 155–156, 159).

Petitioner contends a person of ordinary skill would have been motivated to combine Medin's teachings of servers that cache content requested over the Internet with Seltzer's teachings of methods to optimize the recording and retrieval of data. Pet. 27–30. According to Petitioner, Medin teaches storing copies of frequently accessed multimedia content on UNIX-based local and regional servers to improve response times, and Seltzer teaches techniques for optimizing write and retrieval times on UNIX-based computers. Pet. 28–29. Among other things, Petitioner contends a person of ordinary skill would have understood Seltzer to provide an express suggestion to improve the storage techniques of Medin, that combining the references would have been a combination of familiar elements according to known methods to yield predictable results, and that a person of ordinary skill would have expected success in combining the teachings of Medin and Seltzer. Pet. 28–30 (citing Ex. 1003 ¶¶ 114, 115, 118–121).

Patent Owner argues Petitioner's citation to the references' goals of improving speed and efficiency of systems for storing information "would render obvious the combination of any two references disclosing different computer systems, because all computer systems are directed to systems for storing information, and virtually all computer system designers have a generic goal of improving speed and efficiency." PO Resp. 44–45; *accord* Sur-Reply 22. Patent Owner also argues that to the extent a POSITA might attempt to combine Medin and Seltzer, it would not be to use Seltzer's LFS for caching web content because "file system cache schemes perform poorly as web caches, so a POSITA would find it difficult to predict what the

performance of LFS in a caching system might be and would not simply assume, as Petitioner argues, that 'dramatic performance improvements' would result." PO Resp. 46 (citing Ex. 1006, 7–8, 18; Ex. 2018 ¶¶ 73, 74). Further, Patent Owner contends "a POSITA would find no reason to combine Medin and Seltzer such that the combination of these references would disclose" the limitation "so as to substantially minimize[] a time required for retrieving said network objects from said mass storage." PO Resp. 44 (citing Ex. 2018 ¶ 71).

The parties present competing testimony from Dr. Houh and Dr. Sundaresan regarding whether a POSITA would combine the teachings of Medin and Seltzer and in particular whether a POSITA would combine Seltzer's teachings regarding LFS for caching web documents. *See* Ex. 1003 ¶¶ 113–121; Ex. 2018 ¶¶ 71–76. Much of Patent Owner's and Dr. Sundaresan's positions center on statements in Markatos that main memory caching of web documents can outperform traditional file systems caching. PO Resp. 44–48; Sur-Reply 22. According to Patent Owner, "the record evidence indicates clearly that a file system caching technique (such as Seltzer) is inappropriate for a web caching system" and that "a POSITA (such as Markatos himself) would have no reasonable expectation of success in this combination." PO Resp. 48 (citing Ex. 1006, 7–8, 18; Ex. 2018 ¶ 76).

After fully considering the cited supporting evidence and according it appropriate weight, we are persuaded that a person of ordinary skill would have been motivated to combine the teachings of Medin and Seltzer "so as to substantially minimizes a time required for retrieving said network objects from said mass storage." In particular, as Petitioner argues, Medin and Seltzer "share the goal of improving the speed and efficiency" of systems for

storing information. Pet. 27–28 (citing Ex. 1004, 1:8–13, 2:9–15, 2:18–25, code (57); Ex. 1005, 307; Ex. 1003 ¶ 114). Contrary to Patent Owner's arguments that the references' goals are too generic and applicable to any references (PO Resp. 44–45; Sur-Reply 22), the references' teachings are specifically complimentary: Medin teaches storing copies of frequently accessed multimedia content on UNIX-based computers to cache information and read and write it to mass storage (Ex. 1003, 5:60–64, 6:1–4, 6:36–56, 7:46–51, 7:61–8:2, 8:63–9:32), and Seltzer teaches techniques to improve read and write operations on UNIX-based computers (Ex. 1005, 307).

The fact that Markatos advocates a different solution that purportedly outperforms "traditional" file system caching does not undermine Petitioner's proposed combination for a number of reasons. Petitioner's proposed combination includes Medin's teachings of a file system to cache network objects and Seltzer's teachings of ways of improving the read and write operations of a file system. Even if Markatos's system purportedly outperforms other systems, that does not change the fact that Seltzer suggests techniques to improve Medin's teachings that a POSITA would have had reason to implement to substantially minimize the time for retrieving network objects from mass storage with a reasonable expectation of success. In other words, we disagree with Patent Owner's implication that Markatos's disclosure of a purported improvement to traditional file system caching would lead a POSITA to dismiss Seltzer's teachings of optimization techniques applicable to file system caching.

Moreover, we agree with Petitioner that the optimization techniques suggested in Seltzer are comparable to those described in the '794 patent's

Specification such that a POSITA would have recognized Seltzer's as falling within the scope of the "substantially minimizing" limitation. *See* Pet. 29, Among other things, Petitioner cites "Seltzer's recording and retrieval techniques—e.g., collecting objects in a staging buffer, writing objects sequentially to disk, extent-based reading of multiple objects in [a] single operation" (Pet. 29 (citing Ex. 1005, 307, 319, 324)) which are comparable with the techniques described in the '794 patent (Pet. 9 (citing Ex. 1001, 2:6–13, 10:37–40, 12:35–60, 14:4–17)).

*Conclusion Regarding Claims 1 & 9*

Based on the complete record, we determine Petitioner has shown by a preponderance of the evidence that claims 1 and 9 are unpatentable as obvious in view of the combined teachings of Medin and Seltzer.

2. *Dependent Claims 3 & 11*

> *"A method as in claim [1/9], including a step of serving said network objects to said client in place of said server."*

Petitioner contends Medin teaches this limitation because Medin's cache servers serve multimedia content to clients in place of the remote source servers. Pet. 49–50 (citing Ex. 1004, 11:26–40, 11:43–44, 11:48–55; Ex. 1002 ¶¶ 166–167). Patent Owner does not separately address Petitioner's showings for claims 3 and 11.

Based on the complete record, we agree with Petitioner that Medin teaches the additional step of serving network objects to a requesting client in place of a source server. We determine Petitioner has shown by a preponderance of the evidence that claims 3 and 9 are unpatentable as obvious in view of the combined teachings of Medin and Seltzer.

*3. Dependent Claims 4 & 12*

> *"A method as in claim [3/11], wherein said network objects are served to said client in place of said server in response to a second request from said client."*

Petitioner contends Medin teaches this limitation because Medin teaches that all subsequent requests for the same network object, including any "second request," are served from a cache server in place of the LAN server. Pet. 50–53 (citing Ex. 1004, 11:40–45, 11:55–60; Ex. 170–171). Patent Owner does not separately address Petitioner's showings for claims 4 and 12.

Based on the complete record, we agree with Petitioner that Medin teaches the additional step of serving network objects to a requesting client in place of a source server in response to a second request from the client. We determine Petitioner has shown by a preponderance of the evidence that claims 4 and 12 are unpatentable as obvious in view of the combined teachings of Medin and Seltzer.

*4. Dependent Claims 5, 6, 13, & 14*

> *Claims 5 & 13: "A method as in claim [3/11], wherein said step of serving is responsive to a resource identifier associated with each said network object."*

> *Claims 6 & 14: "A method as in claim [3/11], wherein said step of serving is responsive to a uniform resource locator associated with each said network object."*

Petitioner contends Medin teaches these limitations because Medin teaches that the caching servers maintain and serve cached content based on URLs. Pet. 54–55 (citing Ex. 1004, 6:43–52, 11:26–55; Ex. 1003 ¶¶ 174–175). According to Petitioner, a POSITA would have understood that requests for Internet content include URLs that identify the source of the

content. Pet. 54. Patent Owner does not separately address claims 5, 6, 13, or 14.

Based on the complete record, we agree with Petitioner that Medin teaches the additional steps of serving network objects responsive to a resource identifier/uniform resource locator associated with each network object. We determine Petitioner has shown by a preponderance of the evidence that claims 5, 6, 13 and 14 are unpatentable as obvious in view of the combined teachings of Medin and Seltzer.

*5. Dependent Claims 7 & 15*

> *"A method as in claim [1/9], wherein said step of receiving uses a computer network."*

Petitioner contends Medin teaches these limitations because Medin teaches that its cache servers receive content that clients request from LAN servers using a distributed network architecture. Pet. 55–57 (citing Ex. 1004, 11:60–12:17, Fig. 1; Ex. 1002 ¶¶ 178–180). Patent Owner does not separately address claims 7 and 15.

Based on the complete record, we agree with Petitioner that Medin teaches the additional steps of receiving network objects using a computer network. We determine Petitioner has shown by a preponderance of the evidence that claims 7 and 15 are unpatentable as obvious in view of the combined teachings of Medin and Seltzer.

*6. Dependent Claims 8 & 16*

> *"A method as in claim [1/9], wherein said step of receiving is responsive to protocol messages using a computer network, said protocol messages including a resource identifier for each said network object."*

Petitioner contends Medin teaches these limitations because Medin teaches that clients use the HTTP protocol to request multimedia content

using URLs as resource identifiers for each network object. Pet. 57–58 (citing Ex. 1004, 6:46–52; Ex. 1003 ¶¶ 184–186). Patent Owner does not separately address claims 8 and 16.

Based on the complete record, we agree with Petitioner that Medin teaches the additional steps of receiving network objects responsive to protocol messages using a computer network with the protocol messages including a resource identifier for each network object. We determine Petitioner has shown by a preponderance of the evidence that claims 8 and 16 are unpatentable as obvious in view of the combined teachings of Medin and Seltzer.

### *E. Ground 2: Obviousness Based on Medin and Markatos*

#### *1. Independent Claim 17*

> *"A method, including steps of:*
> *receiving a set of network objects in response to a first request to a server from a client; and*
> *maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;"*

These limitations of claim 17 are identical to corresponding limitations of claims 1 and 9. Petitioner contends (Pet. 62–63), and we agree, that Medin teaches these limitations for the same reasons addressed above. For the same reasons as those explained above addressing the identical limitations of claims 1 and 9, we determine Petitioner has shown that Medin teaches these limitations of claim 17, notwithstanding Patent Owner's contrary arguments.

> *"wherein said step of maintaining is performed independently of a file system for said mass storage."*

Petitioner contends Markatos teaches this limitation with its teachings of caching web documents in the main memory of a web server independently of the file system for mass storage of a web server. Pet. 63–64. According to Petitioner, Markatos teaches keeping the most frequently accessed documents in the web server's main memory instead of maintaining it on disk storage to avoid disk accesses as much as possible. Pet. 63 (citing Ex. 1006, p. 894; Ex. 1003 ¶ 203). Further, Petitioner contends "[i]n addition to the teachings of Markatos, a POSITA also would have been aware that it is routine and conventional to maintain 'hot' network objects in memory independently from the mass storage of a caching server." Pet. 64 (citing Ex. 1003 ¶ 205; Ex. 1007, 1:44–45; Ex. 1014, p. 4).

