**2023-1768**

# United States Court of Appeals for the Federal Circuit

CA, INC.,

*Appellant,*

– v. –

NETFLIX, INC.,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office in Case No. IPR2021-01319*

## REPLY BRIEF FOR APPELLANT

DAN YOUNG, ESQ.
MATTHEW C. HOLOHAN
KENT DALLOW, ESQ.
QUARLES & BRADY LLP
8210 Southpark Terrace
Littleton, Colorado 80120
(303) 268-0066 Telephone
dyoung@quarles.com
matthew.holohan@quarles.com
kent.dallow@quarles.com

*Counsel for Appellant CA, Inc*

JANUARY 26, 2024

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Netflix's arguments regarding the construction of "cache memory including mass storage" are unpersuasive and continue to eliminate the distinction between the separate claim elements "memory" and "mass storage" .......... 2

A. The claim language demonstrates that "memory" and "mass storage" are separate claimed elements .......... 3

B. The written description and specification demonstrate that "memory" and "mass storage" are separate claimed elements .......... 5

C. The '794 Patent's prosecution history demonstrates that "memory" and "mass storage" are separate claimed elements .......... 11

D. The extrinsic evidence confirms that "memory" and "mass storage" are separate claimed elements .......... 13

II. Netflix's improper argument on appeal should be rejected .......... 15

III. Netflix's arguments regarding the combination of Medin and Seltzer with respect to limitation [d] are unpersuasive and stem from the misconstruction of "cache memory" .......... 20

IV. Netflix's arguments regarding Markatos and limitation [c] of claim 17 are unpersuasive .......... 23

CONCLUSION .......... 29

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
949 F.3d 1360 (Fed. Cir. 2020) ....................15

*Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*,
811 F.3d 1334 (Fed. Cir. 2016) ....................6, 9

*Ariosa Diagnostics v. Verinata Health, Inc.*,
805 F.3d 1359 (Fed. Cir. 2015) ....................17

*Henny Penny Corp. v. Frymaster LLC*,
938 F.3d 1324 (Fed. Cir. 2019) ....................16

*In re Google Tech. Holdings*,
980 F.3d 858 (Fed. Cir. 2020) ....................15

*In re Huai-Hung Kao*,
639 F.3d 1057 (Fed. Cir. 2011) ....................21

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ....................15

*Intertainer, Inc. v. Hulu, LLC*,
660 F. App'x 943 (Fed. Cir. 2016)....................28

*Merck & Co. v. Teva Pharm. USA, Inc*.,
395 F.3d 1364 (Fed. Cir. 2005) ....................4, 9

*Microsoft Corp. v. Biscotti, Inc.*,
878 F.3d 1052 (Fed. Cir. 2017) ....................16

*Netflix, Inc. v. DivX, LLC*,
84 F.4th 1371 (Fed. Cir. 2023) .................... 16, 19

*OSI Pharms., LLC v. Apotex Inc.*,
939 F.3d 1375 (Fed. Cir. 2019) ....................21

*Redline Detection, LLC v. Star Envirotech, Inc.*,
811 F.3d 435 (Fed. Cir. 2015) ....................15

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
853 F.3d 1272 (Fed. Cir. 2017) ....................16

*Yita LLC v. MacNeil IP LLC*,
69 F.4th 1356 (Fed. Cir. 2023) ....................16

**Statutes**

35 U.S.C. § 312(a)(3) ....................15

**Regulations**

37 C.F.R. § 42.104(b)(4)-(5) ....................16

## INTRODUCTION

As noted in CA's Opening Brief, the Patent Trial and Appeal Board erroneously decided that limitation [b], "a cache memory in a cache engine, . . . said cache memory including mass storage," as used in Challenged Claims 1, 3-9, and 11-17 of U.S. Patent No. 7,103,794 (the "'794 Patent"), did not require both memory and mass storage. This resulted in an erroneous obviousness determination with respect to the '794 Patent and the cited prior art of Medin, Seltzer, and Markatos, and Netflix's Response Brief ("Response") fails to justify this plainly improper approach.

With respect to Medin, Netflix argues in its Response that the intrinsic and extrinsic evidence support the Board's finding that Medin discloses a "cache memory including mass storage." Netflix Br. 25. But Netflix fails to rebut the fact that the Board's construction of limitation [b] effectively removes the "memory" portion out of the limitation. Facing these deficiencies in Medin, Netflix improperly raises arguments with respect to the combination of Medin, Seltzer, and Markatos, that were not raised in its Petition in the underlying IPR.

Moreover, Netflix's Response fails to rebut CA's arguments regarding the combination of Medin and Seltzer with respect to limitation [d] of claim 1 and limitation [c] of claim 17. As for the combination of Medin and Seltzer, Netflix's arguments are unpersuasive when compared to CA's substantial evidence showing

that, under a proper understanding of "cache memory," a POSITA would have no reasonable expectation of success in applying Seltzer's techniques to a web caching system such as Medin. As for the combination of Medin and Markatos, and again with a proper understanding of "cache memory," Netflix's arguments in its Response cannot overcome the fact that each time Markatos caches a set of network objects, at least 10% of those set of network objects are maintained in mass storage with a file system.