Petitioner contends a person of ordinary skill would have been motivated to combine Markatos's teachings of main memory caching of web documents with Medin's teachings of cache servers that store web documents for several reasons. Pet. 58. According to Petitioner, a person of ordinary skill would have been motivated to combine Medin and Markatos because the references share the same overall goal of improving speed and efficiency of responding to requests for content over the internet. Pet. 59. Petitioner also contends Markatos is specifically directed to improving servers such as those taught by Medin, and Petitioner contends a person of ordinary skill would have expected success in combining the references' teachings. Pet. 59–61.

Patent Owner argues Petitioner's arguments read the wherein clause and the maintaining limitation in isolation because neither Medin nor Markatos teaches caching network objects in a cache having mass storage

independently of a file system for the mass storage. PO Resp. 50–51. According to Patent Owner, Petitioner's combination of Medin and Markatos can be read one of two ways: the combination either (1) "no longer maintains network objects in a cache that includes mass storage, because the main memory is the only cache" or (2) "maintains network objects in a cache that includes mass storage, but does not maintain the objects in the cache independently of a file system for the mass storage." PO Resp. 50. Patent Owner states that "no POSITA would understand Medin's disclosure to suggest that its mass storage devices can be used for caching independently of a file system," but "to the extent that Markatos can be read to teach that the entire cache consists of main memory, Markatos would not satisfy [the maintaining limitation], because it would not maintain objects in a cache **that includes mass storage**." PO Resp. 51 (citing Ex. 2018 ¶¶ 82, 83). Further, Petitioner contends Markatos cannot be read to disclose that network objects are maintained only in main memory because Markatos includes a mass storage that, while technically not part of the cache, works essentially the same way as the mass storage device in Medin. PO Resp. 55; *accord* Sur-Reply 24.

Implicit in Patent Owner's arguments is an interpretation of claim 17 as requiring all network objects to be cached independently of the file system.[6] The express language of claim 17 recites, in part, "receiving *a set of network objects*," "maintaining *said network objects* in a cache memory in a cache engine, . . . said cache memory including mass storage," and

[6] To the extent Patent Owner intended to advocate for a different claim interpretation, it is insufficiently explained, despite our specific request that the parties address the scope of this claim at trial. *See* Paper 15, 16.

"wherein said step of maintaining is performed independently of a file system for said mass storage." Thus, the claim only requires maintaining a set of network objects in a cache memory independently of a file system for the mass storage, where the cache memory includes a mass storage. The claim does not exclude maintaining other network objects—network objects other than "said set of network objects"—in the mass storage and having the maintenance of those other network objects implicate a file system. As noted above (*supra* § II.B.2), we disagree with Patent Owner's arguments that "cache memory" requires volatile memory, but we determine the recited cache can have a volatile memory as well as mass storage.

Contrary to Patent Owner's characterization of Petitioner's contentions, Petitioner contends a POSITA would have been motivated to modify Medin based on the teachings of Markatos to incorporate main memory caching in combination with Medin's teachings regarding a cache engine with cache memory that includes mass storage. Pet. 58–59; Reply 33. Combining the references' teachings would not eliminate Medin's mass storage; rather, as Petitioner contends, a POSITA would have recognized that Markatos suggestions of "keeping the most frequently accessed documents in the server's main memory" to reduce disk accesses would improve Medin's use of mass storage.[7] Pet. 58 (quoting Ex. 1006, 894; citing Ex. 1003 ¶ 191).

Ultimately, having reviewed the record, we are persuaded by Petitioner's above-identified contentions that a person of ordinary skill in the art would have been motivated to make the proposed combination of Medin

[7] We note Petitioner contends Medin teaches using a volatile memory as part of its system. Pet. 39.

and Markatos and would have had a reasonable expectation of success. We are also persuaded by Petitioner's contentions that the resulting Medin-Markatos combination teaches this limitation.

### 2. *Conclusion Regarding Claim 17*

After fully considering the cited supporting evidence and according it appropriate weight, we determine Petitioner has shown by a preponderance of the evidence that claim 17 is unpatentable as obvious in view of the combined teachings of Medin and Markatos.

## III. CONCLUSION[8]

For the reasons set forth above, based on the complete record, we determine that Petitioner has proven by a preponderance of the evidence that claims 1, 3–9, and 11–17 of the '794 patent are unpatentable.

In summary:

| **Claims** | **35 U.S.C. §** | **Reference(s)/Basis** | **Claims Shown Unpatentable** | **Claims Not Shown Unpatentable** |
|---|---|---|---|---|
| 1, 3–9, 11–16 | 103 | Medin, Seltzer | 1, 3–9, 11–16 | |
| 17 | 103 | Medin, Markatos | 17 | |
| **Overall Outcome** | | | **1, 3–9, 11–17** | |

[8] Should Patent Owner wish to pursue amendment of the challenged claims in a reissue or reexamination proceeding subsequent to the issuance of this decision, we draw Patent Owner's attention to the April 2019 *Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding*, 84 Fed. Reg. 16,654 (Apr. 22, 2019). If Patent Owner chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices. *See* 37 C.F.R. § 42.8(a)(3), (b)(2).

## IV. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that Petitioner has shown by a preponderance of the evidence that claims 1, 3–9, and 11–17 of the '794 patent are unpatentable; and

FURTHER ORDERED that, that, because this is a Final Written Decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

FOR PETITIONER:

Harper Batts
Jeffrey Liang
Chris Ponder
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
hbatts@sheppardmullin.com
jliang@sheppardmullin.com
cponder@sheppardmullin.com

FOR PATENT OWNER:

Daniel Young
Chad King
ADSERO IP LLC d/b/a SWANSON & BRATSCHUN LLC
dyoung@adseroip.com
chad@adseroip.com

US007103794B2

(12) **United States Patent**
**Malcolm et al.**

(10) **Patent No.: US 7,103,794 B2**
(45) **Date of Patent: Sep. 5, 2006**

(54) **NETWORK OBJECT CACHE ENGINE**

(75) Inventors: **Michael Malcolm**, Woodside, CA (US); **Robert Zarnke**, Waterloo (CA)

(73) Assignee: **Cacheflow, Inc.**, Sunnyvale, CA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1381 days.

(21) Appl. No.: **09/093,533**

(22) Filed: **Jun. 8, 1998**

(65) **Prior Publication Data**

US 2002/0004917 A1 Jan. 10, 2002

(51) **Int. Cl.**
***G06F 11/00*** (2006.01)

(52) **U.S. Cl.** ............................ **714/4**; 709/203; 711/118

(58) **Field of Classification Search** ..................... 714/4; 709/201–203, 212–229; 707/100–104; 711/100–154; 345/557

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,452,440 A | 9/1995 | Salsburg | |
| 5,452,447 A | 9/1995 | Nelson et al. | 395/650 |
| 5,564,011 A | 10/1996 | Yammine et al. | 714/15 |
| 5,596,774 A | 1/1997 | Dao et al. | 395/610 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0359384 A3 | 3/1990 |
| EP | 0359384 A2 | 3/1990 |
| EP | 0359384 B1 | 3/1990 |
| EP | 0481716 A2 | 4/1992 |
| EP | 0 836 145 A2 | 4/1998 |
| EP | 0 836 145 A2 | 4/1998 |
| WO | WO 97/01765 A1 | 1/1997 |
| WO | WO 97 30539 | 8/1997 |

OTHER PUBLICATIONS

Dias G. et ali: "A Smart Internet Caching System" Proceeding of the Inet'96 Conference, Montreal, Canada, Jun. 24–28, 1996.

(Continued)

*Primary Examiner*—James P. Trammell
*Assistant Examiner*—Mary Wang
(74) *Attorney, Agent, or Firm*—Swernofskya Law Group PC

(57) **ABSTRACT**

The invention provides a method and system for caching information objects transmitted using a computer network. A cache engine determines directly when and where to store those objects in a memory (such as RAM) and mass storage (such as one or more disk drives), so as to optimally write those objects to mass storage and later read them from mass storage, without having to maintain them persistently. The cache engine actively allocates those objects to memory or to disk, determines where on disk to store those objects, retrieves those objects in response to their network identifiers (such as their URLs), and determines which objects to remove from the cache so as to maintain sufficient operating space. The cache engine collects information to be written to disk in write episodes, so as to maximize efficiency when writing information to disk and so as to maximize efficiency when later reading that information from disk. The cache engine performs write episodes so as to atomically commit changes to disk during each write episode, so the cache engine does not fail in response to loss of power or storage, or other intermediate failure of portions of the cache. The cache engine also stores key system objects on each one of a plurality of disks, so as to maintain the cache holographic in the sense that loss of any subset of the disks merely decreases the amount of available cache. The cache engine also collects information to be deleted from disk in delete episodes, so as to maximize efficiency when deleting information from disk and so as to maximize efficiency when later writing to those areas having former deleted information. The cache engine responds to the addition or deletion of disks as the expansion or contraction of the amount of available cache.