Thus, as noted in CA's Opening Brief, and for the reasons stated below, the Board's determination that Challenged Claims 1, 3-9, and 11-17 are unpatentable should be reversed or, at a minimum, vacated and remanded.

## ARGUMENT

### I. Netflix's arguments regarding the construction of "cache memory including mass storage" are unpersuasive and continue to eliminate the distinction between the separate claim elements "memory" and "mass storage"

Based on CA's Opening Brief and Netflix's Response, the primary dispute of this appeal centers on the meaning of the term, "cache memory," as used in claim limitation [b], "a cache memory in a cache engine, . . . said cache memory including mass storage." Appx45 (17:8-11, 17:41-44, 18:13-16). There is no dispute that neither party proposed a construction for the term "cache memory" and that the Patent Trial and Appeal Board (the "Board") ultimately applied the "plain language of the claims." Appx8; Appx10. But as noted in CA's Opening Brief, the Board's

improper claim construction determination is subject to *de novo* review by this Court and should be overturned because it improperly broadens the scope of the "cache memory" term and effectively reads the claimed "memory" element out of the claim. CA Br. 26-39; *see generally* Appx2748-2758; Appx2780-2783; Appx3231-3244.

While CA showed that the Board improperly disregarded "'[CA]'s arguments premised on intrinsic evidence, extrinsic evidence, and witness testimony,'" even "disregard[ing] Netflix's own statements made in its Petition," Netflix provides no direct response to address these deficiencies. CA Br. 16 (quoting Appx10). Instead, Netflix continues to blur the distinction between these separate claimed elements. But as discussed further below, the claim language, written description, specification, prosecution history, extrinsic evidence, and Netflix's own statements show that "cache memory" must include both memory and a mass storage.

### A. The claim language demonstrates that "memory" and "mass storage" are separate claimed elements

Netflix attempts a strained reading of limitation [b] in its Response, arguing that "the claims do not draw a 'distinction' between 'memory' and 'mass storage'" and that "the claims make clear that mass storage (i.e., nonvolatile memory) is a form of 'cache memory.'" Netflix Br. 27. But in looking at limitation [b], this is facially incorrect as the limitation clearly distinguishes between "memory" and the included "mass storage." Appx45 (17:8-11, 17:41-44, 18:13-16). As CA demonstrated in its Opening Brief, the language of claims 1, 9, and 17 require, in pertinent part,

"maintaining said network objects in a cache **memory** in a cache engine, . . . said cache memory including **mass storage**." CA Br. 29-35; *see* Appx45 (17:8-11, 17:41-44, 18:13-16) (emphasis added); Appx2780-2781; Appx2842 (¶59). Thus, contrary to Netflix's arguments, the limitation [b] claim language is not equating "cache memory" and "mass storage." Instead, the claim language clearly distinguishes that the cache contains both "memory" and "mass storage" elements – both of which are part of the cache engine.

As CA further demonstrated in its Opening Brief, a POSITA would recognize that the claim language itself requires the cache to have both (1) memory and (2) mass storage. CA Br. 30; Appx2780-2781; Appx2842-2843 (¶59). Netflix argues that this is an example of "rearranging and supplementing the claim language to require 'a cache' that includes 'both' mass storage and volatile memory." Netflix Br. 27. But this is not a supplementation as that is exactly what the claim language requires, and "a claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005).

Thus, the Board's determination that "cache memory" "require[s] mass storage" but "permissively allow[s] other types of memory" is a plain mischaracterization of the '794 Patent, finds no support in the claim language of the '794 Patent, and should be reversed.

### B. The written description and specification demonstrate that "memory" and "mass storage" are separate claimed elements

As set forth in CA's Opening Brief, the '794 Patent uses the term, "memory," exclusively to refer to volatile memory, such as RAM, which it distinguishes from mass storage – both of which are expressly part of the disclosed cache. CA Br. 30; *see, e.g.*, Appx31 (distinguishing, in the Abstract, between "a memory (such as RAM) and mass storage (such as one or more disk drives)"); Appx37 (2:9-10) (repeating the same phrase in the Summary of the Invention); Appx38 (3:30-31) ("The cache 102 includes the program and data memory 103 and a mass storage 104."); Appx33-34 (Figures 1 and 2 displaying a cache 102 comprising "memory" 103 and "mass storage" 104); *passim* (consistently referring to "memory 103"); Appx2780-2781; Appx2842-2843 (¶59). But Netflix infers from this argument that CA is attempting to read limitations from the specification in the Challenged Claims and that CA is attempting to read these claims co-extensive with the exemplary embodiments. Netflix Br. 35-36. Once again Netflix blurs the separate elements of "memory" and "mass storage" in the "cache memory including mass storage" limitation.

At the outset, CA's position does not read any limitations into limitation [b]. Rather, CA showed how the specification demonstrates that the proper interpretation of this limitation is that a "cache memory including mass storage" must have both memory and mass storage. CA Br. 29-35. As this Court previously held, the

specification is the *single best guide* to determining the proper scope of a claim limitation." *Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*, 811 F.3d 1334, 1339-40 (Fed. Cir. 2016) ("The claims 'must be read in view of the specification, of which they are a part.' . . . Indeed, we have said that the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'") (internal citations omitted).