**57 Claims, 4 Drawing Sheets**



U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,649,154 | A | | 7/1997 | Kumar et al. | |
| 5,696,932 | A | * | 12/1997 | Smith | 711/118 |
| 5,696,948 | A | * | 12/1997 | Cruz et al. | 395/550 |
| 5,737,635 | A | * | 4/1998 | Daines et al. | 710/52 |
| 5,752,022 | A | | 5/1998 | Chiu et al. | 395/610 |
| 5,778,168 | A | * | 7/1998 | Fuller | 714/18 |
| 5,781,785 | A | | 7/1998 | Rowe et al. | 395/774 |
| 5,787,470 | A | | 7/1998 | DeSimone et al. | 711/124 |
| 5,802,292 | A | | 9/1998 | Mogul | 395/200.33 |
| 5,819,045 | A | | 10/1998 | Raman et al. | |
| 5,822,539 | A | | 10/1998 | Van Hoff | 395/200.66 |
| 5,822,757 | A | * | 10/1998 | Chi | 711/129 |
| 5,826,253 | A | | 10/1998 | Bredenberg | 707/2 |
| 5,852,717 | A | | 12/1998 | Bhide et al. | 395/200.33 |
| 5,860,106 | A | | 1/1999 | Domen et al. | |
| 5,864,837 | A | | 1/1999 | Maimone | 707/1 |
| 5,864,852 | A | | 1/1999 | Luotonen | 713/201 |
| 5,870,765 | A | | 2/1999 | Bauer et al. | 709/203 |
| 5,870,769 | A | | 2/1999 | Freund | 707/501 |
| 5,878,218 | A | | 3/1999 | Maddalozzo et al. | 395/200.43 |
| 5,878,223 | A | | 3/1999 | Becker et al. | 709/223 |
| 5,884,046 | A | | 3/1999 | Antonov | 395/200.68 |
| 5,887,151 | A | | 3/1999 | Raz et al. | |
| 5,892,909 | A | | 4/1999 | Grasso et al. | 709/201 |
| 5,892,937 | A | | 4/1999 | Caccavate | |
| 5,896,506 | A | | 4/1999 | Ali et al. | 395/200.43 |
| 5,898,833 | A | | 4/1999 | Kidder | 709/234 |
| 5,905,999 | A | | 5/1999 | Liu et al. | |
| 5,913,033 | A | | 6/1999 | Grout | 395/200.49 |
| 5,918,013 | A | | 6/1999 | Mighdoll et al. | 395/200.47 |
| 5,931,904 | A | | 8/1999 | Banga et al. | 709/219 |
| 5,933,849 | A | | 8/1999 | Dutta et al. | 711/118 |
| 5,935,213 | A | * | 8/1999 | Rananand et al. | 709/234 |
| 5,946,682 | A | | 8/1999 | Wolfe | 707/5 |
| 5,948,062 | A | | 9/1999 | Tzelnic | 709/219 |
| 5,950,205 | A | | 9/1999 | Aviani, Jr. | 707/103 |
| 5,954,795 | A | | 9/1999 | Tomita et al. | 709/218 |
| 5,961,602 | A | | 10/1999 | Thompson et al. | 709/229 |
| 5,964,830 | A | | 10/1999 | Durrett | 709/200 |
| 5,978,848 | A | * | 11/1999 | Maddalozzo, Jr. et al. | 709/227 |
| 6,009,466 | A | * | 12/1999 | Axberg et al. | 709/220 |
| 6,012,085 | A | | 1/2000 | Yohe et al. | 709/217 |
| 6,012,126 | A | * | 1/2000 | Aggarwal et al. | 711/133 |
| 6,014,671 | A | | 1/2000 | Castelli et al. | 707/101 |
| 6,016,512 | A | | 1/2000 | Huitema | 709/245 |
| 6,026,474 | A | | 2/2000 | Carter et al. | 711/202 |
| 6,085,193 | A | | 7/2000 | Malkin et al. | 707/10 |
| 6,098,096 | A | | 8/2000 | Tsirigotis et al. | 709/213 |
| 6,209,020 | B1 | * | 3/2001 | Angle et al. | 709/108 |
| 6,223,256 | B1 | * | 4/2001 | Gaither | 711/134 |

OTHER PUBLICATIONS

Glassman S: "A caching relay for the World Wide Web" Computer Networks and Ison Systems, vol. 27, No. 2, Nov. 1994, p. 165–173.

Zhimel Jiang et al; "Prefetching links on the WWW", 97 IEEE International Conference on Communications. Towards the Knowledge Millennium. ICC'97. Montreal, Que., Canada, Jun. 8–12 1997, pp. 483–489 vol. 1.

Dingle A, et al: "Web cache coherence" Computer Networks and Ison Systems, vol. 28, No. 11, May 1996, p. 907–920.

Nabeshima M: "The Japan Cache Project: an experiment on domain cache". Computer Networks and Ison Systems, vol. 29, No. 8–13, Sep. 1997, p. 987–995.

Wang Z et al: "Prefetching in World Wide Web". IEEE Globecom 1996, Communications: The Key to Global Prosperity. Global Internet'96. London, UK, No. 18–22 N., pp. 28–32.

Chinen K. et al: An Interactive Prefetching Proxy Server for Improvement of WWW Latency Proceedings of the Inet'97 Conference, Kuala Lumpur, Malaysia, Jun. 24–27 1997.

Zheng Wang & Jon Crowcroft, "Prefetching In World Wide Web", Department of Computer Science, University College London WC1E 6BT, United Kingdom, 1996.

Ken–ichi Chinen, et al., "An Interactive Prefetching Proxy Server For Improvement Of WWW Latency", Nara Institute Of Science And Technology, Japan.

Alonso, et al, "Dynamic Hierarchical Caching In Large–Scale Distributed File Systems", Department Of Computer Science, Princeton University, Princeton, NJ, 1992.

Azer Bestavros, "WWW Traffic Reduction And Load Balancing Through Server–Based Caching", Boston University, 1997.

Michael Baentsch, et al.: "World Wide Web Caching: The Application–Level View Of The Internet", IEEE Communications Magazine, pp. 170–178, Jun. 1997.

Syam Gadde, et al.: "Reduce, Reuse, Recycle: An Approach To Building Large Internet Caches", pp. 93–98, May 1997.

A. Ortega, et al., Soft Caching: Web Cache Management Techniques For Images, Multimedia Signal Processing, pp. 475–480, Jun. 1997.

Banga, G. et al.: "Optimistic deltas for WWW latency reduction" Proceedings Of The Usenix 1997 Annual Technical Conference, Proceedings Of Usenix 1997 Annual Technical Conference, Anaheim, CA, USA, Jan. 6–10, 1997, pp. 289–303.

Yu, P. S., et al.: "Performance Study Of A Collaborative Method For Hierarchical Caching In Proxy Servers" Computer Networks And ISDN Systems, NL, North Holland Publishing. Amsterdam. vol. 30, No. 1–7, Apr. 1, 1998, pp. 215–224.

Braun, H. et al. "Web Traffic Characterization: an Assessment of the Impact of Caching Documents from NCSA's Web Server". Computer Networks and ISDN Systems. vol. 28, pp. 37–51. Dated: Dec. 1995.

"Caching Email Document", May 11, 1999.

Carignano, A. Ortega et al. "Soft Caching: Web Cache Management Techniques For Images", IEEE. 1997.

Duska Bradley M. et al. The Measured Access Characteristics of World–Wide–Web Client Proxy Caches.

"High Performance Web Caching White Paper". CacheFlow Inc. 1998.

Lee, Ron & Gary Tomlinson. "Workload Requirements for a Very High–Capacity Proxy Cache Design". pp. 1–6.

"Microsoft Proxy Server Version 2.0.", reviewer Guide. pp. 1–74.

Rosenfeld, Louis B. "Automated Filtering of Internet Postings". XP000616769.

Smith, N. "The UK National Web Cache–The State of the Art". Computer Network adb ISDN Systems. vol. 28. pp. 1407–1414. Dated: May 1996.

Gary Tomlinson, Drew Major, Ron Lee. High–Capacity Internet Middleware: Internet Caching System Architecture Overview.

* cited by examiner


CLIENT DEVICE
111
SERVER DEVICE
111
112
COMMUNICATION MEDIUM
110
NETWORK
PROTOCOL MESSAGE
113
CACHE ENGINE
100
PROCESSOR
101
CACHE
102
NETWORK OBJECT
114
MEMORY
MASS STORAGE
103
104

FIG. 1


ROOT OBJECT 220
221
ROOT BLOCK
ROOT BLOCK
221
250
WRITE POINTER
DELETE POINTER
260
BLOCK MAP
OBJECT MAP
HASH TABLE
210
210
350
CACHE 102
MASS STORAGE
104
103
MEMORY
BLOCK POINTER 212
213 214 215
211 OBJECT DESCRIPTOR
216 INDIRECT BLOCK
DATA BLOCK 200
210 OBJECT
BINARY TREE 231
230
232
233
234
235
236
237
238
239

FIG. 2


URL
310
HASH FUNCTION
320
HASH SIGNATURE
330
200
BLOCK
HASH TABLE 350
212
HASH ENTRY 360
BLOCK POINTER
SECONDARY HASH VALUE
HASH BUCKET 340
370

FIG. 3


COMMITED TO DISK
MODIFIED IN RAM
TREE 400
Y1
Y1'
Y2
Y2'
X
X'
N
CONTROL
DATA
CONTROL
DATA

FIG. 4


500
510
MODIFY BLOCKMAP FOR DATA BLOCKS
521
MODIFY BLOCKMAP FOR CTRL BLOCKS
522
MODIFY BLOCKMAP FOR ITSELF
523
WRITE TO MASS STORAGE
524
REWRITE ROOT OBJECT
525
530

FIG. 5


0 NMAX
600
MINIMUM DISTANCE 80
601
INCREASING INDICES
250 WRITE POINTER
620 WRITE REGION
260 DELETE POINTER
610 DELETE REGION
630 COLLECTION REGION

FIG. 6

## NETWORK OBJECT CACHE ENGINE

### BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates to devices for caching objects transmitted using a computer network.

2. Related Art

In computer networks for transmitting information, information providers (sometimes called "servers") are often called upon to transmit the same or similar information to multiple recipients (sometimes called "clients") or to the same recipient multiple times. This can result in transmitting the same or similar information multiple times, which can tax the communication structure of the network and the resources of the server, and cause clients to suffer from relatively long response times. This problem is especially acute in several situations: (a) where a particular server is, or suddenly becomes, relatively popular; (b) where the information from a particular server is routinely distributed to a relatively large number of clients; (c) where the information from the particular server is relatively time-critical; and (d) where the communication path between the server and its clients, or between the clients and the network, is relatively slow.

One known method is to provide a device (such as a general purpose processor operating under software control) which acts as a proxy, receiving requests for information from one or more clients, obtaining that information from one or more servers, and transmitting that information to the clients in place of the servers. When the proxy has previously obtained the information from one or more servers, it can deliver that information to the client without having to repeat the request to the server. While this method achieves the goal of reducing traffic in the network and load on the server, it has the drawback that significant overhead is required by the local operating system and the local file system or file server of the proxy. This adds to the expense of operating the network and slows down the communication path between the server and the client.

There are several sources of delay, caused primarily by the proxy's surrendering control of its storage to its local operating system and local file system: (a) the proxy is unable to organize the information from the server in its mass storage for most rapid access; and (b) the proxy is unable to delete old network objects received from the servers and store new network objects received from the servers in a manner which optimizes access to mass storage. In addition to the added expense and delay, the proxy's surrendering control of its storage restricts functionality of the proxy's use of its storage: (a) it is difficult or impossible to add to or subtract from storage allocated to the proxy while the proxy is operating; and (b) the proxy and its local file system cannot recover from loss of any part of its storage without using an expensive redundant storage technique, such as a RAID storage system.