In this case, "**every time** the '794 [p]atent refers to the disclosed 'cache 102,' it refers to the cache including both 'memory 103' and 'mass storage 104'" – a fact acknowledged by the Board and Netflix. Appx8 (emphasis added) ("both parties cite the Specification's references to a cache that includes a 'memory' and a mass storage"); Appx2844 (¶61) ("I note that Dr. Houh, like myself, is unable to identify any embodiment disclosed by the '794 Patent that does not require both a memory and a mass storage device."); Appx2942-2943 (192:20-193:11) ("Sitting here today, based on your current knowledge of the '794 patent, you're not aware of any examples disclosed in the '794 patent where a cache engine only -- stores network objects only in mass storage. Is that fair? A Well, I don't have that memorized. I mean nothing comes to mind with such limiting language. But I mean, the specification says what it says. And so I'll let the specification stand for itself as to what it says.").

This is clearly shown in Figures 1 and 2 of the '794 Patent:




FIG. 1

Appx33 (excerpted and annotated); Appx2751; Appx2818 (¶26).




FIG. 2

Appx34 (annotated); Appx2752; Appx2819 (¶26).

As seen in these figures, the cache is comprised of both "memory" and "mass storage." Further, both parties' experts agree that cache 102 disclosed in the specification is an example of the recited "cache memory." Appx2752; Appx2782; Appx2819 (¶26); Appx2844-2845 (¶62); *accord* Appx2940-2941 (184:16-186:22) (Netflix's expert testifying, "[s]o that the cache memory that's introduced in line 8 of column 17 [Claim 1], which is required by lines 10 and 11 of this element of

Claim 17 to include a mass storage, **I certainly think that a person of ordinary skill would understand that cache 102 would be an example of such a cache memory in these lines**.") (emphasis added).

Importantly, Netflix also utilized the teachings of the '794 Patent in the same way in its Petition, stating "the cache engine can maintain frequently accessed network objects in faster volatile memory (such as RAM), thus using the memory as a cache for the mass storage." Appx58. Netflix attempts to distance itself from its earlier statements, arguing in its Response that "Netflix never argued or implied that 'cache memory' required volatile memory." Netflix Br. 41. However, Netflix's prior arguments show that Netflix once considered the claimed "memory" and "mass storage" elements as separate elements, and this highlights the flaws in Netflix's current position where the claimed element "cache memory including mass storage" could be satisfied by mass storage alone. But as CA previously noted, the Board's conclusion and Netflix's current position "reads out 'memory' from the Challenged Claims because it allows a cache consisting of **only** mass storage to constitute 'a cache **memory** including mass storage.'" CA Br. 35. This does not give meaning to the claim term "memory" and this Court has held that "such a result is disfavored." *Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*, 811 F.3d 1334, 1340 (Fed. Cir. 2016) (citing *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed.

Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.")).

Netflix responds to this by arguing that "construing 'cache memory' to require volatile memory would improperly exclude embodiments (e.g., figure 1) where the network objects are maintained in mass storage but not volatile memory." Netflix Br. 30. Netflix also argues that "[t]he factual predicate for CA's argument is, at best, incomplete" because "'memory 103' is not used to maintain network objects in each of those embodiments," pointing to "(FIG. 1) []maintaining network objects 114 in mass storage[.]" Netflix Br. 35.

These arguments misread the '794 Patent, as the embodiments of the '794 Patent are all consistent: in every embodiment, the memory 103 is main memory which serves as an important part of the cache 102, along with the mass storage 104, which collectively act as a cache for the network objects 114. *See* Appx38 (4:9-14) (discussing FIG. 1, "[i]n a preferred embodiment, the cache engine 100 uses the memory 103 as a cache for those network objects 114 maintained using the mass storage 104, while using the combined memory 103 and mass storage 104 as the cache 102 for those network objects 114 available on the network 110"); *see also* Appx40 (8:9-13) ("A subset of the blocks 200 are maintained in the memory 103, so as to use the memory 103 as a cache for the mass storage 104 (just as the memory 103 and the mass storage 104 collectively act as the

cache 102 for network objects 114)."); Appx41 (9:66-10:3) ("In a preferred embodiment, the cache engine 100 uses the memory 103 and the mass storage 104 (preferably a plurality of magnetic disk drives) to cache the network objects 114 so as to maintain in the cache 102 those network objects 114 most likely to be required by the client device 111."); Appx41 (10:17-24) ("The cache engine 100 maintains the cache 102 using the memory 103 and the mass storage 104 so that whether the object 210 is in the cache 102, and if in the cache 102, whether the object 210 is in the memory 103 or on the mass storage 104 is transparent to the client device 111 (except possibly for different time delays in retrieving the object 210 from the memory 103 or from the mass storage 104)."); Appx2753; Appx2820 (¶27). As such, it is clear that the set of "network objects 114" are collectively maintained in "mass storage 104" and "memory 103," contrary to Netflix's arguments in its Response.