Accordingly, it would be desirable to provide a method and system for caching information transmitted using, a computer network, which is not subject to additional delay or restricted functionality from having to use a local operating system and local file system or file server. This advantage is achieved in an embodiment of the invention in which a cache engine coupled to the network provides a cache of transmitted objects, which it stores in memory and mass storage by taking direct control of when and where to store those objects in mass storage. The cache engine may store those objects holographically so as to continue operation smoothly and recover gracefully from additions to, failures of, or removals from, its mass storage.

### SUMMARY OF THE INVENTION

The invention provides a method and system for caching information objects transmitted using a computer network. In the invention, a cache engine determines directly when and where to store those objects in a memory (such as RAM) and mass storage (such as one or more disk drives), so as to optimally write those objects to mass storage and later read them from mass storage, without having to maintain them persistently. The cache engine actively allocates those objects to memory or to disk, determines where on disk to store those objects, retrieves those objects in response to their network identifiers (such as their URLs), and determines which objects to remove from the cache so as to maintain appropriate free space.

In a preferred embodiment, the cache engine collects information to be written to disk in write episodes, so as to, maximize efficiency when writing information to disk and so as to maximize efficiency when later reading that information from disk. The cache engine performs write episodes so as to atomically commit changes to disk during each write episode, so the cache engine does not fail in response to loss of power or storage, or other intermediate failure of portions of the cache. The cache engine stores key system objects on each one of a plurality of disks, so as to maintain the cache holographic in the sense that loss of any subset of the disks merely decreases the amount of available cache. The cache engine selects information to be deleted from disk in delete episodes, so as to maximize efficiency when deleting information from disk and so as to maximize efficiency when later writing new information to those areas of disk. The cache engine responds to the addition or deletion of disks as the expansion or contraction of the amount of available cache.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** shows a block diagram of a network object cache engine in a computer network.

FIG. **2** shows a block diagram of a data structure for maintaining storage blocks for a set of cached network objects.

FIG. **3** shows a block diagram of data structures for caching network objects.

FIG. **4** shows a block diagram of a set of original and modified blocks.

FIG. **5** shows a flow diagram of a method for atomic writing of modified blocks to a single disk drive.

FIG. **6** shows a block diagram of a set of pointers and regions on mass storage.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

In the following description, a preferred embodiment of the invention is described with regard to preferred process steps and data structures. Those skilled in the art would recognize after perusal of this application that embodiments of the invention can be implemented using general purpose processors and storage devices, special purpose processors and storage devices, or other circuits adapted to particular process steps and data structures described herein, and that implementation of the process steps and data structures described herein would not require undue experimentation or further invention.

Caching Network Objects

FIG. **1** shows a block diagram of a network object cache engine in a computer network.

A cache engine **100** is coupled to a computer network **110**, so that the cache engine **100** can receive messages from a set of devices **111** also coupled to the network **110**.

In a preferred embodiment, the network **110** includes a plurality of such devices **111**, interconnected using a communication medium **112**. For example, where the network **110** includes a LAN (local area network), the communication medium **112** may comprise ethernet cabling, fiber optic coupling, or other media. The network **110** preferably includes a network of networks, sometimes called an "internet" or an "intranet."

In a preferred embodiment, the devices **111** coupled to the network **110** communicate with the cache engine **100** using one or more protocols for communication, such as HTTP (hypertext transfer protocol) or one of its variants, FTP (file transfer protocol), or other protocols.

The cache engine **100** includes a processor **101** and a cache **102**. In a preferred embodiment, the processor **101** comprises a general purpose processor operating under software control to perform the methods described herein and to construct and use the data structures described herein; as used herein, when the cache engine **100** performs particular tasks or maintains particular data structures that reference includes condign operation by the processor **101** under control of software maintained in a program and data memory **103**.

The cache **102** includes the program and data memory **103** and a mass storage **104**. In a preferred embodiment, the mass storage **104** includes a plurality of disk drives such as magnetic disk drives, but may alternatively include optical or magneto-optical disk drives. As used herein, references to "disk" and "disk drives" refer to the mass storage **104** and its individual drives, even if the mass storage **104** and its individual drives do not include physical disk-shaped elements. The cache engine **100** is coupled to the network **110** and can receive and transmit a set of protocol messages **113** according to the one or more protocols with which the devices **111** communicate with the cache engine **100**.

The cache engine **100** maintains a set of network objects **114** in the cache **102**. The cache engine **100** receives protocol messages **113** from a set of "client" devices **111** to request network objects **114** to be retrieved from a set of "server" devices **111**. In response thereto, the cache engine **100** issues protocol messages **113** to request those network objects **114** from one or more server devices **111**, receives those network objects **114** and stores them in the cache **102**, and transmits those network objects **114** to the requesting client devices **111**.

As used herein, the terms "client" and "server" refer to a relationship between the client or server and the cache engine **100**, not necessarily to particular physical devices **111**. As used herein, one "client device" **111** or one "server device" **111** can comprise any of the following: (a) a single physical device **111** executing software which bears a client or server relationship to the cache engine **100**; (b) a portion of a physical device **111**, such as a software process or set of software processes executing on one hardware device **111**, which portion of the physical device **111** bears a client or server relationship to the cache engine **100**; or (c) a plurality of physical devices **111**, or portions thereof, cooperating to form a logical entity which bears a client or server relationship to the cache engine **100**. The phrases "client device" and "server device" refer to such logical entities and not necessarily to particular individual physical devices **111**.

The cache engine **100** preserves the network objects **114** in the cache **102**, and reuses those network objects **114** by continuing to serve them to client devices **111** which request them. When the cache **102** becomes sufficiently full, the cache engine **100** removes network objects **114** from the cache **102**. For example, the cache engine **100** can remove objects as described herein in the section "Removing Objects from Cache."

In a preferred embodiment, the cache engine **100** uses the memory **103** as a cache for those network objects **114** maintained using the mass storage **104**, while using the combined memory **103** and mass storage **104** as the cache **102** for those network objects **114** available on the network **110**.

The cache **102** is not a file storage system, and network objects **114** which are stored in the cache **102** may be removed automatically from the cache **102** at any time by the cache engine **100**. All network objects **114** and all other data maintained by the cache **102** is transient, except for a very small number of system objects which are required for operation, and those system objects are redundantly maintained on the mass storage **104** so as preserve those system objects against possible loss of a part of the mass storage **104** (such as loss of one or more disk drives). Thus the cache engine **100** need not guarantee that network objects **114** which are stored in the cache **102** will be available at any particular time after they are stored, and failure or even intentional removal of portions of the cache **102** (such as portions of the mass storage **104**) cannot cause failure of the cache engine **100**. Similarly, recovery or intentional addition of additional mass storage **104** (such as "hot swapping" of disk drives) is smoothly integrated into the cache **102** without interruption of operation of the cache engine **100**.

Moreover, the cache engine **100** operates exclusively to perform the operation of caching the network objects **114**. There is no separate "operating system," no user, and there are no user application programs which execute independently on the processor **101**. Within the memory **103**, there are no separate memory spaces for "user" and "operating system." The cache engine **100** itself maintains the cache **102** of the network objects **114** and selects the network objects **114** for retention in the cache **102** or removal from the cache **102**, operating so as to (1) localize writing the network objects **114** to the mass storage **104**, (2) localize deletion of the network objects **114** from the mass storage **104**, and (3) efficiently replace the network objects **114** in the cache **102** with new network objects **114**. In a preferred embodiment, the cache engine **100** performs these operations efficiently while operating the cache **102** relatively filled with network objects **114**.

In a preferred embodiment, the cache engine **100** maintains statistics regarding access to the cache **102**. These statistics can include the following:

- a set of hit rates for the cache **102**, including (1) a hit rate for network objects **114** found in the cache **102** versus those which must be retrieved from server devices **111**, and (2) a hit rate for network objects **114** found in the memory **103** versus those which must be retrieved from the mass storage **104**;
- a set of statistics for operations on the memory **103**, including (1) the number of network objects **114** which are maintained in the memory **103**, and (2) the fraction of memory **103** which is devoted to caching network objects **114** versus storing system objects or unallocated; and
- a set of statistics for operations on the mass storage **104**, including (1) the number of read operations from the

mass storage **104**, (2) the number of write operations to the mass storage **104**, including the number of "write episodes" as described herein, and (3) the fraction of the mass storage **104** which is devoted to caching network objects **114** versus storing system objects or unallocated.

The cache engine **100** can also maintain statistics which are combinations or variants of the above.

Using the Cache Engine

There are numerous circumstances in which the cache engine **100** can provide improved performance or additional functionality in the network **110**. For example, the cache engine **100** can be used as a proxy cache (whether to provide a firewall, to provide a cache for client devices **111** coupled to a local area network, or otherwise), as a reverse proxy cache, as a cache for requests made by users of a single ISP, as a cache for "push" protocols, or as an accelerator or server cache.

The cache engine **100** provides the client devices **111** with relatively quicker access to network objects **114** otherwise available directly from the server devices **111**. Typically the client devices **111** request those network objects **114** from the cache engine **100**, which either transmits them to the client devices **111** from the cache **102** or obtains them from the server devices **111** and then transmits them to the client devices **111**.

The cache engine **100** can exercise more intelligence and proactivity than simply waiting for documents to be requested by the client devices **111**:

- The cache engine **100** can be configured preloaded with selected network objects **114** which are expected to be requested by the client devices **111**. For example, certain network objects **114** are known to be commonly requested by client devices **111** throughout the network **110** known as the internet; these network objects **114** can be preloaded in the cache engine **100** upon manufacture. These network objects **114** could include home pages for well-known companies (such as Netscape) and well-known search engines (such as Digital's "Alta Vista").
- The cache engine **100** can periodically request network objects **114** responsive to a set of statistics regarding commonly requested network objects **114**. For example, information regarding commonly requested network objects **114** can be maintained on a server device **111**; the cache engine **100** can request this information from the server device **111** and periodically request those network objects **114** for storage in the cache **102**. In a preferred embodiment, the cache engine **100** can perform this operation periodically when client devices **111** are not actively using the cache engine **100**, such as relatively unloaded times in the late night or early morning.
- The cache engine **100** can periodically request network objects **114** responsive to a set of user preferences at the client devices **111**. For example, the cache engine **100** can receive (either upon request or otherwise) a set of bookmarks from the client devices **111** and can request those network objects **114** from the server devices **111**. In a preferred embodiment, the cache engine **100** can request those network objects **114** which have changed in a selected time period such as one day.
- The cache engine **100** can provide a mirror site to one or more server devices **111**, by periodically, or upon request, receiving network objects **114** from the server devices **111** to be delivered by the server device **111** to client devices **111** which have changed in a selected time period such as one day.
- The cache engine **100** can provide an accelerator for one or more server devices is **111**, by receiving requests to the server devices **111** which are distributed among a plurality of cache engines **100**. Each cache engine **100** maintains its cache **102** with network objects **114** to be delivered by the server device **111** to client devices **111**. Service by the server device **111** is thus accelerated, because each cache engine **100** can respond to some of the load of requests for information, while limiting the number of requests for information which are passed through and must be handled by the server device **111** itself.
- The cache engine **100** can provide a first type of push protocol assist to one or more server devices **111**, by transmitting network objects **114** to one or more client devices **111** or proxy caches using a push protocol. For example, when the server devices **111** provide a network broadcast service, the cache engine **100** can receive network objects **114** from the server devices **111** to be broadcast to a subset of the network **110** and can independently broadcast those network objects **114**.
- The cache engine **100** can provide a second type of push protocol assist to one or more server devices **111**, by allowing those server devices **111** to broadcast network objects **114** to a plurality of cache engines **100**. Each cache engine **100** can make the broadcast network objects **114** available to client devices **111** which request those network objects **114** from the cache engine **100** as if the cache engine **100** were the server device **111** for those network objects **114**.