Thus, the Board's determination that "cache memory" "require[s] mass storage" but "permissively allow[s] other types of memory" is a plain mischaracterization of the '794 Patent, finds no support in the specification of the '794 Patent, and should be reversed.

### C. The '794 Patent's prosecution history demonstrates that "memory" and "mass storage" are separate claimed elements

In its Response, Netflix does little more than repeat its flawed interpretation of the prosecution history. Netflix argues that "[t]he prosecution history confirms

that the inventors understood the ordinary meaning of 'memory' when they submitted the application for the '794 patent – i.e., that 'memory is not limited to volatile memory." Netflix Br. 37. But this again confuses the distinct claimed inventions of the "cache memory including mass storage" of method claim 1 and the "memory storing information including instructions" of apparatus claim 39. A comparison of the claims at issue shows these important differences:

| Claim 1 | Claim 39 |
|---|---|
| 1. A method, including steps of:<br>receiving a set of network objects in response to a first request to a server from a client; and<br>maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;<br>wherein said step of maintaining includes steps of recording said network objects in said cache memory and retrieving said network objects from said cache memory, so as to substantially minimizes a time required for retrieving said network objects from said mass storage. | 39. A memory storing information including instructions, the instructions executable by a processor to control a cache engine, the instructions including steps of:<br>receiving a set of network objects in response to a first request to a server from a client; and<br>maintaining said network objects in a cache memory in the cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage;<br>wherein said step of maintaining includes steps of recording said network objects in said cache memory and<br>. . . |

Appx45 (17:5-17); Appx46 (20:57-67) (with annotations).

Thus, based on the claim language above, one can see that the claimed inventions of claims 1 and 39 use different forms of "memory." For the method covered by claim 1, the claimed "cache memory" is used to store network objects for use in a cache engine. Appx45 (17:5-17). But for the apparatus covered by claim 39, the more general "memory" is used for "storing information including instructions" and is not used for caching at all, which is reserved for the distinct "cache memory." Appx46 (20:57-67). CA addressed this issue specifically before the Board, noting that "there is nothing in the file history that says cache memory

can be any type of memory because that goes against what this whole patent is about." Appx3433 (28:17-19); *see also* Appx3241. This is because, if "memory" as used in "cache memory" could be any type of memory (i.e., non-volatile memory used generally to store information), then "mass storage" could satisfy both the "memory" and "mass storage" elements, thus eliminating the "memory" element altogether. This is improper, as discussed above and in CA's Opening Brief. *See supra* §§I.B and I.C; *see also* CA Br. 27-39.

Thus, Netflix and the Board's understanding of "memory," as used in "cache memory," finds no support in the prosecution history, and this Court should reverse the Board's improper determination.

### D. The extrinsic evidence confirms that "memory" and "mass storage" are separate claimed elements

In addition to the intrinsic evidence noted above, the extrinsic evidence also provides substantial support showing that "cache memory including mass storage" must include both "memory" and "mass storage." In its Response, Netflix continues to point to its proffered dictionary definitions which relate to the general sense of memory, and which again are distinguishable from how the term "memory" is used in the "cache memory" limitation. Netflix Br. 38-40.

As discussed in its Opening Brief, CA showed that the usage of "memory" in the '794 Patent limitations concerning "cache memory" is consistent with the use of the term "memory" in each of Medin, Seltzer, and Markatos. CA Br. 37; *see, e.g.*,

Appx868 (7:50) (referring to "software devices in a memory module 504"); Appx885 (referring to RAM as "memory" consistently); Appx908 (distinguishing between documents stored in "main memory" and those stored on disk and proposing "Main Memory Caching of frequently requested Web documents on the Web server's memory"); Appx2781; Appx2843-2844 (¶60). It bears repeating that a detailed review of Netflix's three references reveals not a single use of "memory" to refer to anything other than "memory" as used in "cache memory" (i.e., volatile memory such as RAM). CA Br. 37.

In support of this analysis, CA offered expert testimony that a POSITA would use the term to refer "only to the fast semiconductor storage (RAM) directly connected to the processor," and CA's expert noted, "this usage is consistent with the usage I describe above in the '794 Patent, Medin, Seltzer, and Markatos." CA Br. 38; Appx3243; Appx2844 (¶60). Moreover, Netflix's use of the term is the "most general sense" of the term "memory," and this again disregards the distinction drawn directly between the claimed "memory" and "mass storage" elements in the recited "cache memory including mass storage," which is crucial to the inventions of the '794 Patent. CA Br. 38; Appx3243; Appx3015-3016; Appx2998.

Thus, both Netflix and the Board's flawed understanding of "cache memory" finds no more support in the extrinsic evidence than the intrinsic evidence, and as such, the Board's construction should be reversed.