The network objects **114** can include data, such as HTML pages, text, graphics, photographs, audio, video; programs, such as Java or ActiveX applets or applications; or other types of network objects, such as push protocol objects. The cache engine **100** can record frames of streaming audio or streaming video information in the cache **102**, for delayed use by a plurality of client devices **111**. Some types of known network objects **114** are not cached, such as CGI output or items marked noncachable by the server device **111**.

In a preferred embodiment, the cache engine **100** can glean knowledge about the client devices **111** from the protocol messages **113** or by other means, such as interrogating routing devices in the network **110**, and can react in response to that information to provide differing network objects **114** to differing client devices **111**. For example, the cache engine **100** can select server devices **111** for proximity or content in response to information about client devices **111**, as follows:

- The cache engine **100** can select a particular server device **111** for rapid response, such as for network routing proximity or for spreading service load over a plurality of server devices **111**.
- The cache engine **100** can select content at the server device **111** in response to information about the client device **111**, such as tailoring the language of the response (such as serving pages in the English language or the French language), or such as tailoring local information (such as advertising, news, or weather). In a preferred embodiment, local information such as advertising can be retrieved from a local server device **111** which supplies advertising for insertion into pages to be served to local client devices **111**.

The Cache

FIG. **2** shows a block diagram of a data structure for maintaining storage blocks for a set of cached network objects.

The cache **102** includes a set of blocks **200**, each of which comprises 4096 bytes in a preferred embodiment, and each

of which can be stored in the memory **103** or on the mass storage **104**. In alternative embodiments, each of the blocks **200** can comprise a size other than 4096 bytes, and may be responsive to an amount of available memory **103** or mass storage **104**.

Each of the blocks **200** can comprise either a data block **200**, which includes data, that is, information not used by the cache engine **100** but maintained for the client devices **111**, or control information, that is, information used by the cache engine **100** and not used by the client devices **111**.

The blocks **200** are organized into a set of objects **210**, each of which comprises an object descriptor **211**, a set of data blocks **200**, and a set of block pointers **212** referencing the data blocks **200** from the object descriptor **211**. The object descriptor **211** comprises a separate control block **200**. Where the block pointers **212** will not fit into a single control block **200**, or for other types of relatively larger objects **210**, the object descriptor **211** can reference a set of indirect blocks **216**, each of which references inferior indirect blocks **216** or data blocks **200**. Each indirect block **216** comprises a separate control block **200**. Relatively smaller objects **210** do not require indirect blocks **216**.

The block pointers **212** each comprise a pointer value **215** comprising a single 32-bit word and indicating the location of the block **200** on the mass storage **104**, such as a physical disk block address.

In an alternative embodiment, the block pointers **212** each comprise a first bit **213** indicating whether the referenced block **200** is stored in the memory **103** or the mass storage **104**, a second bit **214** indicating whether the referenced block **200** is a control block **200** (comprising control information) or a data block **200** (comprising data for network objects **114**), and the pointer value **215** comprises a 30-bit value indicating the location of the block **200**. In such alternative embodiments, when the block **200** is stored in the memory **103**, the pointer value **215** indicates a byte address in the memory **103**; when the block is stored on the mass storage **104**, the pointer value **215** indicates a physical disk block address on the mass storage **104**.

In a preferred embodiment, the objects **210** are each referenced by a root object **220**, which is maintained redundantly in a plurality of (preferably two) copies of a root block **221** on each disk drive of the mass storage **104**. In a preferred embodiment, there is one root object **220** for each disk drive of the mass storage **104**. Thus, each disk drive of the mass storage **104** has a separate root object **210**, which is maintained using two copies of its root block **221**. Each disk drive's root object **220** references each current object **210** for that disk drive.

In a preferred embodiment, one copy of the root block **221** is maintained in each of physical disk blocks **2** and **3** of each of the disk drives of the mass storage **104**. When the root block **221** for that disk drive is written to the mass storage **104**, it is first written to the physical disk block **2**, and then identically written to the physical disk block **3**. When the cache engine **100** is started or restarted, the root block **221** is read from the physical disk block **2**. If this read operation is successful, it is then identically rewritten to the physical disk block **3**; however, if this read operation is unsuccessful, the root block **221** is instead read from the physical disk block **3**, and then identically rewritten to the physical disk block **2**.

In a preferred embodiment, the cache engine **100** also stores certain system objects **210** redundantly on each disk drive on the mass storage **104**, so as to maintain the cache **102** holographic in the sense that loss of any subset of the disk drives merely decreases the amount of available cache. Thus, each such system object **210** is referenced by the root object **220** for its disk drive and is maintained using two copies of its object descriptor **211**. These system objects **210** which are maintained redundantly include the root object **220**, a blockmap object **210**, and a hash table **350** (FIG. **3**), each as described herein, as well as other system objects, such as objects **210** for collected statistics, documentation, and program code.

A subset of the blocks **200** are maintained in the memory **103**, so as to use the memory **103** as a cache for the mass storage **104** (just as the memory **103** and the mass storage **104** collectively act as the cache **102** for network objects **114**). The blocks **200** maintained in the memory **103** are referenced by a set of block handles **230**, which are also maintained in the memory **103**.

Each of the block handles **230** includes a forward handle pointer **232**, a backward handle pointer **233**, a reference counter **234**, a block address **235**, a buffer pointer **236**, and a set of flags **237**.

The forward handle pointer **232** and the backward handle pointer **233** reference other block handles **230** in a doubly-linked list of block handles **230**.

The reference counter **234** maintains a count of references to the block **200** by processes of the cache engine **100**. The reference counter **234** is updated when a block handle **230** for the block **200** is claimed or released by a process for the cache engine **100**. When the reference counter **234** reaches zero, there are no references to the block **200**, and it is placed on a free list of available blocks **200** after having been written to disk, if it has been modified, in the next write episode.

The block address **235** has the same format as the block pointer **212**. The buffer pointer **236** references a buffer used for the block **200**. The flags **237** record additional information about the block **200**.

In one embodiment, the block handles **230** are also threaded using a set of 2Q pointers **238** and a 2Q reference counter **239**, using the "2Q" technique, as further described in "2Q: A Low Overhead High Performance Buffer Management Replacement Algorithm," by Theodore Johnson and Dennis Shasha, hereby incorporated by reference as if fully set forth herein.

How Network Objects are Cached

FIG. **3** shows a block diagram of data structures for caching network objects.

The cache engine **100** receives protocol requests from the network **110**. In a preferred embodiment, each protocol request uses the HTTP protocol (or a variant such as SHTTP), and each HTTP request includes a URL (uniform resource locator) **310**, which identifies a network object **114** in the network **110**. In a preferred embodiment, each URL **310** identifies the server device **111** for the network object **114** and the location of the network object **114** on that server device **111**.

In alternative embodiments, the cache engine **100** may use other protocols besides HTTP or its variants, and the cache engine **100** may be responsive to one or more other identifiers for network objects **114** besides its URL **310**. Accordingly, as used herein, the term "URL" refers generally to any type of identifier which is capable of identifying, or assisting in identifying, a particular network object **114**.

The URL **310** includes a host identifier, which identifies the server device **111** at which the network object **114** is located, and a document identifier, which identifies the location at which the network object **114** is located at the server device **111**. In a preferred embodiment, the host identifier comprises a character string name for the server

device **111**, which can be resolved to an IP (internet protocol) address. However, in alternative embodiments, the host identifier may comprise the IP address for the server device **111**, rather than the character string name for the server device **111**.

The cache engine **100** includes a hash function **320** which associates the URL **310** with a hash signature **330**, which indexes a hash bucket **340** in a hash table **350** in the cache **102**. In a preferred embodiment, the hash table **350** comprises a set of hash tables **350**, one for each disk drive, each of which references those network objects **114** which are stored in the cache **102** on that disk drive of the mass storage **104**. Each such hash table **350** has its own object descriptor **211**; collectively the hash tables **350** form a single logical hash table.

In a preferred embodiment, the hash signature **330** comprises a 32-bit unsigned integer value which is determined responsive to the URL **310**, and which is expected to be relatively uniformly distributed over the range of all possible 32-bit unsigned integer values. In a preferred embodiment, the URL **310** is also associated with a 64-bit URL signature which is also an unsigned integer value, determined responsive to the URL **310**, and which is expected to be relatively uniformly distributed over the range of all possible 64-bit unsigned integer values; when comparing URLs **310**, the URL signatures are compared first, and only if they are equal are the URLs **310** themselves compared. In a preferred embodiment, the URL **310** is also converted to a canonical form prior to determining the hash signature **330** or the URL signature, such as by converting all alphabetic characters therein into a single case (lower case or upper case). In a preferred embodiment, each non-null hash bucket **340** comprises one data block **200**.

Because the hash table **350** associates the URL **310** directly with the hash bucket **340** in the hash table **350**, storage of the network objects **114** in the cache **102** is not hierarchical; each of the network objects **114** can be referenced and accessed from the cache **102** within order of constant time, such as less than about two disk read access times. Moreover, there is no special requirement that the network objects **114** in the cache **102** must have unique names; when network objects **114** have identical names (such as when they are old and new versions of the same network object **114**), the hash table **350** simply points to the same hash bucket **340** for both of them.