## II. Netflix's improper argument on appeal should be rejected

In its Response, Netflix argues that the '794 Patent is invalid because the combination of Medin and Seltzer and Medin and Markatos both teach limitation [b] that requires "maintaining said network objects in a cache memory in a cache engine, said cache engine connected via a network to the server and the client, said cache memory including mass storage." Netflix Br. 41-46. However, Netflix did not raise this argument in its Petition, as Netflix argued that Medin alone satisfied limitation [b]. Appx85; Appx111-112. As such, this Court should decline to consider Netflix's improper argument on appeal. *In re Google Tech. Holdings*, 980 F.3d 858, 863 (Fed. Cir. 2020).[1]

As this Court has held, "[i]t is of the utmost importance that petitioners in the IPR proceedings adhere to the requirement that the initial petition identify 'with particularity' the 'evidence that supports the grounds for the challenge to each claim.'" *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016) (quoting 35 U.S.C. § 312(a)(3) (2012)); *see also* 37 C.F.R.

[1] Netflix confirms that this is the proper standard. Netflix Br. 59 (citing *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1360, 1366 (Fed. Cir. 2020) ("Because Acoustic never presented to the Board the non-obviousness arguments it now raises on appeal, we find those arguments waived."); *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435 (Fed. Cir. 2015) ("[I]t is important that the applicant challenging a decision not be permitted to raise arguments on appeal that were not presented to the [PTAB].")). While Netflix has confirmed that this is the correct standard, Netflix's argument regarding CA's waiver is misplaced as discussed below. *See infra* n.3.

§ 42.104(b)(4)-(5) (2012) (requiring a petitioner to identify "[h]ow the construed claim is unpatentable," "specify where each element of the claim is found in the prior art patents or printed publications relied upon," and identify "[t]he exhibit number of the supporting evidence relied upon to support the challenge and the relevance of the evidence to the challenge raised, including identifying specific portions of the evidence that support the challenge").

Furthermore, this Court has "rejected, many times, post-hoc attempts on appeal to include additional, new arguments not contained in the petition." *Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1377 (Fed. Cir. 2023); *see, e.g.*, *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1074 (Fed. Cir. 2017) ("Microsoft did not present to the Board the full argument that it presents here on appeal . . . Microsoft's brief on appeal is far more detailed and contains substantial new arguments regarding why it believes Kenoyer anticipates this limitation of claim 69."); *see also Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1286 (Fed. Cir. 2017) ("We also are unpersuaded by Continental's attempts to cure the petition's deficiencies in its subsequent briefing to the Board and to us."); *Yita LLC v. MacNeil IP LLC*, 69 F.4th 1356, 1366-67 (Fed. Cir. 2023) (disagreeing with Yita that an argument was raised in the petition and thus finding no abuse of discretion by the Board in "declining to consider Yita's argument about modifying the teaching of Rabbe . . . because it was presented too late—in a footnote in Yita's reply brief"); *Henny Penny Corp. v.*

*Frymaster LLC*, 938 F.3d 1324, 1331 (Fed. Cir. 2019) ("[T]he Board did not abuse its discretion by holding HPC to the obviousness theory in its petition."); *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1367 (Fed. Cir. 2015) ("We see no error in the Board's rejection of Ariosa's reliance, in its Reply submissions, on previously unidentified portions of a prior-art reference to make a meaningfully distinct contention.").

In its Response, Netflix walks a fine line of never actually claiming that it raised this argument in its Petition, instead simply stating that "substantial evidence would still support the Board's decision" and that "the Board, however, recognized that Netflix argued that each combination involved maintaining objects in volatile memory." Netflix Br. 41-43. While Netflix claims this is an issue of "challenged claim constructions" that this Court can address *sua sponte*, this in fact is a post-hoc attempt on appeal to include additional, new arguments not contained in the Petition. *See id*. And when reviewing the Petition, it is clear that Netflix solely relied on Medin for this claim limitation:

> Limitation [b] is the same in claims 1, and 9. **Medin** teaches limitation [b] because **Medin** teaches regional and local servers ("cache engines") that maintain copies of requested multimedia content in mass storage (e.g., on a disk array and in a cache storage device.) **Medin** also teaches that regional and local servers are connected via networks (e.g., a fiber-coax network and the Internet) to

> the servers that provide the multimedia content in response to a first client request for the content.

Appx85 (emphasis added). Netflix confirmed this fact when discussing claim 17, stating:

> The preamble and limitations [a] and [b] of claim 17 are identical to the preamble and limitations [a] and [b] of claims 1 and 9. As such, **Medin** teaches the preamble and limitations [a] and [b] of claim 17 for the same reasons set forth above in connection with claims 1 and 9.

Appx111-112 (emphasis added). Not once in these sections discussing limitation [b] does Netflix discuss the combinations of Medin and Seltzer or Medin and Markatos. CA presented evidence of this fact in the underlying IPR, as Netflix would have been required to amend its Ground 2 references listed in its Petition from Medin and Markatos, to Medin, Seltzer, and Markatos:

| Grounds | Claims | Statutory Basis | Prior Art |
|---|---|---|---|
| 1 | 1, 3-9, 11-16 | §103 | Medin and Seltzer |
| 2 | 17 | §103 | Medin and Markatos |

Appx3249. This clear inconsistency demonstrates Petitioner's change of position regarding its supposed reliance on Seltzer to prove limitation [b].