When there are both old and new versions of the same network object **114**, the cache engine **100** resolves new references by the URL **310** only to the new version of the network object **114**. Those client devices **111** which are already accessing the old version of the network object **114** when the new version of the network object **114** is stored in the cache **102** will continue to access the old version of the network object **114**. However, subsequent accesses to that network object **114**, even by the same client device **111**, using the URL **310** will be resolved by the cache engine **100** to the new version of the network object **114**. The old version of the network object **114** is deleted as soon as possible when all client devices **111** are done using it.

The cache **102** differs from a file system also in that the client device **111** has no control over storage of the network objects **114** in the cache **102**, including (1) the name space at the cache **102** for storage of the network objects **114**, (2) the ability to name or rename the network objects **114**, (3) whether the network objects **114** are removed from the cache **102** at any time, and (4) whether the network objects **114** are even stored in the cache **102** at all.

In a preferred embodiment, the cache engine **100** uses the memory **103** and the mass storage **104** (preferably a plurality of magnetic disk drives) to cache the network objects **114** so as to maintain in the cache **102** those network objects **114** most likely to be required by the client device **111**. However, in alternative embodiments, the cache engine **100** may enforce selected administrative requirements in addition to maintaining network objects **114** most likely to be used by the client device **111**, such as preferring or proscribing certain classes of network objects **114** or certain classes of client devices **111** or server devices **111**, whether at all times or at selected times of day and selected days.



The cache engine **100** uses the hash function **320** and the hash table **350** to identify an object **210** (and thus one or more data blocks **200**) associated with the URL **310** (and thus associated with the network object **114**). The cache engine **100** operates on the object **210** to retrieve from the cache **102** the network object **114** requested by the HTTP request, and to deliver that network object **114** to the client device **111**. The cache engine **100** maintains the cache **102** using the memory **103** and the mass storage **104** so that whether the object **210** is in the cache **102**, and if in the cache **102**, whether the object **210** is in the memory **103** or on the mass storage **104** is transparent to the client device **111** (except possibly for different time delays in retrieving the object **210** from the memory **103** or from the mass storage **104**).

As described herein in the section "Writing to Disk," the cache engine **100** writes blocks **200** (and objects **210** comprising those blocks **200**) from the memory **103** to the mass storage **104** on occasion, so as to maintain those blocks **200** in the memory **103** which are most frequently accessed.

As described herein, when writing blocks **200** from the memory **103** to the mass storage **104**, the cache engine **100** controls where the blocks **200** are written onto the mass storage **104** (such as determining onto which disk drive for the mass storage **104** and which location on that disk drive), and when the blocks **200** are written onto the mass storage **104** (such as determining at which times it is advantageous to write data onto the mass storage **104**). The cache engine **100** attempts to optimize the times and locations when and where the blocks **200** are written to disk, so as to minimize time and space required to write to and read from disk.

The hash table **350** is a system object **210**, and similar to other system objects **210**, includes an object descriptor **211**, zero or more indirect blocks **216**, and zero or more data blocks **200**. Because the hash table **350** is expected to be used relatively frequently, its indirect blocks **216** are expected to all be maintained in the memory **103**, although for a relatively large hash table **350** some of its data blocks **200** will be maintained on the mass storage **104**. In a preferred embodiment, the hash table **350** is distributed over the plurality of disk drives for the mass storage **104**, and the portion of the hash table **350** for each disk drive is referenced in the root object **220** for that disk drive.

Each hash signature **330** is indexed into the hash table **350** using the hash signature **330** modulo the number of hash buckets **340** in the hash table **350**. Each hash bucket **340** comprises one block **200**. Each hash bucket **340** includes zero or more hash entries **360**; each hash entry **360** includes a reference to the object **210** at the hash entry **360** (comprising a pointer to the object descriptor **211** for that object **210**).

The hash bucket **340** includes a secondary hash table, having a plurality of chains of secondary hash table entries (such as, for example, 32 such chains). The hash signature **330** is used to select one of the chains so as to search for the hash entry **360** associated with the URL **310**.

In an alternative embodiment, the hash entries **360** are maintained within the hash bucket **340** in an ordered list by

a secondary hash value, with null entries possibly interspersed (when the associated network objects **114** have been deleted or otherwise removed from the hash table **350**); the secondary hash value is also determined in response to the hash signature **330**, such as by computing the hash signature **330** modulo a selected value such as 2**32. If there are multiple hash entries **360** with the same secondary hash value, the cache engine **100** examines the object descriptor **211** associated with each one of the multiple hash entries **360** for the URL **310** of the correct network object **114** associated with the URL **310** having the associated hash signature **330**.

In a preferred embodiment, each hash bucket **340** has a selected size which is sufficient to hold at least 1.5 to 2 times the number of expected hash entries **360** if the hash entries **360** were perfectly uniformly distributed (this selected size is preferably exactly one data block **200**). If a hash entry **360** is assigned to a hash bucket **340** which is full, one of the network objects **114** already associated with the hash bucket **340**, along with its associated hash entry **360**, is deleted from the hash bucket **340** and from the cache **102** to make room for the new hash entry **360**.

In a preferred embodiment, there can be a plurality of different operational policies for selecting just which objects **210** are deletable.

Mass Storage with Multiple Disk Drives

The cache engine **100** maintains a DSD (disk set descriptor) object **210** for each disk drive currently or recently present on the mass storage **104**, which includes a data structure describing that disk drive. The cache engine **100** also maintains a DS (disk set) object **210**, which references all of the DSD objects **210**, and which is maintained redundantly on one or more of the disk drives for the mass storage **104**. Thus, the DS object **210** is maintained redundant on the mass storage **104** on a plurality of disk drives (preferably all of them), with each disk drive's information being maintained on that disk drive in the DSD object **210**.

Each DSD object **210** includes at least the following information: (1) the number of disk drives; (2) the collective total size of all disk drives; (3) for each disk drive—the individual size of that disk drive, an identifier for that disk drive, and a index into an array of all the disk drives; and (4) for each disk drive—the range of hash signatures **330** which are maintained on that disk drive. Also, the range of hash signatures **330** which are maintained on each disk drive is maintained in a separate system object **210** which maps each hash signature **330** to a particular disk drive. In a preferred embodiment, sizes are expressed as multiples of a selected value such as 1 megabyte.

The hash entries **360** are distributed over the plurality of disk drives in proportion to the size of each disk drive, rounded to an integer number of hash entries **360**.

When a disk drive is added, removed, or replaced, the cache engine **100** creates or modifies an associated DSD object **210**, and updates the DS object **210**. This operation proceeds in like manner as updating a data block **200**; thus, any control blocks **200** which reference the DS object **210** or one of the. DSD objects **210** are also updated, and the update is atomically committed to the mass storage **104** with the next write episode. (Updates to the DS object **210** are atomically committed for each disk drive, one at a time.) Thus, the mass storage **104** can be dynamically updated, including changing the identity or number of disk drives, while the cache engine **100** continues to operate, and the only effect on the cache engine **100** is to alter its perception of the amount of mass storage **104** which is available for the cache **102**.



Writing to Disk

The cache engine **100** implements a "delayed write" technique, in which the objects **210** which are written into the cache **102** (including objects **210** which are new versions of old objects **210** already present in the cache **102**) are written first into the memory **103**, and only later written out to the mass storage **104**. Unlike file systems which use delayed write techniques, there is no need to provide a non-volatile RAM or a UPS (uninterruptable power supply) and an associated orderly shutdown procedure, because the cache engine **100** makes no guarantee of persistence for the network objects **114** in the cache **102**. For example, if a particular network object **114** is lost from the cache **102**, that network object **114** can typically be reacquired from its associated server device **111**.

However, the delayed write technique operates to maintain consistency of the cache **102**, by not overwriting either control blocks **200** or data blocks **200** (except for the root block **221**). Instead, modified blocks **200** are written to the mass storage **104**, substituted for the original blocks **200**, and the original blocks **200** are freed, all in an atomic operation called a "write episode." If a write episode is interrupted or otherwise fails, the entire write episode fails atomically and the original blocks **200** remain valid.

A modified data block **200** is created when the underlying data for the original data block **200** is modified (or when new underlying data, such as for a new network object **114**, is stored in a new data block **200**). A modified control block **200** is created when one of the original blocks **200** (original data block **200** or original control block **200**) referenced by the original control block **200** is replaced with a modified block **200** (modified data block **200**, new data block **200**, or modified control block **200**); the modified control block **200** references the modified block **200** rather than the original block **200**.

Each write episode is structured so as to optimize both the operation of writing blocks **200** to the mass storage **104** and later operations of reading those blocks **200** from the mass storage **104**. The following techniques are used to achieve the read and write optimization goals:

- modified blocks **200** to be written are collected and written, when possible, into sequential tracks of one of the disk drives used for the mass storage **104**;
- indirect blocks **216** are written to storage blocks which are close to and before those data blocks **200** which they reference, so as to enable reading the referenced data blocks **200** in the same read operation whenever possible;
- sequentially related data blocks **200** are written to sequential free storage blocks (if possible, contiguous free storage blocks) on one of the disk drives used for the mass storage **104**, so as to enable reading the related data blocks **200** in the same read operation whenever possible;
- blocks **200** (control blocks **200** or data blocks **200**) to be written are collected together for their associated objects **210** and ordered within each object **210** by relative address, so as to enable reading blocks **200** for a particular object **210** in the same read operation whenever possible.

FIG. **4** shows a block diagram of a set of original and modified blocks.

FIG. **5** shows a flow diagram of a method for atomic writing of modified blocks to a single disk drive.

A tree structure **400** (FIG. **4**) of blocks **200** includes the original control blocks **200** and the original data blocks **200**, which have been already written to the mass storage **104** and

referenced by the root object **220**. Some or all of these original blocks **200** can be held in the memory **103** for use.

A method **500** (FIG. **5**) includes a set of flow points to be noted, and steps to be executed, by the cache engine **100**.

At a flow point **510**, the modified data blocks **200** and new data blocks **200** are held in the memory **103** and have not yet been written to disk.

Because no data block **200** is rewritten in place, each original control block **200** which references a modified data block **200** (and each original control block **200** which references a modified control block **200**) must be replaced with a modified control block **200**, all the way up the tree structure **400** to the root object **200**.

At a step **521**, for each, modified data block **200**, a free storage block on the mass storage **104** is allocated for recording the modified data block **200**. The blockmap object **210** is altered to reflect the allocation of the storage block for the modified data block **200** and freeing of the storage block for the original data block **200**.

The blockmap object **210** maintains information about which storage blocks on the mass storage **104** are allocated and have data stored therein, and which storage blocks are free and eligible for use. The cache engine **100** searches the blockmap object **210** for a free storage block, maintaining a write pointer **250** into the blockmap object **210** so as to perform the search in a round-robin manner. Thus, when the write pointer **250** advances past the end of the blockmap object **210**, it is wrapped around to the beginning of the blockmap object **210**. The write pointer **250** is maintained in the root object **220** so that the search continues in a round-robin manner even after a failure and restart of the cache **102**.