Further evidence of Netflix's sole reliance on Medin for limitation [b] is found in the Procedural History section of Netflix's Response. Here, Netflix confirms that

it relied solely on Medin for disclosing limitation [b] in its Petition, stating, "Netflix relies on Medin for the 'receiving' [limitation [a]] and 'maintaining' [limitation [b]] steps of the challenged claims." Netflix Br. 7. Netflix further confirms this very point by highlighting its expert's testimony that "Medin also teaches maintaining the received network objects in cache memory." *Id.* at 9. Nowhere in Netflix's Procedural History section of its Response does Netflix discuss its reliance on Seltzer for limitation [b], and it is only in the discussion for the "wherein" limitation of claim 1 (limitation [d]) that Netflix relies on the combined "teachings of Medin and Seltzer." *Id.* at 10 ("Netflix relies on the combination of Medin and Seltzer for minimizing the time required to retrieve objects from mass storage").

Thus, similar to Netflix's prior actions before this Court in *Netflix, Inc. v. DivX, LLC,* 84 F.4th 1371, 1380 (Fed. Cir. 2023), where Netflix only relied on a single reference in a Petition and then tried to expound that to a combination argument on appeal, this Court should similarly reject Netflix's improper attempts to expand the Petition in this instance.[2]

[2] In addition to being improper, Netflix's arguments regarding the combinations of Medin and Seltzer and Medin and Markatos teaching limitation [b] are incorrect. In its Response, Netflix confirmed that "Medin teaches maintaining network objects in mass storage," but that "Medin does not expressly state whether network objects are maintained in volatile memory." Netflix Br. 43. As shown in CA's Opening Brief, Seltzer has nothing to do with caching and is only used by Netflix with respect to the "wherein" clause, limitation [d], of claim 1. CA Br. 51-56. Thus, the only combination of Medin and Seltzer would rely on Medin's teachings for "cache

## III. Netflix's arguments regarding the combination of Medin and Seltzer with respect to limitation [d] are unpersuasive and stem from the misconstruction of "cache memory"

As CA noted in its Opening Brief, the Board based its decision, with respect to the motivation to combine Medin and Seltzer, on the incorrect construction of "cache memory." CA Br. 55. In doing so, the Board ignored substantial evidence showing that there is no reason to combine Medin and Seltzer such that the combination of these references would disclose limitation [d] of claim 1 ("so as to substantially minimizes a time required for retrieving said network objects from said mass storage"). Appx45 (17:15-17); *see* Appx2789; Appx2852 (¶71); *see generally* Appx2776-2777; Appx2787-2793; Appx3249-3252. Netflix argues in Response that CA applied the wrong standard of review, and that substantial evidence supports combining the teachings of Medin and Seltzer, but as discussed further below, Netflix is incorrect on both fronts. Netflix Br. 46-53.

With respect to the standard of review, the substantial evidence standard asks, "whether a reasonable fact finder could have arrived at the agency's decision," and

---

memory including mass storage," which does not teach caching network objects in memory. With respect to the combination of Medin and Markatos, Netflix solely relies on Markatos for limitation [c] and admits that Markatos "teaches a mass storage file system for storing web content on a web server." Netflix Br. 19 (n.3). But limitation [c] of claim 17 must be read together with limitation [b], and Netflix's proposed combination would comprise a cache memory with a main memory and mass storage that maintains objects using a file system, in direct contravention to the main inventive concepts of the '794 Patent. CA Br. 65-68.

"involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision." *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1381 (Fed. Cir. 2019). As occurred in the underlying IPR in this matter, when "the Board relie[s] on erroneous reasoning in making the factual determinations . . . ," such determinations are "unsupported by substantial evidence." *In re Huai-Hung Kao*, 639 F.3d 1057, 1065 (Fed. Cir. 2011).

As CA noted in its Opening Brief, implementing a file system caching technique using mass storage, such as that disclosed in Seltzer, for web caches, is not a combination of familiar elements, nor does it yield predictable results. CA Br. 53-56. This exact concept is expressly highlighted by Netflix's own cited Markatos reference, but the Board dismissed this argument based on its erroneous reasoning regarding the "memory" and "mass storage" elements of the related limitation [b]. Appx907-908; Appx918; Appx2793; Appx2856 (¶76); Appx20. The error in reasoning can be seen by the Board's conclusion that "Petitioner's proposed combination includes Medin's teachings of a file system to cache network objects and Seltzer's teachings of ways of improving the read and write operations of a file system," as this does not address caching network objects in memory at all, only in mass storage. Appx20. This can be further seen in the Board's conclusion that "[e]ven if Markatos's system purportedly outperforms other systems, that does not change the fact that Seltzer suggests techniques to improve Medin's teachings that a

POSITA would have had reason to implement to substantially minimize the time for retrieving network objects **from mass storage** with a reasonable expectation of success." Appx20 (emphasis added).

CA demonstrated the flaws with this analysis by highlighting that, based at least on the disclosure of Markatos and a proper understanding of "memory" as used in "cache memory including mass storage," a POSITA would have no reasonable expectation of success in combining Seltzer with Medin. Appx2792; Appx2855 (¶75). And while the Board and Netflix relied heavily on Netflix's expert testimony, Dr. Houh's testimony amounts to little more than a restatement of Netflix's own argument. *Compare* Appx79, *with* Appx760 (¶121); Appx2792; Appx2855 (¶75). On the other hand, the record evidence presented by CA indicates clearly that a file system caching technique utilizing mass storage (such as Seltzer's) is inappropriate for a web caching system utilizing memory, given the distinct differences between the caching needs for files verses web content – differences expressly highlighted by Netflix's own prior art. Appx907-908; Appx918; Appx2793; Appx2856 (¶76).