To maintain consistency of the cache **102** in the event of a failure, a free storage block **200** cannot be considered free (and therefore used) if it is still referenced, even if indirectly, by the root object **220**. Accordingly, those blocks **200** which are freed prior to atomic commitment of the root object **220** are not considered free until the root object **220** is atomically written to disk.

At a step **522**, for each original control block **200** which references an original block **200** which is lo be modified in this write episode, a modified control block **200** is generated. In like manner as the step **521**, a free storage block on the mass storage **104** is allocated for recording the modified control block **200**. In like manner as the step **521**, the blockmap object **210** is modified to reflect the allocation of the storage block for the modified control block **200** and freeing of the storage block for the original control block **200**.

The step **522** is repeated for each level of the tree structure **400** up to the root object **220**.

At a step **523**, the operations of the step **521** and the step **522** are repeated for those blocks **200** of the blockmap object **210** which were altered.

At a step **524**, the modified data blocks **200** and modified control blocks **200** (including the blockmap object **210**) are written to their allocated storage blocks on the mass storage **104**.

At a step **525**, the root object **220** is rewritten in place on the mass storage **104**.

At a flow point **530**, the root object **220** has been rewritten in place, all changes to the tree structure **460** have thus been atomically committed; the modified blocks **200** have become part of the tree structure **400** and the original blocks **200** which were replaced with modified blocks **200** have become freed and eligible for reuse. The modified blockmap object **210** is not atomically committed until the root object **220** has been rewritten in place, so storage blocks which are indicated as allocated or free are not so indicated until the write episode has been atomically committed at the flow point **530**.

When the modified blocks **200** are actually allocated to storage blocks and written to those storage blocks on the mass storage **104**, they are written in the following manner:

- the tree structure **400** is traversed in a depth-first top-down manner, so as to ensure that modified control blocks **200** are written in a sequence of storage blocks before the modified data blocks **200** they reference;
- at each modified control block **200**, the referenced modified data blocks **200** are traversed in a depth-first top-down manner, so as to ensure that the referenced modified data blocks **200** are clustered together in a sequence of storage blocks after the modified control block **200** which references them.

This technique helps to ensure that when reading control blocks **200**, the data blocks **200** they reference are read-ahead whenever possible, so as to minimize the number of operations required to read the control blocks **200** and the data blocks **200** from the mass storage **104**.

The cache engine **100** determines when to perform a write episode, in response to the condition of the memory **103** (including the number of modified blocks **200** in the memory **103**), the condition of the mass storage **104** (including the number of free storage blocks available on the mass storage **104**), and the condition of the cache **102** (including the hit rate of network objects **114** in the cache **102**).

In a preferred embodiment, write episodes using the method **500** are performed upon either of the following conditions:

- when a certain time (such as 10 seconds) have elapsed since the previous write episode; or
- when modified blocks comprise too large a proportion of memory.

Write episodes using the method **500** can also be performed upon either of the following conditions:

- the number of modified blocks **200** in the memory **103** is near the number of available free storage blocks on the mass storage **104** minus the number of storage blocks needed for the blockmap object **210**; or
- the fraction of modified blocks **200** in the memory **103** is near the miss rate of network objects **114** in the cache **102**.

However, the number of free blocks **200** on the mass storage **104** is normally much larger than the number of blocks **200** to be written during the write episode.

Each object **210** has an associated "access time," which indicates when that object **210** was last written or read. However, it is not desirable to update the access time on disk for each object **210** whenever that object **210** is read, as this would produce a set of modified control blocks **200** (which must be written to disk during the next write episode) whenever any object **210** is read.

Accordingly, a volatile information table is maintained which records volatile information about objects **210**, including access times for objects **210** which have been read, and number of accesses for those objects **210**. When an object **210** is read, its access time is updated only in the volatile information table, rather than in the object descriptor **211** for the object **210** itself. The volatile information table is maintained in the memory **103** and is not written to disk.

In a preferred embodiment, network objects **114** can continue to be read while write episodes using the method

**500** are being performed, even for those network objects **114** which include modified data blocks **200**, because the modified data blocks. **200** continue to be maintained in the memory **103** while the write episodes are performed, whether or not they are actually successfully written to the mass storage **104**.

Removing Objects from Cache

FIG. **6** shows a block diagram of a set of pointers and regions on mass storage.

A set of storage blocks on each disk drive of the mass storage **104** is represented by a circular map **600**, having indexes from zero to a maximum value Nmax. In the figure, indexes increase in a counterclockwise direction, wrapping around from the end to the beginning of each disk drive modulo the maximum value Nmax.

A DT (delete table) object **210** is maintained which includes an entry for each deletable object **210**. Each time one of the hash buckets **340** in the hash table **350** is accessed, a reference is inserted into the DT object **210** for each object **210** which is referenced by one of the hash entries **360** in that hash bucket **340** and which qualifies as deletable.

In alternative embodiments, an objectmap object **210** is maintained which includes an entry for each of the blockmap entries in the blockmap object **210**. In such alternatives, each entry in the objectmap object **210** is either empty, which indicates that the corresponding block **200** does not comprise an object descriptor **211**, or non-empty, which indicates that the corresponding block **200** comprises an object descriptor **211**, and further includes information to determine whether the corresponding object **210** can be deleted. Each non-empty entry in the objectmap object **210** includes at least a hit rate, a load time, a time to live value and a hash signature **330** for indexing into the hash table **350**.

The cache engine **100** searches the blockmap object **210** for a deletable object **210** (an object **210** referenced by the DT object **210**), maintaining a delete pointer **260** into the blockmap object **210**, similar to the write pointer **250**, so as to perform the search in a round-robin manner. Thus, similar to the write pointer **250**, when the delete pointer **260** advances past the end of the blockmap object **210**, it is wrapped around to the beginning of the blockmap object **210**. Also similar to the write pointer **250**, the delete pointer **260** is maintained in the root object **220** so that the search continues in a round-robin manner even after a failure and restart of the cache **102**.

The write pointer **250** and the delete pointer **260** for each disk drive in the mass storage **104** each comprise an index into the map **600**.

In a preferred embodiment, the delete pointer **260** is maintained at least a selected minimum distance d**0** **601** ahead of the write pointer **250**, but not so far ahead as to wrap around again past the write pointer **250**, so as to select a delete region **610** of each disk drive for deleting deletable objects **210** which is near to a write region **620** used for writing modified and new objects **210**. The write region **620** is at least the size specified by the minimum distance d**0** **601**. Although there is no specific requirement for a size of the delete region **610**, it is preferred that the delete region **610** is several times (preferably about five times) the size of the write region **620**. The cache engine **100** thus provides that nearly all writing to disk occurs in a relatively small part of each disk drive. This allows faster operation of the mass storage **104** because a set of disk heads for the mass storage **104** must move only relatively a small distance during each write episode.

Because the cache engine **100** attempts to maintain a relatively fixed distance relationship between the write pointer **250** and the delete pointer **260**, write episodes and delete episodes will occur relatively frequently. In a preferred embodiment, the cache engine **100** alternates between write episodes and delete episodes, so that each delete episode operates to make space on disk for a later write episode (the next succeeding write episode writes the blockmap object **210** to disk, showing the blocks **200** to be deleted; the write episode after that is able to use the newly free blocks **200**) and each write episode operates to consume free space on disk and require a later delete episode.



A collection region **630** is selected near to and ahead of the delete region **610**, so as to select objects **210** for deletion. A size of the collection region **630** is selected so that, in an time estimated for the write pointer **250** to progress through the collection region **630** (this should take several write episodes), nearly all hash entries **360** will have been accessed through normal operation of the cache engine **100**. Thus, because each hash entry **360** includes information sufficient to determine whether its associated object **210** is deletable, nearly all objects **210** will be assessed for deletion in the several write episodes needed for the write region **620** to move through the collection region **630**.

Objects **210** which have been assessed for deletion are placed on an deletion list, sorted according to eligibility for deletion. In a preferred embodiment, objects **210** are assessed for deletion according to one of these criteria:

- If an object **210** is explicitly selected for deletion by the cache engine **100** due to operation of the HTTP protocol (or a variant thereof, such as SHTTP), the object **210** is immediately placed at the head of the deletion list.
- If a new object **210** with the same name is created, the old object **210** is placed at the head of the deletion list as soon as all references to the old object **210** are released (that is, no processes on the cache engine **100** reference the old object **210** any longer).
- If an object **210** has expired, it is immediately placed at the head of the deletion list.
- If a first object **210** has an older access time than a second object **210**, the first object **210** is selected as more eligible for deletion than the second object **210**, and is thus sorted into the deletion list ahead of the second object **210**.

A fraction of objects **210** on the deletion list chosen due to the last two of these criteria (that is, due to expiration or older access time), preferably one-third of the objects **210** on the deletion list, are selected for deletion.

After each write episode, the collection region **630** is advanced by an expected size of the next write region **620**. In a preferred embodiment, the expected size of the next write region **620** is estimated by averaging the size of the write region **620** for the past several (preferably seven) write episodes. Those objects **210** which were on the deletion list before advancing the delete region **610** and which are in the delete region **610** afterward are scheduled for deletion; these objects are selected individually and deleted in the next delete episode (in a preferred embodiment, the next delete episode is immediately after completion of the write episode).

In a preferred embodiment, write episodes and delete episodes for each disk drive on the mass storage **104** are independent, so there are separate deletion regions **610**, write regions **620**, and collection regions **630** for each disk drive on the mass storage **104**.

Alternative Embodiments

Although preferred embodiments are disclosed herein, many variations are possible which remain within the

concept, scope, and spirit of the invention, and these variations would become clear to those skilled in the art after perusal of this application.

What is claimed is:

**1**. A method, including steps of:

receiving a set of network objects in response to a first request to a server from a client; and

maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining includes steps of recording said network objects in said cache memory and retrieving said network objects from said cache memory, so as to substantially minimizes a time required for retrieving said network objects from said mass storage.

**2**. A method as in claims **1**, wherein said network objects include an HTML page to be retrieved from said cache memory and served to the client for display.

**3**. A method as in claim **1**, including a step of serving said network objects to said client in place of said server.

**4**. A method as in claim **3**, wherein said network objects are served to said client in place of said server in response to a second request from said client.

**5**. A method as in claim **3**, wherein said step of serving is responsive to a resource identifier associated with each said network object.