As such, the balance of the record evidence, rather than unsupported, conclusory testimony set forth by Netflix and adopted by the Board, indicates that a POSITA (such as Markatos himself) would have no reasonable expectation of success in this combination. Appx2793; Appx2856 (¶76). Thus, the Board's

conclusions with respect to the combination of Medin and Seltzer were based on erroneous reasoning and should be reversed for lack of substantial evidence.

## IV. Netflix's arguments regarding Markatos and limitation [c] of claim 17 are unpersuasive

As CA noted in its Opening Brief, the Board erred in concluding that Markatos discloses limitation [c] of claim 17 and that the combination of Medin and Markatos discloses limitations [b] and [c] of claim 17, which recite, in pertinent part, "[b] maintaining said network objects in a cache memory in a cache engine, . . . said cache memory including mass storage[,] [c] wherein said step of maintaining is performed independently of a file system for said mass storage." CA Br. 56-64; *see* Appx45 (18:13-18); *see generally* Appx27-28; Appx2795; Appx2857-2858 (¶80).

In its Response, Netflix argues that the claim language of claim 17, the '794 Patent specification, and CA's positions in District Court support the Board's conclusion. Netflix Br. 53-57. However, Netflix's arguments in response are all based on an incorrect interpretation of CA's argument, which Netflix claims "is based on the premise that claim 17 requires storing 'all' network objects – i.e., 100% of the objects that are cached – 'solely' without using the mass storage file system." *Id*. at 54. But CA never argued that all network objects must be cached independently of a file system for said mass storage, rather CA showed that the entire "set of network objects" at issue in the claim limitation must be maintained without using the mass storage file system. CA Br. 56-71.

Netflix then expounds on this misinterpretation by arguing that since up to 90% of all of the network objects are cached independently of a file system for said mass storage, then at some point there is a set of network objects where 100% of a set of network objects must be cached independently of a file system for said mass storage. Netflix Br. 54-56. Based on this logical fallacy, Netflix then argues that "it is enough that the combination would sometimes perform all the method steps." *Id.* at 56.

However, as CA demonstrated in its Opening Brief, Markatos does not maintain the requested documents (i.e., the set of network objects) solely in main memory or mass storage, but rather a combination of main memory and mass storage where the disclosed mass storage uses a file system in direct contravention of limitation 17 [c]. CA Br. 56-64. Netflix confirmed as much in its Response. First, Netflix confirmed that "Markatos teaches a mass storage file system for storing web content on a web server." Netflix Br. 19 (n.3). Netflix also confirmed that Markatos teaches that a material portion of the documents in each simulation (between 10%-50%) must be obtained from disk storage (the mass storage operating with a file system) because they cannot be obtained from the cache. Netflix Br. 56 (n.6) ("Markatos teaches maintaining up to 90% of all objects in the main memory independent from the mass storage file system"). This can be seen in Figures 12 and 13 of Markatos, which summarize the document hit rates (documents obtained

from the cache) and cache misses (documents obtained from disk storage) of all the simulations:




Fig. 12. Performance of the adaptive policy.




Fig. 13. Performance of the adaptive policy.

Appx916 (annotated); Appx917 (annotated); Appx2798; Appx2861 (¶85). As these figures show, the "best" hit rates (documents obtained from the cache rather than from mass storage with a file system) of all of the simulations vary between around 60% and 90%, which Netflix's expert confirmed:

> Q Okay. And then, in Figure 12, the maximum hit rate that you get is somewhere between 60 and -- probably around 60 percent. Is that what Figure 12 is showing?
>
> A Well, I mean, I think, you know, adaptive kind of goes all over the place, between 50 something and maybe 60 something, if that's what you're referring to, the adaptive bar.

> The different bars are color-coded or gray-shade coded.
>
> Q Right. All I'm trying to say is that, in the best scenario, you get a hit rate of somewhere around 60 percent with a cache of 512 kilobits, right?
>
> A For particular traces indicated and the specific sequence of requests in the trace for the simulation, that's the result.
>
> Q Okay. So then, with the larger cache shown in Figure 13, the best hit rate you get is somewhere around 90 percent; is that right?
>
> A That's about -- that looks about right.

Appx2928 (135:10-136:6); Appx2798-2799; Appx2861-2862 (¶85).

Therefore, in any scenario under Markatos's proposed system, at least 10% of the set of network objects would be retrieved from mass storage including a file system, and at no point are 100% of the said network objects retrieved from memory (i.e., the only portion of Markatos's system that operates independently of the file system). As such, contrary to Netflix's incorrect statements and logical fallacies, Markatos never teaches performing the method of claim 17 with respect to any set of network objects, and this is therefore not sufficient to invalidate claim 17.