**6**. A method as in claim **3**, wherein said step of serving is responsive to a uniform resource locator associated with each said network object.

**7**. A method as in claim **1**, wherein said step of receiving uses a computer network.

**8**. A method as in claim **1**, wherein said step of receiving is responsive to protocol messages using a computer network, said protocol messages including a resource identifier for each said network object.

**9**. A method, including steps of:

receiving a set of network objects in response to a first request to a server from a client; and

maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining includes steps of recording said network objects in said cache memory and retrieving said network objects from said cache memory, so as to perform at least one of:

maximizing a rate at which said network objects can be written to said mass storage,

maximizing a rate at which said network objects can be erased from said mass storage,

maximizing a rate at which said network objects can be retrieved from said mass storage, or

minimizing a time required for retrieving said network objects from said mass storage.

**10**. A method as in claim **9**, wherein said network objects include an HTML page to be retrieved from said cache memory and served to the client for display.

**11**. A method as in claim **9**, including a step of serving said network objects to said client in place of said server.

**12**. A method as in claim **11**, wherein said network objects are served to said client in place of said server in response to a second request from said client.

**13**. A method as in claim **11**, wherein said step of serving is responsive to a resource identifier associated with each said network object.

**14**. A method as in claim **11**, wherein said step of serving is responsive to a uniform resource locator associated with each said network object.

**15**. A method as in claim **9**, wherein said step of receiving uses a computer network.

**16**. A method as in claim **9**, wherein said step of receiving is responsive to protocol messages using a computer network, said protocol messages including a resource identifier for each said network object.

**17**. A method, including steps of:

receiving a set of network objects in response to a first request to a server from a client; and

maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining is performed independently of a file system for said mass storage.

**18**. A method, including steps of:

receiving a set of network objects in response to a first request to a server from a client; and

maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining includes a step of writing a group of network objects to said mass storage in one or more write episodes, such that said write episodes are performed so as to atomically commit changes to said mass storage during each said write episode by writing modified data and control blocks to the mass storage without erasing corresponding unmodified data and control blocks and then replacing a root node so as to atomically commit the changes.

**19**. A method, including steps of:

receiving a set of network objects in response to a first request to a server from a client; and

maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining includes a step of deleting a group of network objects to said mass storage in one or more delete episodes, such that said delete episodes are performed so as to atomically commit changes to said mass storage during each said delete episode by writing modified control blocks to the mass storage without erasing corresponding unmodified control blocks and then replacing a root node so as to atomically commit the changes.

**20**. A cache engine, including:

a cache memory;

an interface for interfacing to a network;

a processor; and

a memory storing information including instructions, the instructions executable by said processor, the instructions including steps of: (a) receiving a set of network objects in response to a first request to a server from a client; and (b) maintaining said network objects in said cache memory in said cache engine, said cache engine connected via the network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining includes steps of recording said network objects in said cache memory and retrieving said network objects from said cache

memory, so as to substantially minimizes a time required for retrieving said network objects from said mass storage.

**21**. A cache engine as in claim **20**, wherein said network objects include an HTML page to be retrieved from said cache memory and served to the client for display.

**22**. A cache engine as in claim **20**, wherein the instructions further include a step of serving said network objects to said client in place of said server.

**23**. A cache engine as in claim **22**, wherein said network objects are served to said client in place of said server in response to a second request from said client.

**24**. A cache engine as in claim **22**, wherein said step of serving is responsive to a resource identifier associated with each said network object.

**25**. A cache engine as in claim **22**, wherein said step of serving is responsive to a uniform resource locator associated with each said network object.

**26**. A cache engine as in claim **20**, wherein said step of receiving uses a computer network.

**27**. A cache engine as in claim **20**, wherein said step of receiving is responsive to protocol messages using a computer network, said protocol messages including a resource identifier for each said network object.

**28**. A cache engine, including:

a cache memory;

an interface for interfacing to a network;

a processor; and

a memory storing information including instructions, the instructions executable by said processor, the instructions including steps of: (a) receiving a set of network objects in response to a first request to a server from a client; and (b) maintaining said network objects in said cache memory in said cache engine, said cache engine connected via the network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining includes steps of recording said network objects in said cache memory and retrieving said network objects from said cache memory, so as to perform at least one of:

maximizing a rate at which said network objects can be written to said mass storage,

maximizing a rate at which said network objects can be erased from said mass storage,

maximizing a rate at which said network objects can be retrieved from said mass storage, or

minimizing a time required for retrieving said network objects from said mass storage.

**29**. A cache engine as in claim **28**, wherein said network objects include an HTML page to be retrieved from said cache memory and served to the client for display.

**30**. A cache engine as in claim **28**, wherein the instructions further include a step of serving said network objects to said client in place of said server.

**31**. A cache engine as in claim **30**, wherein said network objects are served to said client in place of said server in response to a second request from said client.

**32**. A cache engine as in claim **30**, wherein said step of serving is responsive to a resource identifier associated with each said network object.

**33**. A cache engine as in claim **30**, wherein said step of serving is responsive to a uniform resource locator associated with each said network object.

**34**. A cache engine as in claim **28**, wherein said step of receiving uses a computer network.

**35**. A cache engine as in claim **28**, wherein said step of receiving is responsive to protocol messages using a computer network, said protocol messages including a resource identifier for each said network object.



**36**. A cache engine, including:

a cache memory;

an interface for interfacing to a network;

a processor; and

a memory storing information including instructions, the instructions executable by said processor, the instructions including steps of: (a) receiving a set of network objects in response to a first request to a server from a client; and (b) maintaining said network objects in said cache memory in said cache engine, said cache engine connected via the network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining is performed independently of a file system for said mass storage.

**37**. A cache engine, including:

a cache memory;

an interface for interfacing to a network;

a processor; and

a memory storing information including instructions, the instructions executable by said processor, the instructions including steps of: (a) receiving a set of network objects in response to a first request to a server from a client; and (b) maintaining said network objects in said cache memory in said cache engine, said cache engine connected via the network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining includes a step of writing a group of network objects to said mass storage in one or more write episodes, such that said write episodes are performed so as to atomically commit changes to said mass storage during each said write episode by writing modified data and control blocks to the mass storage without erasing corresponding unmodified data and control blocks and then replacing a root node so as to atomically commit the changes.

**38**. A cache engine, including steps of:

receiving a set of network objects in response to a first request to a server from a client; and

maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining includes a step of deleting a group of network objects to said mass storage in one or more delete episodes, such that said delete episodes are performed so as to atomically commit changes to said mass storage during each said delete episode by writing modified control blocks to the mass storage without erasing corresponding unmodified control blocks and then replacing a root node so as to atomically commit the changes.

**39**. A memory storing information including instructions, the instructions executable by a processor to control a cache engine, the instructions including steps of:

receiving a set of network objects in response to a first request to a server from a client; and

maintaining said network objects in a cache memory in the cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining includes steps of recording said network objects in said cache memory and

retrieving said network objects from said cache memory, so as to substantially minimizes a time required for retrieving said network objects from said mass storage.

**40**. A memory as in claim **39**, wherein said network objects include an HTML page to be retrieved from said cache memory and served to the client for display.

**41**. A memory as in claim **39**, wherein the instructions further include a step of serving said network objects to said client in place of said server.

**42**. A memory as in claim **41**, wherein said network objects are served to said client in place of said server in response to a second request from said client.

**43**. A memory as in claim **41**, wherein said step of serving is responsive to a resource identifier associated with each said network object.

**44**. A memory as in claim **41**, wherein said step of serving is responsive to a uniform resource locator associated with each said network object.

**45**. A memory as in claim **39**, wherein said step of receiving uses a computer network.

**46**. A memory as in claim **39**, wherein said step of receiving is responsive to protocol messages using a computer network, said protocol messages including a resource identifier for each said network object.

**47**. A memory storing information including instructions, the instructions executable by a processor to control a cache engine, the instructions including steps of:

receiving a set of network objects in response to a first request to a server from a client; and

maintaining said network objects in a cache memory in the cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining includes steps of recording said network objects in said cache memory and retrieving said network objects from said cache memory, so as to perform at least one of:

maximizing a rate at which said network objects can be written to said mass storage,

maximizing a rate at which said network objects can be erased from said mass storage,

maximizing a rate at which said network objects can be retrieved from said mass storage, or

minimizing a time required for retrieving said network objects from said mass storage.

**48**. A memory as in claim **47**, wherein said network objects include an HTML page to be retrieved from said cache memory and served to the client for display.

**49**. A memory as in claim **47**, wherein the instructions further include a step of serving said network objects to said client in place of said server.

**50**. A memory as in claim **49**, wherein said network objects are served to said client in place of said server in response to a second request from said client.

**51**. A memory as in claim **49**, wherein said step of serving is responsive to a resource identifier associated with each said network object.

**52**. A memory as in claim **49**, wherein said step of serving is responsive to a uniform resource locator associated with each said network object.

**53**. A memory as in claim **47**, wherein said step of receiving uses a computer network.

**54**. A memory as in claim **47**, wherein said step of receiving is responsive to protocol messages using a computer network, said protocol messages including a resource identifier for each said network object.

**55**. A memory storing information including instructions, the instructions executable by a processor to control a cache engine, the instructions including steps of:

receiving a set of network objects in response to a first request to a server from a client; and

maintaining said network objects in a cache memory in the cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining is performed independently of a file system for said mass storage.

**56**. A memory storing information including instructions, the instructions executable by a processor to control a cache engine, the instructions including steps of:

receiving a set of network objects in response to a first request to a server from a client; and

maintaining said network objects in a cache memory in the cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining includes a step of writing a group of network objects to said mass storage in one or more write episodes, such that said write episodes are performed so as to atomically commit changes to said mass storage during each said write episode by writing modified data and control blocks to the mass storage without erasing corresponding unmodified data and control blocks and then replacing a root node so as to atomically commit the changes.

**57**. A memory storing information including instructions, the instructions executable by a processor to control a cache engine, the instructions including steps of:

receiving a set of network objects in response to a first request to a server from a client; and

maintaining said network objects in a cache memory in the cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;

wherein said step of maintaining includes a step of deleting a group of network objects to said mass storage in one or more delete episodes, such that said delete episodes are performed so as to atomically commit changes to said mass storage during each said delete episode by writing modified control blocks to the mass storage without erasing corresponding unmodified control blocks and then replacing a root node so as to atomically commit the changes.

* * * * *

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1768

**Short Case Caption:** CA, Inc. v. Netflix, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 13,965 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 08/16/2023

Signature: /s/ Daniel S. Young

Name: Daniel S. Young

Save for Filing