Moreover, as CA demonstrated, the claim language of claim 17 and the '794 Patent specification all support CA's argument. With respect to the claim language, claim 17 requires ***maintaining*** all the recited "said objects"

"independently of a file system for said mass storage." Appx45 (18:13-18); *see* Appx26-27; Appx2795; Appx2857-2858 (¶80); Appx3245-3246. The claim language in the wherein portion of limitation [c] of claim 17 does not recite maintaining a cache; it recites "said step of maintaining," which refers to the recited "maintaining said network objects" in the cache. Appx3246. Importantly, limitation [c] does not say "maintaining *some* of said objects independently of a file system for said mass storage;" it says, "*said step of maintaining* [said network objects] is performed independently of a file system for said mass storage." Appx45 (18:13-18) (emphasis added); *see* Appx2795. The phrase, "said step of maintaining," refers to *all of* the recited objects, but not to the cache itself. Therefore, in the context of claim 17, limitation [c] does in fact require maintaining "all" of the recited "said network objects" independently of a file system for the mass storage, not just "a set" (e.g., some) of the recited "said network objects," as the Board and Netflix improperly conclude.[3] Appx3246.

[3] Netflix incorrectly argues that CA waived this argument, stating, "CA never disputed that assertion and raises the definition of 'a set of network objects' for the first time (in passing) on appeal." Netflix Br. 59. CA raised this argument in the underlying IPR based on the plain language of limitation [c] and further espoused on this argument once Netflix shifted its position on Reply. Appx2766 ("[CA] disagrees that this term [receiving a set of network objects in response to a first request to a server from a client] requires any construction"); Appx3245 ("The Reply, therefore, effectively argues that 'said step of maintaining' in limitation [c] should be replaced with 'said step of maintaining of some of said network objects'"); *see generally* Appx3244-3248; *see also* Appx2795-2803; Appx3252-3255. It was

As for the specification, Netflix's argument effectively eliminates the "independently of a file system" claim limitation, which, as noted in CA's Opening Brief, is one of the primary novelties disclosed in the '794 Patent and discussed in depth in the specification. CA Br. 4-12 (discussing the '794 Patent criticisms of the delay created by a traditional proxy server storing network objects in mass storage using a file system). With respect to Netflix's arguments regarding the District Court, Netflix attempts to quote a small portion of CA's initial infringement contentions about how "[p]opular files are locked into memory," with no attempt to understand or explain how the underlying accused system might be similar to Medin or Markatos. Netflix Br. 57. Netflix then argues that this quotation is contrary to "CA's current argument that 'all' network objects must be maintained independently of the mass storage file system." *Id*. Even if this quotation were relevant, however,

---

not until the Final Written Decision that the Board clarified its position with respect to "a set of network objects." Appx26-28. Thus, the argument has not been waived. *Intertainer, Inc. v. Hulu, LLC*, 660 F. App'x 943, 947-48 (Fed. Cir. 2016) ("The only difference is that, before the Board, Intertainer did not integrate this position into a proposed construction of 'link program;' instead, it argued that the plain language of the claims required this interpretation, drawing a distinction from Chen. In effect, the locus of the dispute has shifted, but the dispute itself has not. This shift is understandable, as it was not until the Final Written Decision that the Board clarified that its construction of 'link program' ('a set of instructions that tells the computer what to do when a link is selected,') did not require the 'interrupt[ing] . . .' and 'access[ing] . . .' functions to be embodied in the same program. Accordingly, because its arguments are consistent with the original scope of Intertainer's claim construction position, Intertainer has not waived its ability to challenge the Board's construction." (internal citations omitted).

Netflix's argument misinterprets CA's position (which is that all of the set of said network objects need to be maintained independently, not all network objects) and also fails to account for the interacting requirements of limitations [b] and [c] as noted in CA's Opening Brief. CA Br. 56-70. Thus, Netflix's arguments regarding the District Court continue the fundamental error of failing to read claim 17 as a whole, instead of treating limitations [b] and [c] as completely unrelated.

Thus, from the entirety of Markatos's disclosure, a POSITA would conclude that Markatos teaches that the step of maintaining network objects **is not independent** of a file system for the mass storage device as required by limitation [c]. Appx2803; Appx2866 (¶92). For these reasons, and because limitations [b] and [c] must be read together, the combination of Medin and Markatos does not disclose limitations [b] and [c], and this Court should reverse the Board's findings concerning claim 17.

## CONCLUSION

For these reasons, the Board's determination that Challenged Claims 1, 3-9, and 11-17 are unpatentable should be reversed or, at a minimum, vacated and remanded.

Respectfully submitted,

/s/ Daniel S. Young
Daniel S. Young
QUARLES & BRADY LLP
8210 Southpark Terrace
Littleton, CO 80120
(303) 268-0066 (telephone)
(833) 793-0703 (facsimile)
Email: dyoung@quarles.com

*Counsel for Appellant CA, Inc.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1768

**Short Case Caption:** CA, Inc. v. Netflix, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- ☑ the filing has been prepared using a proportionally-spaced typeface and includes 6,643 words.
- ☐ the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- ☐ the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 01/26/2024

Signature: /s/ Daniel S. Young

Name: Daniel S. Young

Save for Filing